# EXHIBIT 21

**BONDURANT**

**MIXSON & ELMORE** LLP



666 Broadway, 7th Floor
New York, New York 10012
212-614-6464
ccrjustice.org

**July 21, 2025**

Governor Brian Kemp
206 Washington Street
111 State Capitol
Atlanta, GA 30334
brian.kemp@ga.gov

Commissioner Tyrone Oliver
Georgia Department of Corrections
300 Patrol Road
Forsyth GA 31029
tyrone.oliver@gdc.ga.gov

Asst. Commissioner Jack "Randy" Sauls
Georgia Department of Corrections
300 Patrol Road
Forsyth GA 31029
randy.sauls@gdc.ga.gov

Jennifer Ammons, Esq.
General Counsel
Georgia Department of Corrections
300 Patrol Road
Forsyth GA 31029
jennifer.ammons@gdc.ga.gov

Kathryn Haynes Owen
Statewide Mental Health Director
Georgia Department of Corrections
300 Patrol Road
Forsyth GA 31029
kathryn.owen@gdc.ga.gov

Dr. Marlah Mardis
Statewide Medical Director
Georgia Department of Corrections
300 Patrol Road
Forsyth GA 31029
marlah.mardis@gdc.ga.gov

Warden Aaron Pineiro
Phillips State Prison
2989 West Rock Quarry Road
Buford, GA 30519
aaron.pineiro@gdc.ga.gov

Warden David Stokes
Central State Prison
4600 Fulton Mill Road
Macon, GA 31208
david.stokes@gdc.ga.gov

Warden Phillip Glenn
Coastal State Prison
200 Gulf Stream Road
Garden City, GA 31418
phillip.glenn@gdc.ga.gov

Warden Wendy Jackson
Pulaski State Prison
373 Upper River Road
Hawkinsville, GA 31036
wendy.jackson@gdc.ga.gov

Warden Carmon Edwards
Lee Arrendale State Prison
2023 Gainesville Hwy
Alto, GA 30510
carmon.edwards@gdc.ga.gov

Dr. Gerald Wynne
Georgia Statewide Medical Director
Centurion Health
1745 Phoenix Blvd, Suite #240
Atlanta, GA 30340
gwynne@teamcenturion.com

Re: Notice of Constitutional Violations on Behalf of People with Gender Dysphoria in GDC Custody via Implementation of SB 185 (2025)

Dear Governor Kemp, Commissioner Oliver, Assistant Commissioner Sauls, General Counsel Ammons, Director Haynes Own, Director Mardis, Warden Pineiro, Warden Stokes, Warden Glenn, Warden Jackson, Warden Edwards, and Dr. Wynne:

The Center for Constitutional Rights is a national, not-for-profit legal, educational, and advocacy organization dedicated to protecting and advancing rights guaranteed by the United States Constitution, federal statutes, and local and international law. Since our founding in 1966, we have litigated landmark civil rights and human rights cases before the Supreme Court of the United States and other tribunals concerning government overreach and discriminatory state policies, including policies that disproportionately impact LGBTQIA+ communities.

Bondurant Mixson & Elmore, LLP, is an Atlanta law firm with a robust history of defending the constitutional rights of Georgians, including specifically those in Department of Corrections custody and members of the LGBTQIA+ communities. Bondurant lawyers, including the undersigned, have secured relief for certified classes of incarcerated Georgians at the state and county level. Bondurant lawyers routinely appear in the Eleventh Circuit Court of Appeals, and Bondurant has also litigated cases—including specifically civil rights cases taken on a pro bono basis—through the Eleventh Circuit and to the Supreme Court of the United States.

As legal experts concerning the rights of transgender, gender nonconforming, intersex, and nonbinary individuals with gender dysphoria, we write to furnish you with additional notice that your planned implementation and enforcement of Senate Bill 185 (SB 185)[1] across the Georgia Department of Corrections (GDC) violates the Eighth Amendment's prohibition on deliberate indifference to the serious medical needs of evaluation and treatment for gender dysphoria on the part of GDC officials and Centurion.

As the Center for Constitutional Rights formally warned Georgia officials in a letter dated March 13, 2025,[2] SB 185 categorically denies essential, evidence-based medical care to transgender individuals with gender dysphoria in GDC custody. In doing so, SB 185 directly contravenes the Eighth Amendment, which prohibits cruel and unusual punishment and mandates that corrections officials provide adequate medical care to incarcerated people with serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–06 (1976).

