IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ISIS BENJAMIN, et al. <br><br> Plaintiffs, <br><br> v. <br><br> COMMISSIONER TYRONE OLIVER, et al., <br><br> Defendants. | Civ. Case No. 1:25-cv-04470-VMC <br><br> **CLASS ACTION** |

**REPLY TO STATE DEFENDANTS' RESPONSE IN OPPOSITION TO
<u>PLAINTIFFS' MOTION FOR CLASS CERTIFICATION</u>**

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

ARGUMENT .......................................................................................................4

I.      Standing is not an obstacle to provisional class certification. ........................4

       A.      All Plaintiffs have standing to seek injunctive relief. ..........................4

       B.      Absent class members likewise have standing to seek a preliminary injunction. ..................................................................................9

II.     The Court may certify an injunction class irrespective of absent class member standing. .................................................................................9

I.      Plaintiffs satisfy all requirements of Rule 23. ..............................................11

       A.      The proposed class is ascertainable. ......................................................11

       B.      Plaintiffs satisfy the commonality, typicality, and adequacy requirements of Rule 23(a). ..............................................................12

       C.      Plaintiffs satisfy the requirements of Rule 23(b)(2). ............................15

CONCLUSION ..................................................................................................15

## INTRODUCTION

The State Defendants ("Defendants") can only sustain their opposition to provisional class certification by mischaracterizing Plaintiffs' claim and requested relief. Defendants insist that Plaintiffs seek a preliminary injunction *requiring* hormone therapy for all provisional class members. From there, Defendants say the Court cannot certify a provisional class unless every class member will receive hormone therapy if Georgia Senate Bill 185 ("SB185") is enjoined.

That is not the case. The constitutional injury for purposes of the preliminary injunction is SB185's blanket hormone therapy ban. Doc. 3 at 4–5.[1] As in other recent challenges to such bans, "the named plaintiffs and putative class members all face the same *legal* injury: namely, the harm that will flow from a uniform policy prohibiting prescribed medical treatment." *Kingdom v. Trump*, Case No. 1:25-cv-691, 2025 WL 1568238, at *14 (D.D.C. June 3, 2025) (emphasis in original).[2]

That ban harms Plaintiffs and every provisional class member uniformly. Defendants have already determined the medical necessity of hormone therapy for provisional class members who received it before SB185. Other Plaintiffs and provisional class members seek treatment evaluations for their gender dysphoria,

---

[1] When citing documents in the Court's electronic record, Plaintiffs refer to the document number and page number(s) in the header generated by the district court's electronic filing system or paragraph number(s), as appropriate.

[2] Unless otherwise noted, quotations, citations, and alterations original to legal citations are omitted, and alterations and emphasis within this brief are added.

which presents "serious medical needs which may not be ignored." Doc. 11-10 at 4. But SB185 uniformly prohibits individualized treatment and evaluations in either case, thus subjecting the entire provisional class to the same foreseeable risks of harm that come with untreated gender dysphoria. *See,* Ettner Decl., (Doc. 11-1), ¶¶ 147–150, 167; Haw Decl., (Doc. 11-2), ¶¶ 42–43, 49–51, 56–57, 61–62.

The requested preliminary injunction will redress that common injury on a class-wide basis by restoring access to hormone therapy based on medical need. Plaintiffs need not show that *every* provisional class member will receive hormone therapy. The "deni[al of] access to medical personnel capable of evaluating the need for treatment" itself violates the Constitution. *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985). Even though people seeking hormone therapy "would still have to take the individualized steps of medical evaluation, prescription, and monitoring," *Robinson v. Labrador*, 747 F. Supp. 3d 1331, 1348 (D. Idaho 2024), success on the preliminary injunction will reestablish access to the individualized medical care that SB185 prohibits.

With that mischaracterization corrected, all the flaws in Defendants' arguments opposing provisional class certification become apparent.

