**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |
|---|---|
| ISIS BENJAMIN; FANTASIA HORTON; NAEOMI MADISON; BRYNN WILSON; and JOHN DOE;<br><br>on behalf of themselves and all persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COMMISSIONER TYRONE OLIVER, in his official capacity; ASSISTANT COMMISSIONER RANDY SAULS, in his official capacity; STATEWIDE MEDICAL DIRECTOR DR. MARLAH MARDIS, in her official capacity; and CENTURION OF GEORGIA, LLC,<br><br>Defendants. | Civ. Case No. 1:25-cv-04470-VMC<br><br>**CLASS ACTION** |

## PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND PERMANENT INJUNCTION AND MEMORANDUM OF LAW IN SUPPORT

# TABLE OF CONTENTS

Table of Authorities.................................................................................................. ii

Introduction ...............................................................................................................1

Background .................................................................................................................2

Argument....................................................................................................................5

I.    Plaintiffs are entitled to summary judgment on their Eighth Amendment claim concerning Defendants' blanket ban on hormone therapy treatment and evaluations. ......................................................................................................5

   A.    Defendants engaged in deliberate indifference based on the unrebutted factual evidence....................................................................................................6

II.    Plaintiffs are entitled to a permanent injunction. ......................................12

   A.    Plaintiffs have suffered irreparable harm that cannot be adequately compensated by remedies at law....................................................................13

   B.    The balance of hardships and public interest factors decidedly favor Plaintiffs. .........................................................................................................15

III.   Plaintiffs' requested relief meets the needs-narrowness-intrusiveness requirements of the PLRA. ..............................................................................16

Conclusion ...............................................................................................................18

i

# TABLE OF AUTHORITIES

## Cases

*Ancata v. Prison Health Servs., Inc.*,
    769 F.2d 700 (11th Cir. 1985) ..................................................................11, 12, 17

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ...........................................................................................5

*Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*,
    522 F.3d 1200 (11th Cir. 2008) .........................................................................13

*Barrett v. Walker Cnty. Sch. Dist.*,
    872 F.3d 1209 (11th Cir. 2017) .........................................................................15

*BlueCross BlueShield of S.C. v. Carillo*,
    372 F. Supp. 2d 628 (N.D. Ga. 2005) .................................................................5

*Citizens Ins. Co. of Am. v. Banyan Tree Mgmt., LLC*,
    631 F. Supp. 3d 1256 (N.D. Ga. 2022) ...............................................................5

*Democratic Exec. Comm. of Fla. v. Lee*,
    915 F.3d 1312 (11th Cir. 2019) .........................................................................16

*Doe v. Ga. Dep't of Corr.*,
    730 F. Supp. 3d 1327 (N.D. Ga. 2024) .............................................................15

*Doe v. Ga. Dep't of Corr.*,
    No. 24-11382, 2025 WL 1206229 (11th Cir. Mar. 6, 2025) .............................15

*Edmo v. Corizon, Inc.*,
    935 F.3d 757 (9th Cir. 2019)..............................................................................15

*Estelle v. Gamble*,
    429 U.S. 97 (1976)........................................................................................12, 17

*Gerling Glob. Reinsurance Corp. of Am. v. Gallagher*,
    267 F.3d 1228 (11th Cir. 2001) ...........................................................................5

*Helling v. McKinney*,
   509 U.S. 25 (1993)..................................................................................14

*Keohane v. Fla. Dep't of Corr. Sec'y*,
   952 F.3d 1257 (11th Cir. 2020)...........................................................12, 17

*KH Outdoor, LLC v. City of Trussville*,
   458 F.3d 1261 (11th Cir. 2006)........................................................12, 13, 16

*Melendez v. Sec'y, Fla. Dep't of Corr.*,
   No. 21-13455, 2022 WL 1124753 (11th Cir. Apr. 15, 2022).............................16

*Popowski v. Parrott*,
   461 F.3d 1367 (11th Cir. 2006)...............................................................5

*Scott v. Roberts*,
   612 F.3d 1279 (11th Cir. 2010)...........................................................13, 16

*Stalley v. Cumbie*,
   124 F.4th 1273 (11th Cir. 2024).............................................................6, 11

*Thomas v. Bryant*,
   614 F.3d 1288 (11th Cir. 2010)...............................................................14

*W. Virginia by & through Morrisey v. U.S. Dep't of the Treasury*,
   59 F.4th 1124 (11th Cir. 2023).................................................................13

*Wade v. McDade*,
   106 F.4th 1251 (11th Cir. 2024).................................................................6

