# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

ISIS BENJAMIN; FANTASIA HORTON; NAEOMI MADISON; BRYNN WILSON; and JOHN DOE;

on behalf of themselves and all persons similarly situated,

    Plaintiffs,

      v.

COMMISSIONER TYRONE OLIVER, in his official capacity; ASSISTANT COMMISSIONER RANDY SAULS, in his official capacity; STATEWIDE MEDICAL DIRECTOR DR. MARLAH MARDIS, in her official capacity; and CENTURION OF GEORGIA, LLC,

    Defendants.

Civ. Case No. 1:25-cv-04470-VMC

**CLASS ACTION**

## PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS

## I. Background on Gender Dysphoria

### A. Gender dysphoria is a serious medical condition requiring individualized treatment.

1. Gender dysphoria is a serious medical condition that appears in the DSM-5. Declaration of Dr. Randi Ettner ("Ettner Decl.") (Doc. 11-1) ¶¶ 24–25; Declaration of Dr. J. Sonya Haw ("Haw Decl.") (Doc. 11-2) ¶¶ 11–12.

2. Gender dysphoria arises from the incongruence between an individual's gender identity and their birth-assigned sex and results in clinically significant distress. Ettner Decl. (Doc. 11-1) ¶¶ 31(a)–(b); Haw Decl. (Doc. 11-2) ¶¶ 11–12.

3. Some people with gender dysphoria identify as transgender. Ettner Decl. (Doc. 11-1) ¶ 30; Haw Decl. (Doc. 11-2) ¶ 11; Doc. 11-8, NCCHC Position Stmt. at 2.

4. Gender dysphoria requires individualized medical treatment based on patient medical need. Ettner Decl. (Doc. 11-1) ¶¶ 45–59, 163–66; Haw Decl. (Doc. 11-2) ¶¶ 16–17, 21–32, 34–35, 54, 61; Doc. 11-10, SOP 507.04.68 (§ IV.C.3); Doc. 11-8, NCCHC Position Stmt. at 2–7.

5. Medically necessary treatment for gender dysphoria can include hormone therapy. Ettner Decl. (Doc. 11-1) ¶¶ 65–94; Haw Decl. (Doc. 11-2) ¶¶ 14, 19, 21–30; Doc. 11-8, NCCHC Position Stmt. at 2–5; Doc. 11-9, SOP 508.40 (§IV.D); Doc. 11-10, SOP 507.04.68 (§§ IV.C–D); Doc. 11-11, SOP 220.09 (§§ IV.A.7, IV.B.9, IV.G.2–7, IV.K.4–8).

6.      Counseling is not a substitute for hormone therapy for gender dysphoria patients.  Ettner Decl. (Doc. 11-1) ¶¶ 95–97, 120–22, 145–50, 169; Haw Decl. (Doc. 11-2) ¶¶ 33, 43–45, 63; Doc. 11-9, SOP 508.40 (§ IV.D).

7.      Nor are psychotropic drugs a substitute for hormone therapy in gender dysphoria patients, as they will not resolve the anxiety or depression that gender dysphoria patients experience as a result of treatment denial. Ettner Decl. (Doc. 11-1) ¶¶ 96, 140.

8.      Terminating medically necessary hormone therapy can cause physiological harms, including hormonal disequilibrium, mood destabilization, musculoskeletal effects, metabolic dysregulation, neuroendocrine effects, cardiovascular effects, psychological and neuropsychiatric effects, vasomotor instability, mood dysregulation, and cardiometabolic risks. Ettner Decl. (Doc. 11-1) ¶¶ 151–154; Haw Decl. (Doc. 11-2) ¶¶ 42, 46–49, 61–62.

9.      Denying or withdrawing medically necessary hormone therapy can lead to psychological harm such as anxiety, depression, and suicidality, worsening gender dysphoria symptoms, psychological decompensation, and attempts at suicide, self-harm, and self-castration. Ettner Decl. (Doc. 11-1) ¶¶ 124–162, 167; Haw Decl. (Doc. 11-2) ¶¶ 32, 42–43, 49–51, 56–57, 61–62.

