IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ISIS BENJAMIN; FANTASIA HORTON; NAEOMI MADISON; BRYNN WILSON; and JOHN DOE;<br><br>on behalf of themselves and all persons similarly situated,<br><br> Plaintiffs,<br><br>  v.<br><br>COMMISSIONER TYRONE OLIVER, in his official capacity; ASSISTANT COMMISSIONER RANDY SAULS, in his official capacity; STATEWIDE MEDICAL DIRECTOR DR. MARLAH MARDIS, in her official capacity; and CENTURION OF GEORGIA, LLC,<br><br> Defendants. | Civ. Case No. 1:25-cv-04470-VMC<br><br>CLASS ACTION |

## PLAINTIFFS' REPLY IN SUPPORT OF UNOPPOSED MOTION TO GIVE CLASS NOTICE

In Response to Plaintiffs' Motion to Give Class Notice, Defendants have agreed that notice of the Court's September 4, 2025 preliminary injunction against Georgia Senate Bill 185's ("SB185") ban on hormone therapy should be given to

Class Members[1] in one-on-one meetings with medical personnel. Doc. 68 at 2. They raise no objection to Plaintiffs' proposed form of notice. *See* Doc. 60-1 (proposed form of notice). And they do not object to the timeline for notice that Plaintiffs' requested. Doc. 60 at 8–9. At minimum, then, the Court should direct that Plaintiffs' proposed form of notice be given in one-on-one meetings between Class Members and medical personnel within 21 days of an order granting Plaintiffs' Motion.

The only remaining dispute is whether to require public posting of notice of the injunction. Doc. 68 at 3. The Court should do so.

## I. Public notice is necessary to prevent ongoing prejudice and harm to Plaintiffs and Class Members.

Since Plaintiffs filed their Motion for Class Notice, Doc. 60, deficiencies in notice of the preliminary injunction to Class Members have come to light. These deficiencies demonstrate that the Court cannot rely on Defendants alone, in one-on-one meetings with Class Members, to ensure that Class Members have notice of the Court's preliminary injunction.

---

[1] The Court certified two classes. Class A, the "Receiving Class," comprises "All individuals incarcerated in GDC facilities who are receiving hormone therapy now proscribed by S.B. 185 or who were receiving hormone therapy proscribed by S.B. 185 on May 8, 2025." Doc. 50 at 62. Class B, the "Requesting Class," comprises "All individuals incarcerated in GDC facilities not in [the Receiving Class] who identify as transgender and request hormone treatment now proscribed by S.B. 185." *Id*.

2

Specifically, Defendants have not given notice of the preliminary injunction to two Plaintiffs, Isis Benjamin and Naeomi Madison. Second Declaration of Isis Benjamin ("2d Benjamin Decl.") ¶¶ 8–9, attached as Exhibit 1; Second Declaration of Naeomi Madison ("2d Madison Decl.") ¶ 9, attached as Exhibit 2. They know about the injunction from Plaintiffs' counsel because of their participation in this case.

Prison personnel also appear to lack notice of the injunction. That lack of notice has harmed Plaintiffs and Class Members because it has led to misinformation about the availability of hormone therapy in GDC. Plaintiff John Doe knows of three transgender people in the Requesting Class who "have been told by prison officials" at two different prisons "that GDC is no longer offering HRT shots." Second Declaration of John Doe ("2d Doe Decl.") ¶¶ 11–12, attached as Exhibit 3. And staff at Johnson State Prison, where Plaintiff Madison was incarcerated, did not believe her when she told them about the Court's injunction making hormone therapy available as gender dysphoria treatment once again. 2d Madison Decl. ¶¶ 10–13. She has yet to meet any staff who know about the Court's injunction. *Id.* ¶ 14.

As a consequence of this misinformation, Plaintiffs Benjamin and Madison, who are the representatives of the Requesting Class, have not been evaluated for hormone therapy in the more than two months since the preliminary injunction. 2d Benjamin Decl. ¶ 10; 2d Madison Decl. ¶¶ 7–8. When Madison made inquiries at

3

the prison about the status of her request for a hormone therapy evaluation, she was turned away. 2d Madison Decl. ¶¶ 10–13. The three Class Members of the Requesting Class that Plaintiff Doe knows have not been evaluated either. 2d Doe Decl. ¶ 11. Given the extent of misinformation, there are likely others. 2d Madison Decl. ¶ 14.

These deficiencies demonstrate the need to have an avenue for notice that does not solely rely on GDC staff as a conduit of information about the preliminary injunction. If GDC staff do not know of the Court's injunction when Plaintiffs or Class Members seek information, Class Members will not be able to obtain the care they need. 2d Madison Decl. ¶¶ 10–13. Or worse, if GDC staff deny that the Court has entered an injunction, as some have done, that might deter Class Members from even requesting the care to which they are entitled. Public notice would ensure that Class Members have information about their rights—and that GDC staff cannot deny the existence of the Court's orders.