We write to you in your capacity as officials responsible for adopting, implementing, and enforcing SB 185's provisions. GDC and Centurion Health's plan to proceed with the unconstitutional implementation of SB 185 violates the Eighth Amendment and will impose devastating physical and psychological harms on those with gender dysphoria in GDC custody. Accordingly, we urge you to immediately cease and reverse all efforts to implement SB 185.

---

[1] Codified at O.C.G.A § 42-5-2(e).
[2] Letter dated March 13, 2025, available in Appendix A.

2

I.  **SB 185's blanket ban on gender dysphoria evaluation and treatment violates the Constitution's Eighth Amendment.**

Gender dysphoria is a recognized medical condition that many transgender people experience.[3] Gender dysphoria is a serious medical condition requiring individualized, evidence-based medical care. In the context of gender dysphoria, individualized, evidence-based care can include hormone therapy ("HRT"), gender-affirming surgery, and other procedures (hereinafter "gender-affirming care").[4] And federal courts—including the Eleventh Circuit—have consistently recognized that the Eighth Amendment requires that incarcerated people experiencing gender dysphoria receive this individualized, evidence-based care. *See, e.g.*, *Keohane v. Fla. Dep't of Corr. Sec.*, 952 F.3d 1257, 1266 (11th Cir. 2020); *Kothmann v. Rosario*, 558 F. App'x 907, 910 n.4 (11th Cir. 2014); *De'lonta v. Angelone*, 330 F.3d 630, 635 (4th Cir. 2003); *White v. Farrier*, 849 F.2d 322, 325 (8th Cir. 1988); *Meriwether v. Faulkner*, 821 F.2d 408, 413 (7th Cir. 1987).

Blanket bans such as SB 185 have repeatedly been found unconstitutional because they amount to deliberate indifference to incarcerated people's serious medical needs. *See Kosilek v. Spencer*, 774 F.3d 63, 91 (1st Cir. 2014); *Fields v. Smith*, 653 F.3d 550, 559 (7th Cir. 2011); *Hicklin v. Precynthe*, No. 4:16-cv-01357-NCC, 2018 WL 806764, at *11 (E.D. Mo. Feb. 9, 2018); *Diamond v. Owens*, 131 F. Supp. 3d 1346, 1376 (M.D. Ga. 2015); *Soneeya v. Spencer*, 851 F. Supp. 2d 228, 246–47 (D. Mass. 2012). In short, the refusal to provide individualized gender-affirming care to incarcerated people with gender dysphoria contravenes medical and other

---

[3] Gender dysphoria is the psychological distress that results from an incongruence between an individual's gender identity and their assigned sex at birth, and it can lead to significant anxiety, depression, suicide ideation, and other disabling conditions when left untreated. *See* AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (5th ed. 2013) (DSM-5); E. Coleman et al., *Standards of Care for the Health of Transgender and Gender Diverse People, Version 8*, 23 INT'L J. OF TRANSGENDER HEALTH S252 (Sept. 15, 2022), https://www.tandfonline.com/doi/pdf/10.1080/26895269.2022.2100644 (hereinafter WPATH Standards).

[4] WPATH Standards, *supra* note 3 (outlining the treatments that can constitute medically necessary gender dysphoria care depending on the individuals); W. C. Hembree et al., *Endocrine Treatment of Gender-Dysphoric/Gender-Incongruent Persons: An Endocrine Society Clinical Practice Guideline*, 102 J. CLINICAL ENDOCRINOLOGY & METABOLISM 3869 (2017), https://academic.oup.com/jcem/article/102/11/3869/4157558. The traditional method of gender dysphoria treatment (i.e. hormone therapy, social transition, gender/affirmance, and gender confirmation surgery) outlined in the Endocrine Society Guidelines and WPATH Standards are the accepted standards of care for treating patients with gender dysphoria, as recognized by the American Psychiatric Association, the American Medical Association, and the National Commission on Correctional Healthcare (NCHC), among others. *See, e.g.*, NCHC, Transgender and Gender Diverse Health Care in Correctional Settings, https://www.ncchc.org/wp-content/uploads/Transgender-and-Gender-Diverse-Health-Care-in-Correctional-Settings-2020.pdf.

professional judgment. Indeed, as the Eleventh Circuit recognized in *Keohane*, "responding to an inmate's acknowledged medical need with what amounts to a shoulder-shrugging ***refusal to even consider*** whether a particular course of treatment is appropriate is the very definition of 'deliberate indifference.'" *Keohane*, 952 F.3d at 1266–67 (emphasis added).