Defendants first challenge class certification based on the erroneous claim that two named Plaintiffs, Benjamin and Madison, and some provisional class members lack Article III standing. Defendants take the mistaken position that *all* provisional

class members must show they individually need hormone therapy to establish redressability. In fact, an injunction will redress provisional class members' injury—the denial of individualized care—by restoring access to hormone therapy evaluations. Benjamin, Madison, and provisional class members seeking hormone therapy evaluations thus have standing.

And even were Defendants right about Benjamin's, Madison's, or the class members' standing (and they are not), they concede—as they must—that this Court has jurisdiction to decide SB185's constitutionality. Under Supreme Court precedent, "one party with standing" to seek an injunction "is sufficient to satisfy Article III[]." *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 53 n.2 (2006); *see also Bowsher v. Synar*, 478 U.S. 714, 721 (1986) (injury to one "member[] of the Union" was "sufficient to confer standing" to seek declaration, such that the Court "need not consider the standing issue as to the Union or Members of Congress"). Plaintiffs Horton, Wilson, and Doe unquestionably have standing, even under Defendants' erroneous view of the relief sought.

Instead, Defendants rely on inapplicable damages cases under Rule 23(b)(3) to argue that absent class member standing somehow impacts class certification. *See* Doc. 26 at 18 (citing *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1273 (11th Cir. 2019)). Not so. Rule 23(b)(3) contains a predominance requirement not found in Rule 23(b)(2). Absent class member standing may defeat predominance in *damages*

3

classes, but that is not a problem in this injunction case.

Defendants' challenges to Rule 23's requirements repeat their mischaracterization of the claim and fail for much the same reasons. SB185 "imposes a blanket prohibition on hormone therapy" and evaluations, so Plaintiffs' claim presents questions common and typical to the class. *Robinson*, 747 F. Supp. 3d at 1345. Rule 23(b)(2) is satisfied because "[a]n injunction" against SB185 "would provide relief to each class member" in the same way, by restoring individualized care. *Id.* at 1349.

In passing, Defendants express skepticism about provisional class certification, Doc. 26 at 7 n.2, but all "provisional" means is that class certification is for purposes of a preliminary injunction rather than final judgment. The Eleventh Circuit has explained "the certification of a class is always *provisional* in nature until the final resolution of the case." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 988 (11th Cir. 2016). Plaintiffs have met their Rule 23 burden for purposes of a preliminary injunction, and the Court should certify a provisional class.

## ARGUMENT

I. **Standing is not an obstacle to provisional class certification.**

   A. **All Plaintiffs have standing to seek injunctive relief.**

Defendants do not dispute that the three Plaintiffs receiving GDC-prescribed hormone therapy prior to SB185—Horton, Wilson, and Doe—have standing. "To have Article III standing, a plaintiff must have suffered an injury in fact that can be

4

fairly traced to the defendant's conduct and that can be redressed with a favorable decision." *Garcia-Bengochea v. Carnival Corp.*, 57 F.4th 916, 922 (11th Cir. 2025). Plaintiffs Horton, Wilson, and Doe meet that standard: they received GDC-prescribed hormone therapy until SB185 prohibited it. "[F]or a class action to be justiciable, all that the law requires is that a named plaintiff have standing." *Cordoba*, 942 F.3d at 1273. Defendants thus rightly concede the Court has jurisdiction to decide SB185's constitutionality. Doc. 26 at 18.

Defendants do, however, challenge the standing of Plaintiffs Benjamin and Madison, who seek an evaluation for hormone therapy. Doc. 26 at 11–16. Focusing solely on redressability, they contend that without a guarantee GDC will prescribe them hormone therapy, enjoining SB 185 will not redress their injuries. *See id.*

This not only overstates the redressability requirement, it mischaracterizes Plaintiffs' request for preliminary relief. "To satisfy [redressability], a plaintiff needs to show that it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Garcia-Bengochea*, 57 F.4th at 927.