## Federal Rules and Statutory Authority

Fed. R. Civ. P. 56.............................................................................1, 2, 5, 12

Fed. R. Civ. P. 65..................................................................................1, 2

18 U.S.C. § 3626.........................................................................2, 16, 17, 18

**INTRODUCTION**

Plaintiffs, who are transgender people with gender dysphoria in the custody of the Georgia Department of Corrections ("GDC"), move this Court for partial summary judgment and a permanent injunction pursuant to Federal Rules of Civil Procedure 56 and 65 on their Eighth Amendment hormone therapy ban claim. Specifically, they seek a ruling that Defendants Oliver, Sauls, and Mardis (the "State Defendants"), and GDC's correctional healthcare provider, Centurion of Georgia, LLC's ("Centurion") decision to enforce Georgia Senate Bill 185's (SB185) blanket hormone therapy ban violates the Eighth Amendment to the U.S. Constitution. Plaintiffs also seek a permanent injunctive order barring Defendants from enforcing SB185's hormone therapy ban against them and others who are similarly situated ("Class Members").

The facts and legal argument set forth in Plaintiffs' Emergency Motion for Preliminary Injunction, Reply in Support, and accompanying evidence are incorporated herein. *See* Doc. 3, Emergency Mot. for Prelim. Inj.; Doc. 11 *et seq.*, Notice of Filing & Exhibits; Doc. 37, Reply to State Defs.' Opp'n to Mot. for Prelim. Inj.; Doc. 38, Reply to Centurion's Resp. to Mot. for Prelim. Inj. & Class Certification.[1] The Parties also agree that all the facts relevant to the determination

---

[1] Because Plaintiffs fully incorporate the arguments and evidence set forth in their preliminary injunction briefing consistent with Rule 65(a)(2) and with Court

of this motion are set forth in the evidentiary record accompanying Plaintiffs' Motion.[2]

Because the facts and the law establishing Defendants' liability on Plaintiffs' Eighth Amendment hormone therapy ban claim ultimately remain unchanged since the Court's entry of its preliminary injunction, partial summary judgment is warranted pursuant to Rule 56(a) for the same reasons preliminary relief was appropriate. The Court should also enter a permanent injunction in connection with this Eighth Amendment claim pursuant to Rule 65 to prevent certain and irreparable harm to Plaintiffs and Class Members beginning on December 3, 2025, when the Court's first preliminary injunction expires pursuant to the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626(a)(2).

## BACKGROUND

SB185, signed into law on May 8, 2025, imposes a blanket ban on gender dysphoria treatment, including hormone therapy and evaluations. SB185, 2025 Leg., Reg. Sess. § 1(e)(1)-(2) (Ga. 2025); Benjamin Decl. (Doc. 11-3) ¶¶ 14–25; Horton Decl. (Doc. 11-4) ¶¶ 12–19; Madison Decl. (Doc. 11-5) ¶ 17; Wilson Decl. (Doc. 11-6) ¶¶ 12-13; Doe Decl. (Doc. 11-7) ¶¶ 16-17; Doc. 11-21, July 21 Notice Letter at

---

permission, Doc. 50, Order Granting Prelim. Inj. Mot., at 63–64, this brief provides only a summary of relevant factual and legal points.

[2] The parties have further agreed to waive hearsay and admissibility objections to all such evidence. Doc. 69, Status Report, at 2.

2

2–7. Georgia Board of Corrections Board Rule 125-4-4-.13, preliminarily adopted in June 2025, imposes identical restrictions. Doc. 11-14, Board Rule 125-4-4-.13, at 3. In July 2025, Defendants began enforcing SB185's hormone therapy ban within GDC by tapering Plaintiffs and Class Members off their medically necessary hormone therapy and denying evaluations to people with gender dysphoria diagnoses seeking to initiate hormone therapy as treatment. Doc. 11-20, SB 185 Implementation Plan at 2, 10–16. Plaintiffs initiated this lawsuit on August 8, 2025, less than one month after enforcement began. Doc. 1, Compl. Plaintiffs also contemporaneously filed a Motion for Preliminary Injunction seeking to enjoin SB185's hormone therapy ban and a Motion for Provisional Class Certification. Doc. 2, Mot. for Class Certification; Doc. 3.