**B.    GDC's Pre-SB185 policies acknowledged the importance of hormone therapy and individualized gender dysphoria treatment.**

10.    Defendants adopted and/or enforced three standard operating procedures ("SOPs") on gender dysphoria treatment prior to the passage of SB185: Doc. 11-9, SOP 508.40; Doc. 11-10, SOP 507.04.68; Doc. 11-11, SOP 220.09 (collectively "the Gender Dysphoria Policies").

11.    The Gender Dysphoria Policies acknowledged that:

   a. gender dysphoria is "characterized by clinically significant distress." Doc. 11-9, SOP 508.40 (§ III.A)

   b. transgender people with gender dysphoria have "serious medical needs which may not be ignored." Doc. 11-10, SOP 507.04.68 (§ IV.A.6).

   c. "appropriate management" of gender dysphoria requires individualized medical treatment, Doc. 11-10, SOP 507.04.68 (§§ IV.A.6; C.3); Doc. 11-9, SOP 508.40 (§ IV.A–F); Doc. 11-11, SOP 220.09 (§§ IV.K.4–8);

   d. gender dysphoria patients should receive care pursuant to "[c]urrent, accepted standards of care." Doc. 11-10, SOP 507.04.68 (§ IV.C.3).

e. hormone therapy can be medically necessary gender dysphoria treatment. Doc. 11-9, SOP 508.40 (§ IV.D); Doc. 11-10, SOP 507.04.68 (§§ IV.C–D); Doc. 11-11, SOP 220.09 (§§ IV.K.4–8).

f. "[o]nly medical practitioners [should] make decisions regarding gender-related hormone treatment needs." Doc. 11-11, SOP 220.09 (§ IV.K.7).

12. The Gender Dysphoria Policies required that gender dysphoria patients receive comprehensive medical evaluations and individualized treatment plans. Doc. 11-9, SOP 508.40 (§§ IV.A–E); Doc. 11-10, SOP 507.04.68 (§§ I; IV.A.6; IV.C.3); Doc. 11-11, SOP 220.09 (§§ IV.K.4–5).

13. Based on the Gender Dysphoria Policies, before SB185's enactment, Defendants knew that people with a confirmed or suspected gender dysphoria diagnosis should receive a "thorough medical and mental health evaluation," Doc. 11-10, SOP 507.04.68 (§ IV.A.6), and "be evaluated and referred to an endocrinologist," Doc. 11-9, SOP 508.40 (§ IV.D), to determine, among other things, whether hormone therapy is medically necessary.

14. Defendants knew that hormone therapy was only prescribed within GDC "*after* an individualized assessment of the offender by a medical practitioner." Doc. 11-11, SOP 220.09 (§ IV.K.5).

4

15.    Defendants also knew that hormone therapy was authorized in GDC only when GDC healthcare personnel—including Defendant Mardis—deemed *it medically necessary* care for a patient. Doc. 11-11, SOP 220.09 (§ IV.K.8); Doc. 11-9, SOP 508.40 (§ IV.D); Doc. 11-10, SOP 507.04.68 (§§ IV.C.3; IV.D).

16.    As of August 2025, there were 340 people with gender dysphoria diagnoses in GDC custody. Wynne Decl. (Doc. 28-1) ¶ 3.

17.    Over one hundred of these individuals were receiving hormone therapy as of June 30, 2025, including Plaintiffs Doe, Horton, and Wilson. Wynne Decl. (Doc. 28-1) ¶ 3; Horton Decl. (Doc. 11-4) ¶¶ 16–19; Wilson Decl. (Doc. 11-6) ¶¶ 8–13; Doe Decl. (Doc. 11-7) ¶¶ 7–17.

18.    Each of these Plaintiffs and Class Members were prescribed hormone therapy because GDC healthcare providers found it to be medically necessary treatment for their gender dysphoria. *See, e.g.*, Horton Decl. (Doc. 11-4) ¶ 7; Doe Decl. (Doc. 11-7) ¶¶ 7–8; Doc. 11-9, SOP 508.40 (§ IV.D); Doc. 11-10, SOP 507.04.68 (§§ IV.C.3; IV.D); Doc. 11-11, SOP 220.09 (§ IV.K.8).