## II. Defendants' Objections to a posted notice requirement are meritless.

### A. A posted notice requirement will not burden Defendants and will not disregard the Court's class definitions.

For their part, Defendants do not contend that posting notice would be unduly burdensome. Instead, they claim public posting would "expand the class." Doc. 68 at 4. Not so. All the notice would do is inform patients who might not otherwise know of their right to request a hormone therapy evaluation. Given the

4

misinformation about the availability of hormone therapy within GDC, such notice merely ensures uniform information about the injunction reaches Class Members. 2d Madison Decl. ¶¶ 10–14; 2d Doe Decl. ¶ 11.  Otherwise, gender dysphoria patients might be deterred from requesting hormone therapy that GDC staff insists is unavailable to them.

Posting to ensure uniform information is also well within the Court's discretion to "issue orders that … require—to protect class members and fairly conduct the action—giving appropriate notice to some or all class members." Fed. R. Civ. P. 23(d)(1)(B). People in custody have more limited access to information than the general public. A person without knowledge of the Court's injunction might not bother requesting hormone therapy, believing it to be unattainable—particularly if GDC staff do not know about or deny the existence of the preliminary injunction. Posting notice will ensure that people in Defendants' custody are informed of their rights. And it will further ensure that people are not wholly reliant on the staff at each of the dozens of prisons in Georgia to provide appropriate notice of the Court's injunction.

Beyond that, Defendants' argument is based on the faulty premise that notice is not "appropriate" if it reaches non-class members. Doc. 68 at 3. But courts have recognized that public posting can be appropriate notice, even in contexts where it might reach non-class members. In *Braggs v. Dunn*, the court ordered that notice of

a settlement of a Rule 23(b)(2) class be "posted in each dormitory and library within the prison system ... ." 321 F.R.D. 653, 667 (M.D. Ala. 2017); *see also In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 534, 550 (1992) ("Notice by publication, including posting, has been approved ... .").[2]

The Court should also give short shrift to Defendants' concern that Plaintiffs' proposed notice will "out" anyone. Doc. 60-2 at 4. Public notice by definition is not directed to anyone. Defendants offer no reason to think that anyone will be outed simply by reading a public notice—particularly if it is posted in a typical place for the posting of notices.

Defendants have identified no downside to public posting. The Court should therefore exercise discretion to order public posting of the notice.

### B. Defendants can find an appropriate public place to post notice.

Defendants claim that posting notice "is also a poor fit for realities on the ground" because notice is not typically posted where people go for medical appointments. Doc. 68 at 4. Plaintiffs have to take Defendants at their word on this point, as they do not have access to every prison in Georgia and cannot speak to whether there are common areas or waiting rooms in medical facilities in every

---

[2] To be sure, *Braggs* and *In re Domestic Air* were cases where individual notice to class members was mandatory, whereas here notice is in the Court's discretion. But that distinction makes no difference. *Braggs* and *In re Domestic Air* demonstrate that public posting is an acceptable means of giving class members' notice.

prison. But that is no reason to forgo public notice. It is hard to imagine there is not *some* place in every GDC facility where the facility posts important prison protocol, policies, and legal information. The Court can and should require public notice wherever notices are *typically* posted, which affords discretion to Defendants, who are in control of the prisons and know where notice would best be posted.

## CONCLUSION

For these reasons, the Court should require posting of public notice in the form Plaintiffs propose in addition to notice via one-on-one meetings by the deadline Plaintiffs propose in the Motion to Give Class Notice. *See* Doc. 60 at 8–9.

Respectfully submitted this 14th day of November, 2025.

*[Signature and certificate pages follow.]*

Emily C. R. Early,
GA Bar No. 810206
eearly@ccrjustice.org
A. Chinyere Ezie*
cezie@ccrjustice.org
Celine Zhu*
czhu@ccrjustice.org
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Phone: (212) 614-6464
Kayla Vinson
kvinson@ccrjustice.org

D. Korbin Felder*
kfelder@ccrjustice.org
CENTER FOR CONSTITUTIONAL RIGHTS
P.O. BOX 12046
Jackson, MS 39236
Phone: (601) 228-6101

*Admitted Pro Hac Vice*

/s/ Matthew R. Sellers
Amanda Kay Seals
GA Bar No. 502720
seals@bmelaw.com
Matthew R. Sellers
GA Bar No. 691202
sellers@bmelaw.com
BONDURANT, MIXSON & ELMORE, LLP
1201 W Peachtree St NW
Suite 3900
Atlanta, GA 30309
Phone: (404) 881-4100
Fax: (404) 881-4111

*Counsel for Plaintiffs*

Signature Page

## Local Rule 7.1(D) Certificate

Pursuant to Local Rule 7.1(D), I certify that this submission complies with the page and word requirements in Local Rule 5.1 because it does not exceed 15 pages and is prepared with size 14-point Times New Roman font.

*/s/ Matthew R. Sellers*
Matthew R. Sellers

## Certificate of Service

I certify that on November 14, 2025 I submitted the foregoing via the Court's CM/ECF system, which will serve an electronic copy on all attorneys of record.

*/s/ Matthew R. Sellers*
Matthew R. Sellers

Certificate of Service