The GDC and Centurion are now moving forward with plans to implement SB 185's blanket ban, and doing so even though imposing such a ban is unconstitutional. The unconstitutionality of such bans is well known to GDC. Specifically, federal courts and the GDC have consistently recognized that gender dysphoria is a serious medical condition for which the Eighth Amendment requires individualized, evidence-based medical care. The Eleventh Circuit has characterized blanket bans on gender dysphoria treatment as constituting deliberate indifference.  Ultimately, implementing SB 185's blanket ban will have catastrophic and predictable physical and psychological consequences for those with gender dysphoria in GDC custody. These Georgians will almost certainly experience a return of the severe symptoms of untreated gender dysphoria, including anxiety, depression, and numerous physical symptoms of withdrawal. Experts predict the cessation of care is likely to lead to self-injury, including potentially self-castration and suicide attempts.

II. **GDC and Centurion officials are aware that individualized evaluation and treatment of gender dysphoria constitutes medically necessary care.**

Both GDC officials and Centurion have previously acknowledged the medical necessity of individualized evaluation and treatment of gender dysphoria, and of HRT specifically. Still, they are proceeding with a plan to implement SB 185 and forcibly detransition those in GDC custody with gender dysphoria in violation of the Eighth Amendment.

A. **GDC and Centurion have explicitly acknowledged that gender dysphoria requires individualized treatment and that HRT can be medically necessary care.**

Prior to SB 185, GDC and Centurion openly acknowledged the importance of making gender dysphoria treatment available to people in custody. GDC Identification, Evaluation, and Treatment of Gender Dysphoria, SOP 508.40 (IV)(D) (2023) (last accessed July 18, 2025). GDC policy required that people in GDC custody "who report to have symptoms consistent with or have been diagnosed with Gender Dysphoria" receive a "thorough medical and mental health evaluation" and an "individualized assessment and evaluation" to determine, among other things, if they require hormone therapy. GDC Management & Treatment of Offenders Diagnosed with Gender Dysphoria, SOP 507.04.68 (IVA), (IV)(C)(5) (2022) (last accessed July 18, 2025); *see also* GDC Identification, Evaluation, and Treatment of Gender Dysphoria, SOP 508.40 (IV)(D) (2023) (last accessed July 18, 2025) (providing for endocrinology referrals). GDC policy also acknowledged the necessity of providing gender dysphoria patients with individualized medical treatment. SOP 508.40 (§ IV.C.3); SOP 508.40 (§ IV.E.2).

4

GDC and Centurion have also acknowledged that HRT can be medically necessary treatment. In a prior legal case brought on behalf of a transgender woman in GDC custody, officials including Commissioner Oliver, Assistant Commissioner Sauls, and Director Mardis "concede[d] HRT . . . is medically necessary for treatment of her gender dysphoria." *Doe v. Georgia Dep't of Corr.*, 730 F. Supp. 3d 1327, 1338–39 (N.D. Ga. 2024), *appeal dismissed as moot*, No. 24-11382, 2025 WL 1206229 (11th Cir. Mar. 6, 2025). Further, GDC policy requires a "documented medical *need*" to "initiate[] or continue[]" HRT. GDC Classification and Management of Transgender and Intersex Offenders, SOP 220.09 (K)(5) (2019) (emphasis added) (last accessed July 18, 2025). *See also* SOP 507.04.68 (§ IV.D.1.d) (approving treatment only where considered medically necessary).

GDC's reversal from requiring individualized assessments to a blanket ban on care it recognized as medically necessary is the sort of "shoulder-shrugging refusal" of care that the Eleventh Circuit has called "the very definition of deliberate indifference." *Keohane*, 952 F.3d at 1266–67.

B.  **Centurion's experience with similar legislation in Idaho and Florida demonstrate its knowledge that implementing blanket bans like SB 185 violates the Eighth Amendment.**

Centurion's own experiences in other jurisdictions demonstrate its awareness of the unconstitutionality of a blanket ban on gender-affirming care. After Idaho passed a gender dysphoria treatment ban comparable to SB 185,[5] Centurion made plans to begin tapering incarcerated people off their prescribed HRT, just like SB 185 requires. However, Centurion was prevented from enforcing its plan due to the harm it posed to people in custody. *See Robinson v. Labrador*, 747 F.Supp.3d 1331, 1343 (D. Idaho 2024).