Plaintiffs' injury is the blanket denial of individualized care, much as Defendants try to frame it otherwise. Plaintiffs Benjamin and Madison cannot access hormone therapy because, under SB185, Defendants "refuse[] to take the steps to see that [they are] properly evaluated" for hormone therapy, in violation of the Eighth Amendment. *Ancata*, 769 F.2d at 704. A preliminary injunction against

5

SB185 is more than "likely" to redress Benjamin's and Madison's injuries. *Garcia-Bengochea*, 57 F.4th at 927. It would give them access to the individualized evaluation the law prohibits. *Id.*

The pre-SB185 regime establishes how a preliminary injunction could provide meaningful relief. Under GDC's previous Standard Operating Procedures ("SOPs"), "[i]f an offender is believed to be, or self-reports that she/he has Gender Dysphoria, the medical provider shall ensure that the offender receives a complete medical history and physical examination." Doc. 11-10 at 6. SB185, meanwhile, forbids "thorough medical and mental health evaluations" for gender dysphoria. *Id.* An injunction prohibiting the enforcement of SB185 would remove the lone barrier to individualized care.

And even accepting Defendants' erroneous view of the relief sought, Plaintiffs Madison and Benjamin still satisfy redressability. Defendants fail to recognize that, to establish redressability, "the relief sought need not be complete." *Garcia-Bengochea*, 57 F.4th at 927. Redressability requires only that "a decision in [Plaintiffs'] favor would significantly increase the likelihood that [they] would obtain relief that directly redresses the injury suffered." *Id.* Benjamin and Madison meet that standard. Today, they have zero chance to get hormone therapy. With an injunction, they have an opportunity to get hormone therapy. That is a significant increase in the likelihood of relief by any measure.

That is particularly so when GDC has prescribed both Plaintiffs Benjamin and Madison hormone therapy in the past. Isis Benjamin has been on hormone therapy consistently since 2003, except for a prior stint in GDC custody from 2020 to 2021. Benjamin Decl. (Doc. 11-3), ¶ 8. GDC prescribed Benjamin hormone therapy in that period, but it took eight to ten months to restart hormone therapy. *Id.* ¶¶ 12–13. Meanwhile, GDC has diagnosed Madison with gender dysphoria three times and prescribed hormone therapy in the past, but she was released before GDC administered it. Madison Decl. (Doc. 11-5) ¶¶ 8–10. Because GDC's pre-SB185 policies only authorized hormone therapy when GDC clinicians deemed it medically necessary based on a patient's "documented medical need," Doc. 11-11 at 19, Doc. 11-10 at 7, Defendants cannot credibly claim that an injunction would not "significantly increase the likelihood" that Plaintiffs Benjamin and Madison receive hormone therapy.

Eleventh Circuit precedent also confirms that Plaintiffs Benjamin and Madison can establish redressability based on the increased likelihood of receiving hormone therapy. In *Harrell v. The Florida Bar*, the Eleventh Circuit held the redressability standard satisfied where a Florida lawyer challenged certain bar rules on advertising, even though other bar rules he did not challenge also regulated his advertisements. 608 F.3d 1241, 1260 (11th Cir. 2010). The court reasoned that the lawyer would "be allowed to run many or all of the advertising campaigns … , at

7

least in a form far closer to what he envisions than the 'minimalist' campaign he has run thus far." *Id.* at 1260 n.7. Similarly, an individualized evaluation for hormone therapy would be meaningful relief, even if Benjamin and Madison do not ultimately receive hormone therapy.

To argue otherwise, Defendants selectively quote *Berrocal v. Attorney General*, 136 F.4th 1043 (11th Cir. 2025), and *Lewis v. Governor of Alabama*, 944 F.3d 1287 (11th Cir. 2019) (en banc). But those cases reaffirm that Plaintiffs have standing if the injunction will "significantly increase the likelihood that [they] would obtain relief that directly redresses the injury that [they] claim[] to have suffered." *Berrocal*, 136 F.4th at 1052 (quoting *Lewis*, 944 F.3d at 1301). Plaintiffs Benjamin and Madison meet that standard: GDC's pre-SB185 policies recognized that "appropriate management" of gender dysphoria requires individualized medical treatment and evaluations. Doc. 11-10 at 4; Doc.11-9 at 5. GDC's policies also mandated that gender dysphoria patients receive "thorough medical and mental health evaluation[s]" to determine, among other things, whether hormone therapy is necessary. Doc. 11-10 at 4; Doc. 11-9 at 5.