Following a motions hearing, the Court granted Plaintiffs' Motion for a Preliminary Injunction and certified two provisional classes. Class A (the "Receiving Class"), represented by Plaintiffs Horton, Wilson, and Doe, comprises "All individuals incarcerated in GDC facilities who are receiving hormone therapy now proscribed by S.B. 185 or who were receiving hormone therapy proscribed by S.B. 185 on May 8, 2025." Doc. 50 at 62. Class B (the "Requesting Class"), represented by Plaintiffs Benjamin and Madison, comprises "All individuals incarcerated in

3

GDC facilities not in Class A who identify as transgender and request hormone treatment now proscribed by S.B. 185." *Id*.[3]

The Court enjoined Defendants from enforcing SB185 against members of both classes. Doc. 50 at 62–63. It also ordered Defendants to restore the hormone therapy previously prescribed to members of the Receiving Class, and to ensure that members of the Requesting Class continued to receive hormone therapy evaluations "without regard to S.B. 185 compliance." *Id*. The Court also ordered the parties to brief whether partial summary judgment was appropriate on Plaintiffs' Eighth Amendment hormone therapy ban claim given the apparent lack of factual disputes between the parties. *Id*. at 63–64.[4]

Even though the Court determined that Defendants were "implementing an unconstitutional policy" once already, Doc. 50 at 44, during an October 30, 2025 status conference, Defendants notified the Court and Parties of their intent to resume enforcing SB185's hormone therapy ban in December after the existing preliminary injunction expires. Doc. 67, Minute Entry.

---

[3] Plaintiffs are simultaneously moving the Court to make its class certification decision permanent under Rule 23.

[4] After the State Defendants filed a Notice of Appeal, Doc. 51, and moved to stay the Court's Preliminary Injunction Order, 11th Cir. Doc. 7, the Court temporarily adjourned the Parties' briefing deadlines to avoid parallel proceedings. See Text Order of Sept. 16, 2025.

Accordingly, Plaintiffs move for partial summary judgment and a permanent injunction to make the district court's preliminary relief permanent.

## ARGUMENT

**I.   Plaintiffs are entitled to summary judgment on their Eighth Amendment claim concerning Defendants' blanket ban on hormone therapy treatment and evaluations.**

"Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Gerling Glob. Reinsurance Corp. of Am. v. Gallagher*, 267 F.3d 1228, 1233–34 (11th Cir. 2001) (citing Fed. R. Civ. P. 56(c)). Courts "view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion and all reasonable doubts about the facts [are] resolved in favor of the non-movant." *Id*. (cleaned up).

"Disputed facts that do not resolve or affect the outcome of a suit properly will not preclude the entry of summary judgment." *BlueCross BlueShield of S.C. v. Carillo*, 372 F. Supp. 2d 628, 640 (N.D. Ga. 2005), *aff'd sub nom. Popowski v. Parrott*, 461 F.3d 1367 (11th Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Thus, to be material, a fact must be able to "affect the outcome of the lawsuit under the governing legal principles." *Citizens Ins. Co. of Am. v. Banyan Tree Mgmt., LLC*, 631 F. Supp. 3d 1256, 1268 (N.D. Ga. 2022), *aff'd,* No. 22-13581, 2023 WL 6319224 (11th Cir. Sept. 28, 2023) (citing *Anderson*, 477 U.S. at 248).

### A. Defendants engaged in deliberate indifference based on the unrebutted factual evidence.

Prison officials show deliberate indifference to serious medical needs in violation of the Eighth Amendment when they "(1) ha[ve] subjective knowledge of a risk of serious harm, (2) disregard[] that risk, and (3) engage[] in conduct that amounts to subjective recklessness." *Stalley v. Cumbie*, 124 F.4th 1273, 1283 (11th Cir. 2024); *accord Wade v. McDade*, 106 F.4th 1251, 1253 (11th Cir. 2024) (en banc). Because the Court's Preliminary Injunction Order was based on overwhelming, unrebutted factual evidence, and the relevant facts and law remain unchanged, partial summary judgment is warranted here for the same reasons that the Court found that Plaintiffs were substantially likely to succeed on the merits of their Eighth Amendment claim.

The facts material to Plaintiffs' Eighth Amendment claim are wholly undisputed. There is no dispute between the Parties that:

− Gender dysphoria is a serious medical need requiring individualized treatment and evaluations, and hormone therapy can be medically necessary treatment for gender dysphoria patients under applicable standards of care. *See, e.g.*, Ettner Decl. (Doc. 11-1) ¶¶ 24–25, 45–59, 163–66; Haw Decl. (Doc. 11-2) ¶¶ 11–12, 16–17, 19, 21–32, 34–35, 54, 61; Doc. 11-8, NCCHC Position Stmt. at 2–5; Doc. 11-10, SOP 507.04.68 (§§ IV.C; D(d)); Doc. 11-9, SOP 508.40

6

(§ IV.A–F); Doc. 11-10, SOP 507.04.68 (§§ IV.A.6; C–D); Doc. 11-11, SOP 220.09 (§§ IV.K.4–8).