## II.    Background on SB185 and Rule 125-4-4-.13, the Georgia Board of Corrections' Companion Rule

19.    SB185, adopted on May 8, 2025, bans "[h]ormone replacement therapies," among other things, for people in GDC custody. O.C.G.A. § 42-5-2 ("SB185") §§ 1(e)(1)(A)–(C).

20.     SB185 prohibits the use of state funds for hormone therapy as gender dysphoria treatment within GDC, and prohibits patients from self-paying for the care. Ga. House of Reps., 2025–2026 Reg. Sess., Pub. & Cmty. Health Comm. Hr'g (Apr. 1, 2025), https://vimeo.com/1071507707?fl=pl&fe=vl (43:24–43:55).

21.     In June 2025, the Georgia Board of Corrections released Rule 125-4-4-.13, Treatment of Gender Dysphoria and Intersex Offenders, a regulation implementing SB185. Doc. 11-14, Board Rule 125-4-4-.13 at 4.

22.     Together, SB185 and Rule 125-4-4-.13 (hereinafter "SB185 and related rules") prohibit hormone therapy as gender dysphoria treatment within GDC, and contain no medical necessity exception. SB185 §§ 1(e)(1)(B), (e)(2)(A); Doc. 11-14, Board Rule 125-4-4-.13 at 2–3.

23.     SB185 and related rules require that gender dysphoria patients currently receiving prescribed hormone therapy be "transition[ed] off such therapy." SB185 § 1(e)(2)(D); Doc. 11-14, Board Rule 125-4-4-.13 at 3.

24.     However, hormone therapy remains available when "medically necessary" for conditions that are "*not* gender dysphoria." SB185 § 1(e)(2)(A) (emphasis added); Doc. 11-14, Board Rule 125-4-4-.13 at 3 (emphasis added).

25.     Thus, SB185 and related rules (1) impose a blanket ban on hormone therapy as gender dysphoria treatment in GDC, irrespective of medical need; (2) terminate all hormone therapy already determined to be medically necessary

gender dysphoria treatment within GDC; and (3) prohibit gender dysphoria patients in GDC custody from being evaluated for hormone therapy. SB185 § 1(e); Doc. 11-14, Board Rule 125-4-4-.13 at 3–4; Benjamin Decl. (Doc. 11-3) ¶¶ 14–24; Horton (Doc. 11-4) ¶¶ 16–19; Doc. 11-21, July 21 Notice Letter at 3–6.

26.    SB185 and related rules depart from clinical standards of care for the treatment of gender dysphoria in adults, which require individualized treatment and authorize hormone therapy based on patient medical need. Haw Decl. (Doc. 11-2) ¶¶ 53–59; Ettner Decl. (Doc. 11-1) ¶¶ 54–59, 163–66; Doc. 11-21, July 21 Notice Letter at 4–8; Doc. 11-8, NCCHC Position Stmt. at 2–7.

27.    SB185 and related rules also depart from GDC's Gender Dysphoria Policies. Doc. 11-10, SOP 507.04.68 (§§ IV.C–D); Doc. 11-9, SOP 508.40 (§ IV.D); Doc. 11-11, SOP 220.09 (§§ IV.K.4–8); Doc. 11-19, GDC May 29 Ltr. at 2.

## III.    Defendants' Enforcement of SB 185

### A.    In July 2025, Defendants began implementing SB185 within GDC.

28.    In July 2025, Defendants Oliver, Mardis, Sauls and Centurion of Georgia, LLC ("Centurion") (collectively "Defendants") began enforcing SB185 across GDC. Doc. 11-20, SB185 Implementation Plan  at 2; Wynne Decl. (Doc. 28-1) ¶¶ 4–5.

29.    Defendants began implementing a ban on hormone therapy as treatment for gender dysphoria with no exception for medical necessity, or provision for self-

pay. Horton Decl. (Doc. 11-4) ¶ 19; Doc. 11-20, SB185 Implementation Plan at 10–13; Wynne Decl. (Doc. 28-1) ¶ 4–5; Doc. 25 at 30.