Thereafter, when a comparable treatment ban was introduced in the Florida Department of Corrections (FDOC), Centurion, FDOC's healthcare provider, continued to provide HRT to people in custody. It did so recognizing that denying access to medically necessary healthcare would be unconstitutional.[6]

These experiences put Centurion—and GDC—on notice that they cannot enforce a policy like SB 185 that categorically restricts access to gender dysphoria treatment without violating their Eighth Amendment obligations.

---

[5] As characterized by the Idaho District Court, the Idaho law "prohibit[ed] the use of public funds on medical interventions—surgical or otherwise—that "alter the appearance of an individual in order to affirm the individual's perception of the individual's sex in a way that is inconsistent with the individual's biological sex." *Robinson v. Labrador*, 747 F.Supp.3d 1331, 1338 (D. Idaho 2024).

[6] Prison healthcare administrators also continued to voluntarily provide HRT to people with gender dysphoria after a comparable policy was implemented in the Bureau of Prisons (BOP).

**III.    Implementing SB 185 as planned will subject incarcerated Georgians to a substantial risk of serious physical and psychological harm.**

In place of the individualized medical assessments and treatment that GDC and Centurion know is medically necessary, GDC is now implementing SB 185's blanket ban on evaluation and treatment for gender dysphoria. As CCR and BME just learned, Centurion and GDC officials have jointly adopted a plan to implement SB 185 beginning this month ("SB 185 Enforcement Plan" or "Plan"). The Plan, which was modeled after Centurion's federally enjoined plan in Idaho, calls for Centurion and GDC officials to commence by forcibly detransitioning people in GDC custody on HRT in the first week of July. Pursuant to the Plan, all incarcerated people will be fully and forcibly taken off HRT no later than October 3, 2025. Despite GDC and Centurion's knowledge of the severe health risks associated with forced detransition and untreated gender dysphoria, GDC and Centurion offer only two non-accommodations to denial and withdrawal of appropriate treatment: "increased access to counseling" and a 2–3 month tapering off period to purportedly "minimize the side effects" of withdrawal. However, as GDC and Centurion are aware, these purported accommodations are insufficient and unconstitutional. Neither proposal adequately or reasonably addresses, mitigates, or prevents the catastrophic and foreseeable psychological and physical risks posed by the Plan.

First, counseling alone is not an adequate treatment for gender dysphoria, nor is it a substitute for the HRT prescribed after individual assessment by medical providers. Withdrawing medically necessary care while "replacing" it with an inadequate substitute is an unconstitutional response to the serious medical needs of those in GDC custody with gender dysphoria.

Second, the 2–3 month tapering timeline does nothing to prevent the severe physical effects of hormone withdrawal, or the psychological harms that will predictably result for those who are forcibly detransitioned or permanently left without access to care. Nor could it. People denied access to appropriate medical treatment in custody stand a grave risk of anxiety, depression, suicidal ideation, suicide attempts, self-castration attempts, and self-harm that could result in permanent physical injury or death. Indeed, studies have shown that when transgender individuals are denied appropriate medical care, their risk of severe psychological distress and suicide is all the more acute.[7]

---

[7] Mattia Marchi, et al., *Mental Health of Transgender People in Prison: A Systematic Review and Meta- Analysis*, 36 INT'L REV. OF PSYCHIATRY 714–728 (2024); https://doi.org/10.1080/09540261.2023.2287680; Marie Claire Van Hout et al., *Contemporary Transgender Health Experience and Health Situation in Prisons: A Scoping Review of Extant Published Literature* (2000–2019), 21 INT'L J. OF TRANSGENDER HEALTH 258 (2020), https://doi.org/10.1080/26895269.2020.1772937; Leah Drakeford, *Correctional Policy and Attempted Suicide Among Transgender Individuals*, 24 J. OF CORR. HEALTH CARE 171 (2018), https://doi.org/10.1177/1078345818764110.