Thus, with the grant of an injunction, Plaintiffs Benjamin's and Madison's likelihood of receiving an individualized assessment for hormone therapy will be 100% (up from *zero*). This is a "significant[] increase." *Berrocal*, 136 F.4th at 1052.

8

### B. Absent class members likewise have standing to seek a preliminary injunction.

Defendants similarly contend that absent class members seeking hormone therapy also lack standing. Doc. 26 at 16–18. They concede this is not a jurisdictional problem, since only one Plaintiff is needed to establish injunctive standing, but they say it has "implications for whether class certification is appropriate." Doc. 26 at 18. The Defendants' standing argument lacks merit.

Plaintiffs' proposed provisional class does not include anyone without Article III standing. Defendants do not dispute that provisional class members receiving hormones prior to SB185 have standing. Doc. 26 at 16–18. And, as shown above, anyone seeking hormone therapy also has standing because SB185 prohibits individualized evaluations for that treatment in violation of settled law. *Ancata*, 769 F.2d at 704; *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266–67 (11th Cir. 2020). Thus, absent class members seeking hormone therapy have standing for the same reasons that Plaintiffs Benjamin and Madison do: because an injunction against Defendants' enforcement of SB185 would entitle them to the individualized evaluation the law currently prohibits, in violation of the Eighth Amendment.

### II. The Court may certify an injunction class irrespective of absent class member standing.

Even if some absent class members did not meet the standing requirement (which is not the case), certification does not require that all class members have

9

standing. As Defendants acknowledge, Doc. 26 at 18, "for a class action to be justiciable, all that the law requires is that a <u>named</u> plaintiff have standing." *Cordoba*, 942 F.3d at 1273. Under Supreme Court precedent, only one plaintiff need have standing to seek an injunction. *Rumsfeld*, 547 U.S. at 53 n.2, *Bowsher*, 478 U.S. at 721. Thus, in "Rule 23(b)(2) class actions, it is well settled that the standing inquiry focuses solely on the named plaintiff or proposed class representative," *Chianne D. v. Weida*, Case No. 3:23-cv-985, 2024 WL 1743334, at *16 (M.D. Fla. April 23, 2024). Benjamin's and Madison's standing therefore suffices to certify a class.

To argue that absent class member standing affects class certification, Defendants cite inapplicable cases about Rule 23(b)(3) *damages* classes. Doc. 26 at 18. The Court need not wade into this issue because, as shown in Sect. I.A., all class members have standing as the class is defined. Regardless, Defendants' cases turn on a predominance requirement not found in Rule 23(b)(2). Whatever role absent class member standing plays in the Rule 23(b)(3) analysis, it has none in the Rule 23(b)(2) analysis. The Court should thus reject Defendants' attempt to smuggle a predominance requirement into Rule 23(b)(2).[3] Thus, even if some provisional class members lacked standing, this action may proceed as a class because the named Plaintiffs have standing. That is all that is required in Rule 23(b)(2) cases.

---

[3] As the Supreme Court has explained, "[w]hen a class seeks an indivisible injunction benefiting all its members at once, … [p]redominance and superiority are self-evident." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362–63 (2011).

10

### III.  Plaintiffs satisfy all requirements of Rule 23.

Defendants do not dispute that Plaintiffs satisfy Rule 23(a)'s numerosity requirement, or Rule 23(g)'s adequacy requirement. Doc. 26 at 18–24. Instead, they dispute ascertainability, commonality, and typicality, and claim that Plaintiffs fail to satisfy Rule 23(b)(2). None of these arguments have merit.