– Psychotherapy is not a substitute for hormone therapy, nor are treatments aimed primarily at the treatment of anxiety or depression. *See, e.g.*, Ettner Decl. (Doc. 11-1) ¶¶ 95-97, 169; Haw Decl. (Doc. 11-2) ¶¶ 33, 43–45, 63; Doc. 11-9, SOP 508.40 (§ IV.D); Doc. 11-21, July 21 Notice Letter at 7–8.

– Gender dysphoria patients can experience severe gender dysphoria symptoms like anxiety, depression, suicidality, suicide, self-harm, and self-castration attempts without adequate treatment. *See, e.g.*, Ettner Decl. (Doc. 11-1) ¶¶ 124-162, 164, 167; Haw Decl. (Doc. 11-2) ¶¶ 32, 42–43, 49–51, 56–57, 61–62; Doc. 11-21, July 21 Notice Letter at 7–8.

– Tapering individuals off medically necessary hormone therapy carries additional physical and psychological risks. *See, e.g.*, Ettner Decl. (Doc. 11-1) ¶¶ 147–155, 157–162, 167; Haw Decl. (Doc. 11-2) ¶¶ 42-43, 46–51, 56-57, 61–62; Doc. 11-20, SB 185 Implementation Plan, at 14; Doc. 11-21, July 21 Notice Letter at 7–8; Doc. 25, State Defs.' Opp'n to Prelim. Inj. Mot., at 24.

– Prior to the passage of SB185, Defendants authorized hormone therapy for gender dysphoria patients because they knew it could be medically necessary gender dysphoria treatment, and that denying treatment to patients who needed it posed severe health risks. *See, e.g.*, Doc. 11-9, SOP 508.40 (§ IV.D);

Doc. 11-10, SOP 507.04.68 (§§ IV.C–D); Doc. 11-11, SOP 220.09 (§§ IV.A.6, K.4–8).

– Hormone therapy was only prescribed to gender dysphoria patients in GDC custody when healthcare personnel determined it was medically necessary treatment for their gender dysphoria. *See, e.g.*, Doc. 11-11, SOP 220.09 (§ IV.K.8); Doc. 11-9, SOP 508.40 (§ IV.D); Doc. 11-10, SOP 507.04.68 (§§ IV.C.1-6; IV.D.1.d); Horton Decl. (Doc. 11-4) ¶¶ 7-8; Doe Decl. (Doc. 11-7) ¶¶ 7-9.

– Before July 1, 2025, over one hundred Class Members, including Plaintiffs Doe, Horton, and Wilson, were receiving hormone therapy, and hormone therapy was determined to be medically necessary for each of the Plaintiffs and Class Members to whom it was prescribed. *See, e.g.*, Doc. 11-10, SOP 507.04.68 (§ IV.D); Wynne Decl. (Doc. 28-1) ¶ 3; Horton Decl. (Doc. 11-4) ¶¶ 7-8; Doe Decl. (Doc. 11-7) ¶¶ 7-9.

– Before July 1, 2025, other gender dysphoria patients, including Plaintiffs Benjamin and Madison, were awaiting hormone therapy evaluations. Benjamin Decl. (Doc. 11-3) ¶¶ 12–25; Madison Decl. (Doc. 11-5) ¶¶ 12–18.

– In July 2025, Defendants began implementing SB185 across GDC—a blanket ban on hormone therapy as gender dysphoria treatment regardless of medical necessity or a patient's ability to self-pay. Doc. 11-20, SB 185 Implementation

8

Plan, at 2, 10–16; Wynne Decl. (Doc. 28-1) ¶¶ 4, 9, 11; Horton Decl. (Doc. 11-4) ¶ 19; Doc. 25 at 30.

- Defendants implemented SB185's hormone therapy ban despite knowing that similar bans on hormone therapy had been enjoined under the Eighth Amendment, or correctional healthcare officials (including Centurion's affiliate) simply declined to enforce them. Doc. 11-21, July 21 Notice Letter at 4–6.

- Pursuant to the ban, Defendants began terminating hormone therapy they knew to be medically necessary for Plaintiffs and Class Members and ceased offering hormone therapy evaluations to new gender dysphoria patients, despite knowing that individualized treatment was required. Doc. 11-9, SOP 508.40 (§ IV.A–F); Doc. 11-10, SOP 507.04.68 (§§ IV.A.6, C–D); Doc. 11-11, SOP 220.09 (§§ IV.K.4–8); Doc. 11-20, SB 185 Implementation Plan at 5 (citing Doc. 11-8, NCCHC Position Stmt. and Doc. 11-10, SOP 507.04.68), 10–16; Wynne Decl. (Doc. 28-1) ¶¶ 4, 9, 11; Doc. 11-21, July 21 Notice Letter at 2–8.