30.    Defendants prohibited hormone therapy for gender dysphoria patients currently receiving it as treatment, except for the "purpose of transitioning off," consistent with SB185 and related rules. Doc. 11-20, SB185 Implementation Plan at 12; Wynne Decl. (Doc. 28-1) ¶¶ 4–5.

31.    Defendants implemented SB185's blanket ban on hormone therapy treatment and evaluations, despite knowing that doing so carries risks of physiological and psychological harm. Horton Decl. (Doc. 11-4) ¶¶ 16-19; Wilson Decl. (Doc. 11-6) ¶¶ 8-13; Doc. 11-10, SOP 507.04.68 (§§ IV.A.6; IV.C); Doc. 11-16, Oliver-Ammons Text Message at 2; Doc. 11-21, July 21 Notice Letter at 7–8; Doc. 11-20, SB 185 Implementation Plan at 2, 10–14; Doc. 25 at 24.

32.    Defendants modeled their plan to enforce SB185 after a plan developed for use in Idaho prisons, where a Centurion affiliate is a healthcare contractor. Doc. 11-21, July 21 Notice Letter at 6–7; Doc. 11-18, May 29 Mardis Email at 2.

33.    The Idaho plan has been repeatedly enjoined. Doc. 11-21, July 21 Notice Letter at 6–7.

34.    When a law similar to SB185 was passed in Florida where a Centurion affiliate is the correctional healthcare provider, medically-necessary hormone

therapy continued to be provided to gender dysphoria patients. Doc. 11-21, July 21 Notice Letter at 6.

35.     On July 21, 2025, Plaintiffs' counsel contacted Defendants by letter to inform them that denying gender dysphoria patients access to hormone therapy (even through a gradual taper) and individualized treatment evaluations violated the Eighth Amendment and jeopardized patients' health in ways that counseling could not mitigate. Doc. 11-21, July 21 Notice Ltr. at 4–8.

36.     Defendants continued implementing SB185 across GDC following Plaintiffs' letter. *See, e.g.*, Benjamin Decl. (Doc. 11-3) ¶¶ 17-24; Horton Decl. (Doc. 11-4) ¶¶ 21–22; Wynne Decl. (Doc. 28-1) ¶¶ 4–11.

### B.    Pursuant to SB185, Defendants have withheld hormone therapy from Plaintiffs and Class Members.

37.     Because of Defendants' enforcement of SB185, Plaintiffs and Class Members seeking gender dysphoria treatment lost access to hormone therapy (except for the purposes of tapering), and hormone therapy evaluations. Doc. 11-20, SB185 Implementation Plan at 2, 10–13; Wynne Decl. (Doc. 28-1) ¶¶ 4–11.

38.     Beginning in July, Defendants began terminating hormone therapy for more than one hundred gender dysphoria patients—including Plaintiffs Doe, Horton, and Wilson—despite knowing that GDC healthcare providers had determined that hormone therapy was medically necessary treatment for their gender dysphoria. Wynne Decl. (Doc. 28-1) ¶¶ 4–5, 9, 11; Horton Decl. (Doc. 11-4) ¶¶ 16–19; Wilson

Decl. (Doc. 11-6) ¶¶ 8–13; Doe Decl. (Doc. 11-7) ¶¶ 7–17; Doc. 11-11, SOP 220.09 (§ IV.K.8); Doc. 11-9, SOP 508.40 (§ IV.D); Doc. 11-10, SOP 507.04.68 (§§ IV.C; IV.D).

39.    Defendants also stopped offering hormone therapy evaluations to the more than 230 gender dysphoria patients in GDC custody not receiving hormone therapy as treatment. Wynne Decl. (Doc. 28-1) ¶ 3; Doc. 11-20, SB185 Implementation Plan at 10–11; Benjamin Decl. (Doc. 11-3) ¶¶ 17–24; Madison Decl. (Doc. 11-5) ¶¶ 7–17.