These risks are known to GDC and Centurion for a myriad of reasons, including but not limited to:

(1) The numerous incidences transgender people with gender dysphoria in GDC custody or under Centurion's care experiencing suicidal ideation, attempting suicide, self-castration, or self-harm, leading to injury or death in instances where they had trouble accessing gender dysphoria treatment or evaluations;

(2) Recurring litigation against Centurion and the GDC concerning the dire consequences of withholding gender-affirming care, including *Diamond v. Owens*, 131 F. Supp. 3d 1346 (M.D. Ga. 2015) (transgender woman in GDC custody repeatedly attempted self-castration after being denied HRT); *Doe v. Georgia Dep't of Corr.*, 730 F. Supp. 3d 1327, 1338–39 (N.D. Ga. 2024), *appeal dismissed as moot*, No. 24-11382, 2025 WL 1206229 (11th Cir. Mar. 6, 2025) (transgender woman in custody attempted suicide and to castrate herself after GDC and Centurion refused to treat her gender dysphoria symptoms with any treatment beyond HRT ); *Bayse v. Philbin*, No. 1:22-cv-00024, 2024 WL 695414 (S.D. Ga. Feb. 20, 2024), *report and recommendation adopted*, 2024 WL 1291525 (S.D. Ga. Mar. 26, 2024), appeal docketed, No. 24-11299 (11th Cir. Apr. 15, 2024) (transgender woman attempted suicide after prescribed gender dysphoria treatment was withdrawn);[8] and

(3) GDC and Centurion's own pre-SB 185 policies and procedures, which acknowledge that gender dysphoria presents "serious medical needs which *may not be ignored*," and mandate individualized treatment based on patient need. GDC Management & Treatment of Offenders Diagnosed with Gender Dysphoria, SOP 507.04.68 (IV)(A)(6) (last accessed July 18, 2025) (emphasis added).

Accordingly, the consequences of restricting gender dysphoria treatment without consideration of patient need are not only foreseeable; they were *foreseen by* GDC.

\*        \*        \*

We urge you to immediately abandon your plan to implement SB 185 across GDC, not only because the Constitution requires it, but for the sake of preventing the severe psychological and physical harm, including disabling injuries and/or death by suicide, that will result in those in GDC custody with gender dysphoria. As government officials, you retain the discretion to refuse to enforce unconstitutional state laws; you must exercise that authority immediately and refuse to enforce SB 185.

---

[8] *See* U.S. Dep't of Justice, Civil Rights Div., INVESTIGATION OF GEORGIA PRISONS, 22 (2024).https://www.justice.gov/crt/media/1371406/dl.

**Please respond to this letter by July 30, 2025** and confirm that GDC and Centurion Health will cease and reverse all unconstitutional efforts to implement SB 185 or to enforce a blanket ban on evaluation and treatment of incarcerated patients with gender dysphoria. We are available to confer on this matter; however, if we are unable to achieve a prompt and satisfactory resolution of this matter, we will have no choice but to commence litigation.

        Sincerely,

        Emily Early
        Ga. Bar No. 810206
        A. Chinyere Ezie
        NYS Bar No. 4967774
        Center for Constitutional Rights
        666 Broadway, 7th Floor
        New York, NY 10012

        Amanda Kay Seals
        Ga. Bar No. 502720
        Matthew R. Sellers
        Ga. Bar. No. 691202
        Bondurant, Mixson & Elmore, LLP
        1201 W Peachtree St NW
        Suite 3900
        Atlanta, GA 30309

# Appendix A



666 Broadway, 7th Floor
New York, New York 10012
212-614-6464
ccrjustice.org

March 13, 2025

Speaker Jon Burns
Georgia House of Representatives
332 State Capitol
Atlanta, GA 30334
jon.burns@house.ga.gov

Re: **Letter from the Center for Constitutional Rights Regarding the Unconstitutionality of Senate Bill 185 & House Bill 660**

Dear Speaker Burns,

The Center for Constitutional Rights is a national, not-for-profit legal, educational, and advocacy organization dedicated to protecting and advancing rights guaranteed by the United States Constitution, federal statutes, and local and international law. Since our founding in 1966, we have litigated landmark civil rights and human rights cases before the U.S. Supreme Court and other tribunals concerning government overreach and discriminatory state policies, including policies that disproportionately impact LGBTQIA+ communities.

As legal experts who advocate for the rights of transgender, gender nonconforming, intersex, and nonbinary individuals, we write to express our strong opposition to Senate Bill 185 (SB 185) and House Bill 660 (HB 660), which seek to deny essential, evidence-based medical care to transgender individuals with gender dysphoria in the custody of the Georgia Department of Corrections (GDC). In doing so, these bills directly contravene the Eighth Amendment to the U.S. Constitution, which prohibits cruel and unusual punishment and mandates that corrections officials provide adequate medical care to incarcerated people with serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–06 (1976).