#### A.  The proposed class is ascertainable.

Plaintiffs satisfy Rule 23's "implied" ascertainability requirement because the class "membership is capable of determination." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1304 (11th Cir. 2021). Defendants do not dispute ascertainability as to those who received GDC-prescribed hormones prior to SB185. Doc. 26 at 19–21. They also agree that a person becomes a class member "if he asks his doctor to prescribe" hormone therapy. Doc. 26 at 19. But they claim that the inclusion of class members seeking hormone therapy makes class membership "subjective." *Id.* Not so.

Defendants will be able to tell who is seeking hormone therapy. They had no trouble doing so under GDC's pre-SB185 policies. Those policies, specifically SOP 508.40 § IV.D, provided: "[a]ll offenders who identify as Transgender and request hormone treatment … will be referred to the Medical Department to be evaluated and referred to an endocrinologist or other appropriate provider." Doc. 11-9 at 5. And GDC identified people with gender dysphoria based on "report[s] to staff that an offender reports they have or have been diagnosed with Gender Dysphoria" or a

11

person's "self-report[] that she/he has Gender Dysphoria." Doc. 11-10 at 4, 6. Defendants' suggestion that the word "seek" is somehow less ascertainable than its common synonym "request" in the pre-SB185 policies is not credible.

Of course, to the extent the Court thinks the class definition vague, "it is well-established that the Court may, in its discretion, modify the definition of the proposed class to provide the necessary precision." *Fla. Immigrant Coal. v. Uthmeier*, 780 F. Supp. 3d 1235, 1270 (S.D. Fla. 2025). The proper response to any purported vagueness is to modify the definition, not deny certification. *Id.*

One final point on ascertainability. Defendants suggest that the class's ascertainability implicates the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626(a)(1)(A), but that is wrong. Doc. 26 at 20–21. Plaintiffs' Preliminary Injunction Motion explains why their proposed preliminary injunction satisfies the PLRA, Doc. 3 at 26, but the PLRA does not govern class certification. "The text of Section 3626(a)(1)(A) plainly says nothing at all about the class actions or the requirements for class certification." *Yates v. Collier*, 868 F.3d 354, 369 (5th Cir. 2017). "There is therefore no basis for engrafting Section 3626(a)(1)(A)'s requirements onto Rule 23(b)(2)." *Id.*

### B.   Plaintiffs satisfy the commonality, typicality, and adequacy requirements of Rule 23(a).

Contesting Rule 23(a)'s commonality, typicality, and adequacy prongs, Defendants again mischaracterize the claim and relief as seeking hormone therapy

for each class member, as opposed to an injunction against a blanket ban on hormone therapy and evaluations, irrespective of individual medical need. Once that mischaracterization is corrected, Defendants' arguments all fall away.

**On commonality**, Defendants say that "individualized proof" is necessary to show the "unconstitutional denial of cross-sex hormones." Doc. 26 at 21–22. But since the injury is the denial of individualized treatment, this argument lacks merit. As another district court observed in rejecting a similar argument, "[i]f the contemplated relief were for each class member to be provided with gender-affirming care, the defendants might be right." *Kingdom*, 2025 WL 1568238, at *13. That is not, however, "the nature of the plaintiffs' claims," *id.*, not in *Kingdom* and not here. Like the *Kingdom* plaintiffs, Plaintiffs "do not claim that all class members are actually injured by the denial of gender-affirming care, but rather by a blanket policy that may prevent them from accessing such care, should they be deemed to need it due to their shared medical condition." *Id.* That question can be answered—as it was in *Kingdom*—on a common basis. *See id.*

Similarly in *Robinson v. Labrador*, another hormone-ban case, the court held that the fact that "individual medical circumstances of each inmate may vary" did not defeat commonality. 747 F. Supp. 3d at 1345. Instead, whether a "prohibition" on hormone therapy and evaluations "is medically unacceptable as to those who would otherwise be eligible and whether it requires prison medical personnel to

13

consciously disregard excessive risks to the health of the proposed class members are questions common to the proposed class." *Id.*

As in *Kingdom* and *Labrador*, Defendants have denied treatment in absolute terms, pursuant to a uniform policy. That policy deprives every class member of individualized care. The (un)constitutionality of that policy is common to the class.