- Defendants took these actions and implemented their blanket hormone therapy ban for a single nonmedical reason—SB185—despite knowing the immense harm they posed to Plaintiffs and Class Members. Doc. 11-20, SB 185 Implementation Plan at 10–16; Wynne Decl. (Doc. 28-1) ¶¶ 4–11; Doc.

11-16, Oliver-Ammons Text Message at 2; Doc. 11-21, July 21 Notice Ltr. at 5–8; Doc. 25 at 24.

– As a result of Defendants' actions, Plaintiffs and Class Members suffered both physiological and psychological harm—injuries that will persist and worsen over time so long as SB185 continues to be enforced. *See, e.g.*, Benjamin Decl. (Doc. 11-3) ¶¶ 24–27; Horton Decl. (Doc. 11-4) ¶¶ 6–28; Madison Decl. (Doc. 11-5) ¶ 18; Wilson Decl. (Doc. 11-6) ¶¶ 13–14, 16; Doe Decl. (Doc. 11-7) ¶¶ 13–15; Haw Decl. (Doc. 11-2) ¶¶ 42–43, 46–51, 56–57, 61–62; Ettner Decl. (Doc. 11-1) ¶¶ 124–162, 164.

*** 

No material facts have changed since the Court's preliminary injunction, and the parties agree the record is closed for purposes of this Motion. Doc. 69. Defendants have also made clear that they will return to enforcing SB185 if the Court's preliminary injunction expires, putting Plaintiffs and Class Members in exactly the same situation they were in when the Court entered a preliminary injunction. Doc. 67.

These undisputed material facts establish all of the elements of an Eighth Amendment deliberate indifference claim. Namely, despite knowing that gender dysphoria is a serious medical need "which may not be ignored," Doc. 11-10, SOP 507.04.68 (§ IV.A.6); that individualized treatment is required, Doc. 11-10, SOP

507.04.68 (§§ IV.A.6; C.3); Doc. 11-9, SOP 508.40 (§ IV.E.2); and that hormone therapy may be medically necessary to treat the condition, Doc. 11-11, SOP 220.09 (§ IV.K.8); Defendants enforced a blanket ban on hormone treatment and evaluations and terminated medically necessary healthcare prescribed by GDC's own clinicians, while cognizant of the physical and psychological health risks. *See generally* Doc. 11-20, SB 185 Implementation Plan.

In doing so, Defendants "inflicted unnecessary pain or suffering" on Plaintiffs and Class Members by denying them access to "an effective, essential, and medically necessary treatment," Doc. 50 at 31, 34 (citing Ettner Decl. (Doc. 11-1) ¶ 65), and by "needlessly subject[ing]" those receiving hormone therapy to the physical and psychological consequences of hormone therapy withdrawal. *Id*. at 31. Defendants also caused Plaintiffs and Class Members foreseeable harm. *See* Benjamin Decl. (Doc. 11-3) ¶¶ 24–27; Horton Decl. (Doc. 11-4) ¶¶ 6–28; Madison Decl. (Doc. 11-5) ¶ 18; Wilson Decl. (Doc. 11-6) ¶¶ 13–14, 16; Doe Decl. (Doc. 11-7) ¶¶ 13–15; *accord* Ettner Decl. (Doc. 11-1) ¶¶ 116–117, 124–170; Haw Decl. (Doc. 11–2) ¶¶ 42–51, 56–57, 61–62.

Defendants' actions constitute a *per se* violation of the Eighth Amendment because "the knowledge of the need for medical care and intentional refusal to provide that care has consistently been held to … constitute deliberate indifference." *Stalley*, 124 F.4th at 1286 (citing *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700,

11

704 (11th Cir. 1985)); *accord Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976) (deliberate indifference encompasses "intentionally denying or delaying access to medical care or intentionally interfering with [medical] treatment once prescribed").

This Eighth Amendment violation extends equally to members of the Receiving and Requesting Classes because "responding to an inmate's acknowledged medical need with what amounts to a shoulder-shrugging refusal even to consider whether a particular course of treatment is appropriate is the very definition of 'deliberate indifference'—anti-medicine, if you will." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1265–66 (11th Cir. 2020); *accord Ancata*, 769 F.2d at 704 ("Deliberate indifference to serious medical needs is shown when prison officials have prevented an inmate from receiving recommended treatment or when an inmate is denied access to medical personnel capable of evaluating the need for treatment."); *see also* Doc. 50 at 35–37 (collecting additional authorities); Doc. 3 at 14–25 (same). Accordingly, Plaintiffs are entitled to judgment on their Eighth Amendment hormone therapy ban claim as a matter of law based on the undisputed facts. Fed. R. Civ. P. 56(a).