40.    Plaintiff Fantasia Horton, a transgender woman, and Plaintiffs Brynn Wilson and John Doe, transgender men, started being tapered off of their medically-necessary hormone therapy because of Defendants' enforcement of SB185. Horton Decl. (Doc. 11-4) ¶¶ 7–8, 13–24; Wilson Decl. (Doc. 11-6) ¶¶ 8–10, 13–14; Doe Decl. (Doc. 11-7) ¶¶ 8, 17.

41.    Plaintiff Isis Benjamin, a transgender woman who entered GDC custody in March 2025, was denied evaluations to resume the hormone therapy she was previously prescribed by GDC healthcare providers and has relied on for twenty years—almost half her life. Benjamin Decl. (Doc. 11-3) ¶¶ 17–24.

42.    Plaintiff Naeomi Madison, who was seeking to start treatment after being prescribed hormone therapy during a previous GDC incarceration, was denied access to hormone therapy evaluations. Madison Decl. (Doc. 11-5) ¶¶ 7–17.

43.     Defendants' decision to terminate access to hormone therapy has put Plaintiffs and Class Members at risk of worsening gender dysphoria symptoms, including depression, anxiety, suicide ideation, physical injury and/or death from self-harm, suicide and castration attempts. Haw Decl. (Doc. 11-2) ¶¶ 42–43, 49–51, 56–57, 61–62; Ettner Decl. (Doc. 11-1) ¶¶ 124–162; Horton Decl. (Doc. 11-4) ¶¶ 6–9, 13–28; Doc. 25 at 24.

44.     Plaintiffs Horton, Wilson, and Doe and Class Members whose hormone therapy was tapered and/or terminated by Defendants due to SB185, have been, and will continue to be, at risk of hormone withdrawal symptoms such as high blood pressure, muscle wasting, neurological complications, hormonal disequilibrium, metabolic dysregulation, vasomotor instability, thermoregulatory dysregulation, cognitive slowing, insomnia, cardiovascular disease, and neuroendocrine and musculoskeletal effects, among others. Ettner Decl. (Doc. 11-1) ¶¶ 151–162; Haw Decl. (Doc. 11-2) ¶¶ 46–49, 61.

45.     Because of Defendants' enforcement of SB185, Plaintiffs and Class Members were experiencing symptoms such as anxiety, depression, suicide ideation, or hormone withdrawal, or stood a risk of the same, prior to the entry of the district court's injunction. Benjamin Decl. (Doc. 11-3) ¶¶ 24–27; Horton Decl. (Doc. 11-4) ¶¶ 6–9, 13–28; Madison Decl. (Doc. 11-5) ¶ 18; Wilson Decl. (Doc. 11-6) ¶¶ 6–11, 13–14, 16; Doe Decl. (Doc. 11-7) ¶¶ 6–15.

11

46.     Plaintiffs and Class Members impacted by Defendants' enforcement of

SB185 do not have access to specialized counseling related to gender dysphoria;

only the ordinary "range of mental health services at a facility." Haynes Owen Decl.

(Doc. 25-2) ¶ 7.

*[Signatures to follow on next page]*

12

Respectfully submitted this 10th day of November, 2025.

/s/ A. Chinyere Ezie
A. Chinyere Ezie*
cezie@ccrjustice.org
Emily C. R. Early,
GA Bar No. 810206
eearly@ccrjustice.org
Celine Zhu*
czhu@ccrjustice.org
Kayla Vinson*
kvinson@ccrjustice.org
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Phone: (212) 614-6464

D. Korbin Felder*
kfelder@ccrjustice.org
CENTER FOR CONSTITUTIONAL RIGHTS
P.O. BOX 12046
Jackson, MS 39236
Phone: (601) 228-6101

Amanda Kay Seals
GA Bar No. 502720
seals@bmelaw.com
Matthew R. Sellers
GA Bar No. 691202
sellers@bmelaw.com
BONDURANT, MIXSON & ELMORE, LLP
1201 W Peachtree St NW
Suite 3900
Atlanta, GA 30309
Phone: (404) 881-4100
Fax: (404) 881-4111

*Admitted Pro Hac Vice

*Counsel for Plaintiffs*

Signature Page