**Blanket Treatment Bans on Gender Dysphoria Treatment Violate the U.S. Constitution and Federal Law**

Gender dysphoria is a recognized medical condition that many transgender people experience.[1] Federal courts, including the Eleventh Circuit, have consistently recognized that gender dysphoria is a serious medical condition requiring individualized, evidence-based medical care under the Eighth Amendment. *See, e.g., Keohane v. Fla. Dep't of Corr. Sec.*, 952 F.3d 1257, 1266 (11th Cir. 2020); *Kothmann v. Rosario*, 558 F. App'x 907, 910 n.4 (11th Cir. 2014); *Edmo v. Corizon, Inc.*, 935 F.3d 757, 785 (9th Cir. 2019), *cert. denied sub nom*. *Idaho Dep't of Corr. v.*

---

[1] Gender dysphoria is the psychological distress that results from an incongruence between an individual's gender identity and their assigned sex at birth, and it can lead to significant anxiety, depression, suicide ideation and other disabling conditions when left untreated. *See* AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (5th ed. 2013) (DSM-5); E. Coleman et al., *Standards of Care for the Health of Transgender and Gender Diverse People, Version 8*, 23 INT'L J. OF TRANSGENDER HEALTH S252 (Sept. 15, 2022), https://www.tandfonline.com/doi/pdf/10.1080/26895269.2022.2100644 (hereinafter WPATH Standards).

`

*Edmo*, 141 S. Ct. 610 (Mem.) (2020); *De'lonta v. Angelone*, 330 F.3d 630, 635 (4th Cir. 2003); *White v. Farrier*, 849 F.2d 322, 325 (8th Cir. 1988); *Meriwether v. Faulkner*, 821 F.2d 408, 413 (7th Cir. 1987). In the context of gender dysphoria, such individualized, evidence-based care can include hormone therapy, gender-affirming surgery, and other procedures (hereinafter "gender-affirming care").[2]

If adopted, SB 185 and HB 600 would impose blanket bans on the provision of gender-affirming care to incarcerated people with gender dysphoria, regardless of need.[3]  Blanket bans such as these have repeatedly been found unconstitutional because they show deliberate indifference to incarcerated people's serious medical needs. *See Kosilek v. Spencer,* 774 F.3d 63, 91 (1st Cir. 2014); *Fields v. Smith*, 653 F.3d 550, 559 (7th Cir. 2011); *Hicklin v. Precynthe*, No. 4:16-cv-01357-NCC, 2018 WL 806764, at *11 (E.D. Mo. Feb. 9, 2018); *Diamond v. Owens*, 131 F. Supp. 3d 1346, 1376 (M.D. Ga. 2015); *Soneeya v. Spencer*, 851 F. Supp. 2d 228, 246–47 (D. Mass. 2012). Indeed, as the Eleventh Circuit recognized in *Keohane,* "responding to an inmate's acknowledged medical need with what amounts to a shoulder-shrugging refusal ***to even consider*** whether a particular course of treatment is appropriate is the very definition of 'deliberate indifference.'" *Keohane*, 952 F.3d at 1266–67 (emphasis added).

Beyond the Eighth Amendment, SB 185 and HB 660 violate the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 et *seq.*, and Section 1557 of the Affordable Care Act (ACA), 42 U.S.C. § 18116, because they purposefully deny healthcare based on sex and disability.[4] *See, e.g.*, *Williams v. Kincaid*, 45 F.4th 759, 766–74 (4th Cir. 2022) (affirming that gender dysphoria is a covered disability for purposes of the ADA), *cert. denied*, 143 S. Ct. 2414 (2023); DOJ Statement of Interest at 7–14, *Doe v. Ga. Dep't of Corr.*, No. 1:23-cv-5578-MLB (N.D. Ga. Jan. 8, 2024) (explaining that Gender Dysphoria is covered by the ADA).