**On typicality,** Defendants recycle the same argument, claiming those "who have never received cross-sex hormones from GDC during their current term of imprisonment do not possess the same interest [or] suffer the same injury as inmates who have." Doc. 26 at 22. Again, because the injury is the denial of individualized treatment and evaluations, SB185 applies equally to all.

Plaintiffs do not "present any claim that is unique to them." *Labrador*, 747 F. Supp. 3d at 1346. "Instead, they, like the proposed class, seek only injunctive relief from [SB185's] prohibition of the use of state funds for hormone therapy" and evaluations. *Id.* Plaintiffs and all class members are thus "subject to the same alleged injury … caused by the same course of conduct—Defendants' adherence to" SB185. *Id.* That makes Plaintiffs' claims typical.

**And on adequacy**, there is no conflict between Plaintiffs and the class members. Plaintiffs and class members have the same interest in enjoining SB185 so they may receive individualized care. Even if any given class member does not ultimately receive hormone therapy, that does not obviate each class member's

interest in removing SB185 as an obstacle to receiving care.

If this case proceeded as Defendants want, every class member would have to bring an individual lawsuit asserting the same Eighth Amendment claim to enjoin SB185 as to them. Rule 23 exists to avoid that and instead offers an economical way to address—uniformly—SB185's harm. Rule 23(a)'s requirements are satisfied.

### C. Plaintiffs satisfy the requirements of Rule 23(b)(2).

Defendants' opposition to Plaintiffs' proposed Rule 23(b)(2) injunctive relief class argues—again—that an injunction would be "inadequate to provide each member of the proposed class" with hormone therapy. Doc. 26 at 24. But, again, that misses the point. SB185 obligates Defendants to refuse to provide hormone therapy and treatment evaluations to anyone with gender dysphoria who enters its custody. "An injunction on [SB185] would provide relief to each class member, and in no way differentiates between class members." *Labrador*, 747 F. Supp. 3d at 1349. A "comprehensive, blanket policy to end hormone therapy" and evaluations "is the exact type of generally applicable policy that a Rule 23(b)(2) class action can properly seek to enjoin." *Kingdom*, 2025 WL 1568238, at *16.

## CONCLUSION

The Court should reject the State Defendants' Opposition and certify a class for purposes of a preliminary injunction against SB185.

*[Signature appears on following page.]*

15

Respectfully submitted this 25th day of August, 2025.

Emily C. R. Early,
GA Bar No. 810206
eearly@ccrjustice.org
A. Chinyere Ezie*
cezie@ccrjustice.org
Celine Zhu*
czhu@ccrjustice.org
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Phone: (212) 614-6464

D. Korbin Felder*
kfelder@ccrjustice.org
CENTER FOR CONSTITUTIONAL RIGHTS
P.O. BOX 12046
Jackson, MS 39236
Phone: (601) 228-6101

*Admitted Pro Hac Vice*

/s/ *Amanda Kay Seals*
Amanda Kay Seals
GA Bar No. 502720
seals@bmelaw.com
Matthew R. Sellers
GA Bar No. 691202
sellers@bmelaw.com
BONDURANT, MIXSON & ELMORE, LLP
1201 W Peachtree St NW
Suite 3900
Atlanta, GA 30309
Phone: (404) 881-4100
Fax: (404) 881-4111

*Counsel for Plaintiffs*

Signature Page

## Certificate of Compliance

Pursuant to Local Rule 7.1(D), I certify that this submission complies with the page and word requirements in Local Rule 5.1 because it does not exceed 15 pages and is prepared with size 14-point Times New Roman font.

*/s/ Amanda Kay Seals*
Amanda Kay Seals

Local Rule 7.1(D) Certificate

## Certificate of Service

I certify that on August 25, 2025, I submitted the foregoing via the Court's CM/ECF system, which will serve an electronic copy on all attorneys of record.

*/s/ Amanda Kay Seals*
Amanda Kay Seals

Certificate of Service