## II. Plaintiffs are entitled to a permanent injunction.

Plaintiffs are also entitled to a permanent injunction. "[T]he standard is essentially the same [as for a preliminary injunction], except that the movant must establish actual success on the merits." *KH Outdoor, LLC v. City of Trussville*, 458

F.3d 1261, 1268 (11th Cir. 2006). In addition, "the moving party must show that (1) it has suffered irreparable harm; (2) remedies at law will not provide adequate compensation for the injury; (3) on balance, an equitable remedy is warranted; and (4) a permanent injunction will not disserve the public interest." *W. Virginia by & through Morrisey v. U.S. Dep't of the Treasury*, 59 F.4th 1124, 1148 (11th Cir. 2023) (citing *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1208 (11th Cir. 2008)).

Having already demonstrated "actual success on the merits" of their Eighth Amendment claim above, *KH Outdoor*, 458 F.3d at 1268, Plaintiffs easily satisfy the remaining prerequisites for permanent injunctive relief.

### A.    Plaintiffs have suffered irreparable harm that cannot be adequately compensated by remedies at law.

Plaintiffs satisfy the first and second prongs of the permanent injunction test because Plaintiffs and Class Members have suffered and will continue to suffer a risk of irreparable harm—harm that "cannot be undone through monetary remedies"—unless SB185's hormone therapy ban is enjoined. *Scott v. Roberts*, 612 F.3d 1279, 1295 (11th Cir. 2010); Benjamin Decl. (Doc. 11-3) ¶¶ 24–27; Horton Decl. (Doc. 11-4) ¶¶ 6–28 (Doc. 11-4); Madison Decl. (Doc. 11-5) ¶ 18; Wilson Decl. (Doc. 11-6) ¶¶ 13–14, 16; Doe Decl. (Doc. 11-7) ¶¶ 13–15; Ettner Decl. (Doc. 11-1) ¶¶ 116–117, 124–170; Haw Decl. (Doc. 11-2) ¶¶ 42–51, 56–57, 61–62; *accord* Doc. 50 at 42–43 (summarizing harms). This includes harm in the form of risk of

13

mental decompensation, depression, anxiety, suicidal ideation, and severe physical injury or death from suicide or self-harm attempts. Haw Decl. (Doc. 11-2) ¶¶ 42–43, 49–51, 56–57, 61–62; Ettner Decl. (Doc. 11-1) ¶¶ 124–162, 164, 167. Further, because these symptoms are attributable to the denial of medically necessary gender dysphoria treatment, they are undisputedly not remediable by mental health counseling or anti-depressants alone. Ettner Decl. (Doc. 11-1) ¶¶ 95–97, 120–122, 145–150, 169; Haw Decl. (Doc. 11-2) ¶¶ 33, 42–51, 56–59, 62–63.

Defendants have offered no evidence to dispute that counseling or anti-depressants cannot substitute for medically necessary hormone therapy. Ettner Decl. (Doc. 11-1) ¶¶ 95–97, 120–122, 145–50, 169; Haw Decl. (Doc. 11-2) ¶¶ 33, 43–45, 63. Plaintiffs and Class Members also remain at risk of worsening harm and gender dysphoria symptoms in future. Haw Decl. (Doc. 11-2) ¶¶ 42–43, 46–51, 56–57, 61–62; Ettner Decl. (Doc. 11-1) ¶¶ 124–162, 164, 167, 169; Doc. 25 at 24. These risks are even more acute because Defendants plan to resume enforcing SB185 as soon as the Court's preliminary injunction expires in December. Doc. 67; *see Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("[T]he Eighth Amendment protects against *future* harm to inmates."); *Thomas v. Bryant*, 614 F.3d 1288, 1318 (11th Cir. 2010) (same).