**The Consequences of Passing SB 185 and HB 660 Will be Dangerous and Costly**

Adopting legislation like SB 185 and HB 660 that prohibit gender-affirming care regardless of medical necessity not only violates the Constitution and federal statutory protections, but it puts lives at risk. Studies have shown that transgender individuals who are denied appropriate medical treatment in custody, including treatment for gender dysphoria, face an increased risk of severe

---

[2] WPATH Standards, *supra* note 1 (outlining the treatments that can constitute medically necessary gender dysphoria care depending on the individuals). The WPATH Standards are the accepted standards of care for treating patients with gender dysphoria, as recognized by the American Psychiatric Association and the American Medical Association, as well as the Fourth and Ninth Circuits. *See Edmo v. Corizon, Inc.*, 935 F.3d 757, 788 n.16 (9th Cir. 2019) (calling WPATH guidelines "the gold standard on this issue"); *accord De'Lonta v. Johnson*, 708 F.3d 520, 522–23 (4th Cir. 2013).

[3] H.B. 660, 2025 Gen. Assemb., Reg. Sess. (Ga. 2025), *available at* https://legiscan.com/GA/text/HB660/2025 (last visited March 10, 2025); S.B. 185, 2025 Gen. Assemb., Reg. Sess. (Ga. 2025), *available at* https://www.legis.ga.gov/api/legislation/document/20252026/232616 (last video March 10, 2025).

[4] *See* HB 660 § 2(a)(2) (defining the prohibited care as "any medical procedure performed for the purpose of: (A) Enabling an individual to identify with or live as a purported identity inconsistent with such individual's sex; or (B) Treating an individual's purported discomfort or distress from a discordance between such individual's sex and asserted identity."); SB 185 § 1(e)(2) (authorizing gender-affirming care *except* for people with gender dysphoria or those seeking "sex reassignment").

2

psychological distress and suicide.[5] Tragically, at least one transgender person with gender dysphoria has already died by suicide in GDC custody.[6]

History has shown the severe financial and legal consequences of such unconstitutional actions for corrections officials: indeed, Georgia has already paid millions of dollars in damages and settlements to people who were denied necessary medical treatment while incarcerated, including treatment for gender dysphoria.[7] Furthermore, recent legal challenges underscore the risks of adopting policies like those proposed in SB 185 and HB 660. Just last week in *Jones v. Bondi*, Case No. 1:25-cv-401-RCL (D.D.C. Mar. 3, 2025), a federal court enjoined the Federal Bureau of Prisons from denying gender dysphoria healthcare to transgender inmates under a Trump Executive Order, finding such actions unconstitutional under the Eighth Amendment.

Passing SB 185 or HB 660 will all but guarantee that Georgia finds itself embroiled in similar legal challenges and costly and protracted litigation. The state's resources would be far better spent providing constitutionally adequate medical care than defending an indefensible and discriminatory policy in court.

Therefore, we urge you to reject SB 185 and HB 660 and stand against any legislation that endangers lives, violates constitutional and federal law, and exposes Georgia and its taxpayers to unnecessary financial liability.

Sincerely,


The Center for Constitutional Rights


cc.

Chief of Staff, Chris Riley

Executive Assistant, Sheena Wright

---

[5] Mattia Marchi, *et al.*, *Mental health of transgender people in prison: a systematic review and meta-analysis*, 36.7 INT'L REV. OF PSYCHIATRY 714–728 (2024); https://doi.org/10.1080/09540261.2023.2287680; Marie Claire Van Hout et al., *Contemporary transgender health experience and health situation in prisons: A scoping review of extant published literature (2000–2019)*, 21.3 INT'L J. OF TRANSGENDER HEALTH 258 (2020), https://doi.org/10.1080/26895269.2020.1772937; Leah Drakeford, *Correctional Policy and Attempted Suicide Among Transgender Individuals,* 24.2 J. OF CORR. HEALTH CARE 171 (2018), https://doi.org/10.1177/1078345818764110.

[6] U.S. Dep't of Justice, Civil Rights Div., Investigation of Georgia Prisons 22 (2024), https://www.justice.gov/crt/media/1371406/dl.

[7] *See, e.g.,* Carrie Teegardin, Danny Robbins, & Jennifer Peebles, *Prison System Failures Cost Georgia Taxpayers Millions*, ATLANTA JOURNAL-CONSTITUTION (Feb. 1, 2024), https://perma.cc/8LXH-5DPG (noting that GDC spent almost $20 million since 2018 settling claims involving death or injury to people incarcerated in its custody, including a 2021 settlement regarding the suicide of an incarcerated transgender person); Deborah Sontag, *Georgia: State to Pay Transgender Inmate*, N.Y. TIMES, Feb. 16, 2016, https://www.nytimes.com/2016/02/13/us/georgia-state-to-pay-transgender-inmate.html.