Courts have not hesitated to classify physical and psychological injuries of this type as irreparable. Doc. 3 at 24–25 (collecting cases); Doc. 37 at 14–15 (same);

14

*Doe v. Ga. Dep't of Corr.*, 730 F. Supp. 3d 1327, 1349 (N.D. Ga. 2024), *appeal dismissed as moot*, No. 24-11382, 2025 WL 1206229 (11th Cir. Mar. 6, 2025) ("[D]epriving a transgender inmate of adequate [hormone therapy] will wreak havoc on the inmate's physical and emotional state—a harm that is neither compensable nor speculative"). Accordingly, Plaintiffs have suffered and will suffer *actual* irreparable harm—i.e. harm that cannot be compensated by monetary damages alone—thus rendering remedies at law inadequate. *See Doe*, 730 F. Supp. 3d at 1349; *Edmo v. Corizon, Inc.*, 935 F.3d 757, 797–98 (9th Cir. 2019); *accord Barrett v. Walker Cnty. Sch. Dist.,* 872 F.3d 1209, 1229 (11th Cir. 2017) ("[S]ince [plaintiff] suffered irreparable harm, his remedies at law were inadequate").

> **B.  The balance of hardships and public interest factors decidedly favor Plaintiffs.**

The third and fourth factors also decidedly favor Plaintiffs for the same reasons as Plaintiffs' first Preliminary Injunction. Doc. 3 at 25–26; Doc. 50 at 42–45). Without an injunction, Plaintiffs will face actual and imminent harm in the form of severe and worsening dysphoria symptoms due to their lack of access to medically necessary care and individualized medical treatment. Ettner Decl. (Doc. 11-1) ¶¶ 145-164, 167; Haw Decl. (Doc. 11-2) ¶¶ 42–43, 46–51, 56–59, 61–62.

In contrast, if an injunction is granted, there will be no harm to Defendants at all, because a permanent injunction would merely reinstate the pre-SB185 status quo where medical treatment was determined based on individual patient need—the very

definition of "constitutionally appropriate" care. Doc. 11-10, SOP 507.04.68 (§ I); Doc. 11-12, SOP 507.04.68 (2015) (§ I). Nor are Defendants necessarily bound to their pre-SB185 policies: they are free to alter or instate new ones "so long as the policies do not preclude hormone therapy to inmates for non-medical reasons." Doc. 50 at 61.

The fourth and final factor also favors Plaintiffs because "the public … has no interest in enforcing an unconstitutional law." Doc. 50 at 43 (citing *Scott*, 612 F.3d at 1297); *accord Melendez v. Sec'y, Fla. Dep't of Corr.*, No. 21-13455, 2022 WL 1124753, at *17 (11th Cir. Apr. 15, 2022) ("the public interest is served when constitutional rights are protected.") (citing *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1327 (11th Cir. 2019)); *KH Outdoor*, 458 F.3d at 1272 (enjoining unconstitutional laws is "plainly ... not adverse to the public interest.").

## III. Plaintiffs' requested relief meets the needs-narrowness-intrusiveness requirements of the PLRA.

Entering a permanent injunction is also proper under the PLRA because the injunctive relief sought by Plaintiffs meets the needs-narrowness-intrusiveness requirement. 18 U.S.C. §§ 3626(a)(1)(A), (a)(2). First, the requested injunction is "narrowly drawn" for purposes of the PLRA, 18 U.S.C. §§ 3626(a)(1)(A), (a)(2), because it does not mandate that Defendants provide hormone therapy to any Class Members for whom it has not been found to be medically necessary. Nor does it require Defendants to provide hormone therapy against the wishes of any of these

16

Class Members—in fact, as defined, no one who does not request hormone therapy is part of the class. *See* Doc. 50 at 62; Pls.' Mot. for Class Certification, filed herewith (seeking certification of identical classes).

Moreover, the injunction does not require Defendants to affirmatively identify Class Members of the Requesting Class and schedule them for evaluations. It merely prevents Defendants from continuing to enforce SB185's blanket ban on hormone therapy treatment and evaluations, and restores Defendants' own pre-SB185 regime where hormone therapy, including evaluations for the same, was made available, upon request, based on patients' diagnosed medical need. Doc. 11-10, SOP 507.04.68 (§§ IV.A.6; C.3); Doc. 11-9, SOP 508.40 (§ IV.E.2); Doc. 50 at 43 ("[T]he State's concerns about administrating its prisons are not undermined by restoring the prisons to an administrative regime they already operated under pre-S.B. 185").

The relief also "extend[s] no further than necessary" to remedy Defendants' Eighth Amendment violations because it does not mandate that GDC adopt any particular policies or procedures. 18 U.S.C. §§ 3626(a)(1)(A), (a)(2); Doc. 50 at 61. It merely precludes Defendants from denying hormone therapy treatment and evaluations "for non-medical reasons" or imposing excessive delays, consistent with the Eighth Amendment's requirements. Doc. 50 at 61; *Estelle*, 429 U.S. at 104–05; *Ancata*, 769 F.2d at 704; *Keohane*, 952 F.3d at 1266–67.

The requested relief is also "the least intrusive means necessary to correct the violation of the Federal right" for all of the reasons noted above. 18 U.S.C. § 3626(a)(1)(A); *accord* 18 U.S.C. § 3626(a)(2) (same). Indeed, all that a permanent injunction would do is reinstate the pre-SB185 status quo where gender dysphoria treatment was determined based on individual patient need, and neither Defendants' gender dysphoria policies nor the clinical decisions of its healthcare providers were summarily overruled by legislative fiat. Doc. 50 at 44, 61.

Finally, the injunctive relief sought will not cause "any adverse impact on public safety or the operation of a criminal justice system" because it merely reinstates Defendants' practice of permitting hormone therapy in instances of "documented medical need"—a practice that has existed without incident for 10+ years prior to the implementation of SB185. 18 U.S.C. §§ 3626(a)(1)(A), (a)(2); Doc. 11-10, SOP 507.04.68 (§§ IV.C–D); Doc. 11-9, SOP 508.40 (§ IV.D); Doc. 11-11, SOP 220.09 (§§ IV.K.4–8); Doc. 50 at 43.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment should be granted and the Court should enter a Permanent Injunction directing Defendants:

18

As to both Classes:

- Permanently cease enforcing SB185's hormone therapy ban and/or any related policies or procedures, including without limitation Georgia Board of Corrections Board Rule 125-4-4-.13 (hereinafter "SB185 or related rules"), against Plaintiffs and Class Members.

As to the Requesting Class (All individuals incarcerated in GDC facilities who are receiving hormone therapy now proscribed by SB185 or who were receiving hormone therapy proscribed by SB185 on May 8, 2025):

- Continue providing Receiving Class Members hormone therapy where medically necessary without regard to SB185 or related rules.

- Permanently cease tapering Receiving Class Members' hormone therapy dosages for purposes of compliance with SB185 or related rules.

As to the Receiving Class (All individuals incarcerated in GDC facilities not in Class A who identify as transgender and request hormone treatment now proscribed by SB185):

- Provide a timely (i.e., within 90 days of a request)[5] hormone therapy evaluation to Requesting Class Members who request or are referred for

---

[5] If the proposed timeline is impracticable for Defendants, Plaintiffs are amenable to discussing an alternative.

19

medical evaluation, or who requested or were referred for such evaluation prior to May 8, 2025, without regard to SB185 or related rules.

– Provide hormone therapy to Requesting Class Members where medically necessary without regard to SB185 or related rules.

Finally, to ensure compliance, Plaintiffs further request that this Court order Defendants to file periodic (i.e. every 60 days) written reports with the Court describing the actions they have taken to comply with the permanent injunction. The report should also indicate the following for the reporting period in question:

(1) the number of Requesting Class Members who have requested and received evaluations for hormone therapy;

(2) the number of evaluations for hormone therapy that GDC has conducted for Requesting Class Members;

(3) the number of Requesting Class Members who were prescribed hormone therapy following evaluation; and

(4) the number of Requesting Class Members who were denied hormone therapy following evaluation.

Defendants' first report on compliance should be filed within 60 days of the entry of the Court's Permanent Injunction, and every 60 days thereafter for its duration.

Respectfully submitted this 10th day of November, 2025.

/s/ A. Chinyere Ezie
A. Chinyere Ezie*                          Amanda Kay Seals
cezie@ccrjustice.org                       GA Bar No. 502720
Emily C. R. Early,                         seals@bmelaw.com
GA Bar No. 810206                          Matthew R. Sellers
eearly@ccrjustice.org                      GA Bar No. 691202
Celine Zhu*                                sellers@bmelaw.com
czhu@ccrjustice.org                        Bondurant, Mixson & Elmore, LLP
Kayla Vinson                               1201 W Peachtree St NW
kvinson@ccrjustice.org                     Suite 3900
Center for Constitutional Rights           Atlanta, GA 30309
666 Broadway, 7th Floor                    Phone: (404) 881-4100
New York, NY 10012                         Fax: (404) 881-4111
Phone: (212) 614-6464

D. Korbin Felder*
kfelder@ccrjustice.org
Center for Constitutional Rights
P.O. Box 12046
Jackson, MS 39236
Phone: (601) 228-6101

*Admitted Pro Hac Vice

Counsel for Plaintiffs

Signature Page

## CERTIFICATE OF SERVICE

I certify that on November 10, 2025, I submitted the foregoing via the Court's

CM/ECF system, which will serve an electronic copy on all attorneys of record.

/s/ *A. Chinyere Ezie*

A. Chinyere Ezie

Certificate of Service