**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| ISIS BENJAMIN; FANTASIA HORTON; NAEOMI MADISON; BRYNN WILSON; and JOHN DOE; <br><br> on behalf of themselves and all persons similarly situated, <br><br>      Plaintiffs, <br><br>           v. <br><br> COMMISSIONER TYRONE OLIVER, in his official capacity; ASSISTANT COMMISSIONER RANDY SAULS, in his official capacity; STATEWIDE MEDICAL DIRECTOR DR. MARLAH MARDIS, in her official capacity; and CENTURION OF GEORGIA, LLC, <br><br>      Defendants. | Civ. Case No. 1:25-cv-04470-VMC <br><br> **CLASS ACTION** |

**<u>PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

Introduction ..................................................................................................1

Argument.....................................................................................................3

I.      Even duly enacted state laws like SB185 can be unconstitutional.................4

II.     Defendants have marshaled no evidence to support the legal conclusion they are asking the Court to draw. .........................................................................5

    A.      *Skrmetti* and *Eknes-Tucker* do not govern the outcome of cases concerning adult gender dysphoria care bans. ......................................7

    B.      WPATH's degree of acceptance is immaterial, given the medical consensus regarding hormone therapy in adults. ................................11

    C.      All Plaintiffs have Article III standing. ................................................13

III.    Defendants engaged in deliberate indifference based on the undisputed facts and applicable law.......................................................................................14

    A.      Defendants implemented a blanket ban on a medically necessary treatment for gender dysphoria, a serious medical need, despite the known risks..................................................................................15

    B.      Defendants have not submitted any evidence of a purported "controversy" on the use of hormone therapy for adults. ...................17

    C.      The testimony of Owen and Wynne do not create any material factual disputes, much less require a finding that Defendants' conduct was constitutional as a matter of law. ......................................................19

    D.      Centurion's separate arguments against liability also fail...................21

Conclusion ................................................................................................23

i

# **TABLE OF AUTHORITIES**

## **Federal Cases**

*Ancata v. Prison Health Servs., Inc.*,
769 F.2d 700 (11th Cir. 1985) ..................................................................*passim*

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ....................................................................................13

*Barcelona v. Sec'y, Fla. Dep't of Corr.*,
657 F. App'x 896 (11th Cir. 2016) ..............................................................19

*Bayse v. Ward*,
No. 24-11299, 2025 WL 2178446 (11th Cir. Aug. 1, 2025) ......................12

*Chandler v. Janssen Pharma., Inc.*,
322 F. Supp. 3d 314 (E.D.N.Y. 2018) ..........................................................7

*Citizens Ins. Co. of Am. v. Banyan Tree Mgmt., LLC*,
631 F. Supp. 3d 1256 (N.D. Ga. 2022) ......................................................13

*Citizens Ins. Co. of Am. v. Banyan Tree Mgmt., LLC*,
No. 22-13581, 2023 WL 6319224 (11th Cir. Sept. 28, 2023) ...................13

*Diamond v. Owens*,
131 F. Supp. 3d 1346 (M.D. Ga. 2015) .....................................................22

*Doe v. Ga. Dep't of Corr.*,
730 F. Supp. 3d 1327 (N.D. Ga. 2024) ......................................................15

*Doe v. Ga. Dep't of Corr.*,
No. 24-11382, 2025 WL 1206229 (11th Cir. Mar. 6, 2025) ......................15

*Doe v. McHenry*,
763 F. Supp. 3d 81 (D.D.C. 2025) .............................................................10

*Edmondson v. Velvet Lifestyles, LLC*,
43 F.4th 1153 (11th Cir. 2022) ....................................................................6

*Eknes-Tucker v. Governor of Alabama*,
  80 F.4th 1205 (11th Cir. 2023)......................................................................*passim*

*Estelle v. Gamble*,
  429 U.S. 97 (1976)........................................................................................*passim*

*Ex Parte Young,*
  209 U.S. 123 (1908)...............................................................................................5

*Farmer v. Brennan*,
  511 U.S. 825 (1994)............................................................................................11

*Farrow v. West*,
  320 F.3d 1235 (11th Cir. 2003) ........................................................................19

*Flowers v. Bennett*,
  135 F. Supp. 2d 1150 (N.D. Ala. 2000) ...........................................................18

*Garcia-Bengochea v. Carnival Corp.*,
  57 F.4th 916 (11th Cir. 2023).............................................................................14

*Gibson v. Collier*,
  920 F.3d 212 (5th Cir. 2019)..............................................................................12

*Grayson v. Warden, Comm'r, Ala. Dep't of Corr.*,
  869 F.3d 1204 (11th Cir. 2017) ............................................................................6

*Green v. Sec'y for Dep't of Corr.*,
  212 F. App'x 869 (11th Cir. 2006)......................................................................11

*Gibson v. Collier*,
  920 F.3d 212 (5th Cir. 2019)..............................................................................12

*Helling v. McKinney*,
  509 U.S. 25 (1993)..............................................................................................17

*In re Zantac (Ranitidine) Prod. Liab.*,
  644 F. Supp. 3d 1075 (S.D. Fla. 2022) ...........................................................18

iii

*Johnson v. California*,
    543 U.S. 499 (2005)..................................................................................10

*Keohane v. Fla. Dep't of Corr. Sec'y*,
    952 F.3d 1257 (11th Cir. 2020) ...........................................................*passim*

*Kothmann v. Rosario*,
    558 F. App'x 907 (11th Cir. 2014)................................................................22

*Kuhne v. Fla. Dep't of Corr.*,
    745 F.3d 1091 (11th Cir. 2014) ....................................................................5

*Marbury v. Madison*,
    5 U.S. (1 Cranch) 137 (1803) ......................................................................5

*Maryland v. Wilson*,
    519 U.S. 408 (1997)....................................................................................12

*Murphy v. Raoul*,
    380 F. Supp. 3d 731 (N.D. Ill. 2019) ..........................................................10

*Prickett v. DeKalb Cnty.*,
    349 F.3d 1294 (11th Cir. 2003).....................................................................6

*Robinson v. Labrador*,
    747 F. Supp. 3d 1331 (D. Idaho 2024)....................................................21–22

*Stalley v. Cumbie*,
    124 F.4th 1273 (11th Cir. 2024)..................................................................17

*United States v. Ardley*,
    242 F.3d 989 (11th Cir. 2001)......................................................................21

*United States v. Farley*,
    607 F.3d 1294 (11th Cir. 2010)....................................................................10

*United States v. Skrmetti*,
    605 U.S. 495 (2025)..............................................................................*passim*

iv

*Williamson v. Brevard Cnty.*,
  928 F.3d 1296 (11th Cir. 2019)................................................................6

*Zatler v. Wainwright*,
  802 F.2d 397 (11th Cir. 1986)..............................................................21

**<u>Federal Constitutional and Statutory Authority</u>**

U.S. Const. art. VI.............................................................................13–14

U.S. CONST. amend. VIII ........................................................................5

Fed. R. Evid. 702(d)......................................................................*passim*

Fed. R. Evid. 803 ................................................................................18

Fed. R. Civ. P. 56(c).............................................................................6

**INTRODUCTION**

Even though the Court already enjoined Defendants from enforcing Georgia Senate Bill 185 ("SB185")'s blanket ban on hormone therapy because the ban likely violates the Eighth Amendment, Defendants now seek summary judgment in their favor.[1] Defendants' summary judgment motion presents no arguments or evidence not already considered—and rejected—by the Court before blocking Defendants' enforcement of SB185. Undeterred, Defendants take what is, along with their attempt to stay the Court's ruling, their third bite at the Eighth Amendment apple. Defendants rehash the same stale arguments and manufacture the same contrived controversy around adult gender dysphoria care. But what Defendants fail to do is marshal any actual *evidence* of this controversy, much less evidence sufficient to sustain a summary judgment ruling in their favor.

Defendants might prefer that Plaintiffs' case was an equal protection challenge to a law banning gender dysphoria care for minors, instead of an Eighth Amendment challenge to a healthcare ban for adults in custody. Their reliance on *United States v. Skrmetti*, 605 U.S. 495 (2025), and *Eknes-Tucker v. Governor of Alabama*, 80 F.4th 1205 (11th Cir. 2023), confirms as much. But it is *not*. *Estelle v. Gamble*, 429 U.S.

---

[1] Unless otherwise noted, this brief uses capitalized terms as defined in Plaintiffs' prior briefings. *See* Docs. 2, 3, 37, and 38. Additionally, quotations, citations, and alterations original to legal and record citations are omitted, and alterations and emphasis within this brief are added.

97 (1976), and its progeny govern this case, even though Defendants—consistent with their earlier briefing—utterly fail to apply that precedent. Defendants cannot import caselaw applying *different* constitutional provisions to *youth* care into a case about a blanket hormone therapy ban for *adults*.

Nor is this a case involving an area of "medical and scientific uncertainty," and Defendants' repetition of that conclusion without any evidence does not make it true. Doc. 72 at 16 (quoting *Skrmetti*, 605 U.S. at 524). The consensus among all medical authorities—*even* the immaterial studies that Defendants cite, without any expert testimony to facilitate their interpretation—is that hormone therapy is an "essential" and "well-established" form of healthcare for adults experiencing gender dysphoria. Doc. 72-2, Baker Rev. at 14; Doc. 72-3, Cass Rev. at 183.[2] Defendants offer not a shred of evidence, and *no* expert testimony, of any uncertainty.

However much Defendants might wish the constitutional standard—or Plaintiffs' claims—were something different, the Eighth Amendment standard is not in doubt. The determinative questions are whether Defendants "intentionally interfer[ed] with [medical] treatment once prescribed," *Estelle*, 429 U.S. at 104,

---

[2] Plaintiffs object to Defendants' citation to Doc. 72-3, Cass Rev. and Doc. 72-4, Karasic Report on grounds that they are not a part of the current record, which the Parties agreed, and this Court ordered, to limit to evidence *filed* as of November 3, 2025 "for purposes of the motions [for partial summary judgment] to be filed on November 10." *See* Doc. 69 ¶ 3 ("*No party will submit additional evidence . . . . The parties stipulate to the admissibility of all evidence submitted to date*." (emphasis added)); Text Order of Nov. 4, 2025 (approving same).

2

"fail[ed] to provide service acknowledged to be necessary," *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985), or "refused to take the steps to see that [patients are] properly evaluated," *id.* The undisputed factual record establishes[3] that the answer to each of these questions is "yes." Therefore, Defendants' motion for partial summary judgment must be denied.

## ARGUMENT

Defendants' summary judgment motion is not a traditional summary judgment motion. They do not argue that Plaintiffs lack evidence sufficient to create a fact question on their claims that Defendants' blanket withholding of hormone therapy, irrespective of individual medical need, violates Plaintiffs' Eighth Amendment rights. Instead, Defendants ask the Court to rule—as a matter of law—that their conduct is necessarily constitutional because it is the product of the legislative process in response to an invented medical controversy.

In this respect, Defendants' motion asks the Court to rule as a matter of law on entirely the wrong legal question. Not only do Defendants advocate for a ruling that ignores the constitutional minimum imposed by the Eighth Amendment, they

---

[3] Because the facts pertinent to Plaintiffs' Eighth Amendment hormone therapy ban claim are fully set forth in Plaintiffs' Motion for Partial Summary Judgment (Doc. 71), Rule 56. 1 Statement of Facts (Doc. 71-1), and their preliminary injunction briefing (Doc. 3, Docs. 11 *et seq.*, Doc. 37, Doc. 38), Plaintiffs incorporate them by reference with the Court's permission in lieu of repeating them here. Doc. 50, Order Granting Prelim. Inj. Mot. at 63–64; Doc. 69, Status Report at 2.

3

also advocate for a ruling prohibited by centuries of precedent about the Constitution's supremacy over state law. No set of facts could support the ruling Defendants seek, and certainly not the record actually before the Court.

Defendants set out to reframe the relevant legal question and then concoct a set of facts they say conclusively answers that question. But no amount of manufactured controversy around the efficacy of hormone care for adults or legislative judgment could answer the *actual* question before the Court, which is whether SB185's blanket ban on hormone care comports with the Eighth Amendment's deliberate indifference standard. Because it does not—a conclusion Defendants have not rebutted—Defendants are not entitled to summary judgment.

## I.   **Even duly enacted state laws like SB185 can be unconstitutional.**

Instead of focusing on the Eighth Amendment deliberate indifference standard that *exclusively* governs this case, Defendants devote nearly a third of their brief, Doc. 72 at 14–21, to arguing that SB185 is a reasonable legislative response to what they insist is controversial medical treatment. For this reason, Defendants say, they are entitled to summary judgment. Taken to its logical conclusion, Defendants' argument is that states are free to violate the Constitution, so long as that violation is a product of "democratically enacted laws." Doc. 72 at 9. But whatever "broad authority" the General Assembly has "to make policy," *id.* at 16, that authority does not extend to ignoring constitutional minimums.

4

The Supremacy Clause makes the United States Constitution "the supreme Law of the Land," notwithstanding any state's constitutional or statutory law. U.S. Const. art. VI, § 2. Thus, "a law repugnant to the constitution is void." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 180 (1803); *accord* U.S. Const. art. VI, § 2. The Eighth Amendment is, of course, federal constitutional law, and its "prohibition against cruel and unusual punishments protects a prisoner from deliberate indifference to serious medical needs." *Kuhne v. Fla. Dep't of Corr.*, 745 F.3d 1091, 1094 (11th Cir. 2014) (citing *Estelle*, 429 U.S. at 104). No state law, then, can override Defendants' constitutional obligation to provide adequate medical care to "those whom it is punishing by incarceration." *Estelle*, 429 U.S. at 103.

Because states cannot take action—legislative or otherwise—in violation of the United States Constitution, *Ex Parte Young,* 209 U.S. 123, 159 (1908), the only relevant question is whether, on this record, Defendants' enforcement of SB185 to restrict access to hormone care renders Defendants deliberately indifferent to Plaintiffs' and Class Members' serious medical need. As shown below, Defendants haven't carried their burden of showing under Rule 56 that SB185's blanket ban on hormone therapy is constitutional as a matter of law.

## II. Defendants have marshaled no evidence to support the legal conclusion they are asking the Court to draw.

Defendants ask the Court to rule—as a matter of law—that their enforcement of SB185's blanket ban on hormone therapy is *necessarily* constitutional. In other

5

words, they do *not* argue that Plaintiffs have failed to marshal evidence sufficient to create a fact question on their constitutional claims. Instead, Defendants seek a ruling that Georgia can substitute imagined medical controversy for established constitutional minimums, like the Eighth Amendment prohibition on responding to an incarcerated person's serious medical need with deliberate indifference.

"Summary judgment is proper…where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Grayson v. Warden, Comm'r, Ala. Dep't of Corr.*, 869 F.3d 1204, 1220 (11th Cir. 2017) (citing Fed. R. Civ. P. 56(c)). Courts "view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion and all reasonable doubts about the facts [are] resolved in favor of the non-movant." *Prickett v. DeKalb Cnty.*, 349 F.3d 1294, 1296 (11th Cir. 2003). Summary judgment is only appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Williamson v. Brevard Cnty.*, 928 F.3d 1296, 1304 (11th Cir. 2019). "Only when the moving party has carried its burden must the non-moving party show the existence of a genuine issue of material fact in order to avoid summary judgment." *Edmondson v. Velvet Lifestyles, LLC*, 43 F.4th 1153, 1160 (11th Cir. 2022).

Defendants have resoundingly failed to carry their summary judgment burden. Indeed, *no* set of facts would permit the Court to rule—as a matter of law—that

6

withholding medical care without regard to individual medical need is constitutional. After all, "a shoulder-shrugging refusal even to consider whether a particular course of treatment is appropriate *is 'the very definition of 'deliberate indifference''—anti-medicine, if you will.'" Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1267 (11th Cir. 2020); *accord Ancata*, 769 F.2d at 704.

Defendants even fail to prove up their invented medical controversy. They have no expert to testify to any controversy, and the two studies they cite mean nothing with no expert to reliably apply them "to the facts of the case." Fed. R. Evid. (d). Instead, Defendants' counsel want to play armchair experts about what the studies mean, with no indication that the studies' authors would endorse the conclusion they draw. *See Chandler v. Janssen Pharma., Inc.*, 322 F. Supp. 3d 314, 326 (E.D.N.Y. 2018) ("Neither the Court nor a lay jury is capable of assessing the credibility of the two studies, synthesizing the results of the studies … , or comparing the results of these studies with other studies that came to contrary conclusions."). In short, repeating the phrase "medical controversy" does not create one, and the record evidence before the Court certainly does not make it true.

### A. *Skrmetti* and *Eknes-Tucker* do not govern the outcome of cases concerning adult gender dysphoria care bans.

*First*, Defendants declare that "*Skrmetti* and *Eknes-Tucker* should decide this case," Doc. 72 at 14, because they "upheld outright bans on hormonal interventions for minors, notwithstanding expert submissions that closely parallel Plaintiffs'

7

submissions here." Doc. 72 at 18–19.[4] But Defendants' own statement identifies a material difference (albeit one of many) between *Skrmetti, Eknes-Tucker*, and the instant case. *Skrmetti* and *Eknes-Tucker* concerned whether laws regulating gender dysphoria access for *minors* survive rational basis review. *Skrmetti*, 605 U.S. at 507 (upholding "limited" ban that "does not restrict the administration of…hormones to individuals 18 and over."); *Eknes-Tucker* 80 F.4th at 1230 (upholding law that "distinguishes minors from adults").[5]

In contrast, this case concerns gender dysphoria treatment in *adults*[6] where a medical consensus on necessity continues to exist—not just among Plaintiffs' experts but the very sources of authority that Defendants continue to rely upon. *See* Doc. 72-2, Baker Rev. at 14; Doc. 72-3, Cass Rev. at 183; Sec. III.B, *infra* (noting ongoing consensus). Assuming purely for the sake of argument that there *is* medical

---

[4] This statement is also unsupported because Defendants have not submitted any evidence that reflects the expert testimony before the Supreme Court in *Skrmetti*. "[T]he Court cannot take judicial notice of the allegedly unsettled nature of a medical debate." Doc. 50 at 40.

[5] Defendants claim that more than twenty states have banned hormone therapy in "some circumstances," Doc. 72 at 8–9, but fail to mention that those circumstances largely involve minors.

[6] Hormone therapy is only available to adult gender dysphoria patients in GDC, not minors. Doc. 11-10, SOP 507.04.68 (§ IV.D.1.b) (authorizing hormone therapy only for persons who are "at least eighteen (18) years of age"). Thus, enjoining Defendants from enforcing SB185 within GDC will not "produce[] absurd outcomes" like Defendants suggest. Doc. 72 at 16. If there is any "absurd outcome" of SB185, it is that someone like Plaintiff Benjamin, who has taken medically necessary hormone therapy most of her life, must lose that treatment the moment she enters GDC custody. Benjamin Decl. (Doc. 11-3) ¶¶ 8–24.

controversy about the risks of using puberty blockers to treat adolescents experiencing gender dysphoria, for example, that same controversy does not exist as it relates to hormone therapy for fully grown adults. None of Defendants' sources establish otherwise. *See* Doc. 72-2, Baker Rev. at 14 (describing hormone therapy as "an essential component of care" in gender dysphoric adults); Doc. 72-3, Cass Rev. at 183 (affirming the same).

*Second*, there was no discussion *whatsoever* in *Skrmetti* or *Eknes-Tucker* suggesting that hormone therapy bans targeting *adults* are constitutional under the Equal Protection Clause, or otherwise. Nor was there any discussion in those cases about whether hormone therapy bans are constitutional under the Eighth Amendment, which mandates that corrections officials provide adequate medical care to incarcerated people with serious medical needs like gender dysphoria. *See, e.g.*, *Estelle*, 429 U.S. at 103–06; Doc. 11-10, SOP 507.04.68 (§ IV.A.6) (acknowledging that gender dysphoria patients have "serious medical needs which may not be ignored."); *Keohane*, 952 F.3d at 1265–66 (stating there is "no debate" on the issue). And *Skrmetti* and *Eknes-Tucker* certainly entertained no debate about whether gender dysphoria is a serious medical need to which the Eighth Amendment applies.

Although Defendants insist that the Court should transplant equal protection cases into the Eighth Amendment context, they offer no doctrinal support for this

9

request. *See generally* Doc. 72. And Defendants ignore that the Eighth Amendment "analysis is separate and independent from … equal protection. The claims do not compete, and the deference accorded to prison officials may very well differ under each provision." *Murphy v. Raoul*, 380 F. Supp. 3d 731, 763 (N.D. Ill. 2019). Indeed, the Supreme Court has expressly declined to apply equal-protection case law in the prison context "to evaluate Eighth Amendment claims of cruel and unusual punishment in prison." *Johnson v. California*, 543 U.S. 499, 511 (2005). "This is because the integrity of the criminal justice system depends on full compliance with the Eighth Amendment." *Id.*; *see also Doe v. McHenry*, 763 F. Supp. 3d 81, 88 (D.D.C. 2025) (rejecting the notion that an equal protection case impacted the deliberate indifference inquiry because "it is beyond peradventure that the Supreme Court [has] not used [it] to evaluate Eighth Amendment claims which are adjudicated under the 'deliberate indifference standard'").

Because Eighth Amendment and Equal Protection claims fundamentally differ, the transmutation Defendants ask the Court to perform is impermissible. *Johnson*, 543 U.S. at 511. Case in point, while consideration of legislative intent is required in equal protection cases, "legislative history [i]s not a necessary part of Eighth Amendment analysis[.]" *United States v. Farley*, 607 F.3d 1294, 1320 (11th Cir. 2010). Thus, not only have Defendants failed to show that *Skrmetti*'s equal protection analysis controls the outcome here, they have not even made the predicate

10

showing the General Assembly's "legislative intent" with respect to hormone therapy is relevant to Plaintiffs' claims—even accepting the dubious premise that the General Assembly intended to respond to a "medical controversy.[7] Doc. 37 at 5–6.

Therefore, when the Court considers the deliberate indifference claim that Plaintiffs actually pled and proved—and about which *Skrmetti* says nothing— Defendants' Motion for Summary Judgment must be denied. Doc. 3 at 17–23; Doc. 37 at 7–8; Doc. 71 at 10–16.

> **B.    WPATH's degree of acceptance is immaterial, given the medical consensus regarding hormone therapy in adults.**

Next, Defendants claim that "courts across the country have also rejected the notion that WPATH's[8] [Standards of Care] and similar standards can dictate constitutional law." Doc. 72 at 19. This argument is not new, and it should be rejected again. Doc. 37 at 11–12. While medical organizations as varied as the American

---

[7] Legislative intent is even more irrelevant in this case because Defendants are not legislators, they are corrections officials and healthcare providers charged with the constitutional duty to provide adequate medical care to the people in their charge. *Green v. Sec'y for Dep't of Corr.*, 212 F. App'x 869, 872 (11th Cir. 2006) ("The Eighth Amendment imposes a duty on prison officials to provide humane conditions of confinement, including... medical care") (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Defendants mischaracterize the legislative intent behind SB185 in any event. Doc. 37 at 5–6. Thus, the notion that legislators adopted SB185 to regulate an "area[] where there is medical and scientific uncertainty," Doc. 72 at 16 (citing *Skrmetti*, 605 U.S. at 524), is a post-hoc rationalization that Defendants made up, just like the purported medical controversy.
[8] The World Professional Association for Transgender Health, or WPATH, is an organization of medical and mental health professionals specializing in the treatment of gender dysphoria. Ettner Decl. (Doc. 11-1) ¶ 8.

Medical Association, the Endocrine Society, the American Psychological Association, the American Psychiatric Association, the World Health Organization, and others continue to regard WPATH as an authoritative source on the treatment of gender dysphoria in adults, Doc. 72-1, ¶ 77, medical necessity *alone* defines the constitutional standard. Plaintiffs have never suggested otherwise. Doc 37 at 11.[9]

And while Defendants' criticisms of WPATH are contrived at best,[10] WPATH's degree of acceptance (or lack thereof) is immaterial to Plaintiffs' claims, since even Defendants acknowledge hormone therapy can be medically necessary. *See* Doc. 11-9, SOP 508.40 (§ IV.D); Doc. 11-10, SOP 507.04.68 (§§ IV.C–D); Doc. 11-11, SOP 220.09 (§§ IV.K.4–8). Myriad authorities, besides WPATH, confirm the same. Those authorities include Plaintiffs' experts, whose opinions rely on their professional training, experience, and scientific sources, Doc. 50 at 12–13, and materials that *Defendants* cite. *See, e.g.*, Doc. 72-2, Baker Rev. at 14; Doc. 72-3,

---

[9] Further, while Defendants claim that "Plaintiffs' experts argue that WPATH and the Endocrine Society standards regarding cross-sex hormones should be incorporated into constitutional law," they do no such thing, as their reports are devoid of legal opinions. Doc. 72 at 18.

[10] Among other problems, Defendants' criticisms of WPATH largely derive from a series of concurrences, which are decidedly *not* decisional law. *Maryland v. Wilson*, 519 U.S. 408, 413 (1997) (statements "contained in a concurrence" do not "constitute[] binding precedent"). The evidence submitted in those cases is not part of the record before this Court. Doc. 50 at 40. Defendants also mischaracterize *Bayse v. Ward*, No. 24-11299, 2025 WL 2178446, at *1 (11th Cir. Aug. 1, 2025) and *Gibson v. Collier*, 920 F.3d 212 (5th Cir. 2019); neither are about hormone therapy at all. Doc. 37 at 13; *see also id.* at 13 n.11.

Cass Rev. at 183; Doc. 11-8, NCCHC Stmt. at 2–5 (cited at Doc. 11-20, SB 185 Implementation Plan at 5); Ettner Decl. (Doc. 11-1) ¶¶ 1, 6–7, 10, 18–19, App'x B; Haw Decl. (Doc. 11-2) ¶¶ 1, 3–5, 9–10, App'x B. Nor is there any dispute that hormone therapy was medically necessary for every Plaintiff and Class Member who was prescribed it. Sec. III.A, *infra*; Doc. 71-1, Pls.' 56.1 Stmt. ¶¶ 5–18, 38 (collecting evidence).

Accordingly, Defendants' quibbles about WPATH are both poorly supported and wholly immaterial to Plaintiffs' Eighth Amendment claims. Doc. 50 at 12 n.2 ("this case does not involve treating minors and so much of this [WPATH] criticism is inapt here"); *see also Citizens Ins. Co. of Am. v. Banyan Tree Mgmt., LLC*, 631 F. Supp. 3d 1256, 1268 (N.D. Ga. 2022), *aff'd,* No. 22-13581, 2023 WL 6319224 (11th Cir. Sept. 28, 2023) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (disputes are material when they "affect the outcome of the lawsuit").

### C.    All Plaintiffs have Article III standing.

Defendants tacitly concede that standing is proper with respect to Plaintiffs Doe, Horton, and Wilson, who represent the Receiving Class. Doc. 72 at 21–22. But they claim Plaintiffs Benjamin and Madison lack standing, undeterred by the Court's earlier rejection of this argument. Doc. 50 at 51. As before, Defendants rely on an intentional misreading of Plaintiffs Benjamin and Madison's claim.

Despite multiple rounds of briefing on exactly this issue, Defendants maintain that "it is not immediately obvious" how SB185 injures Plaintiffs Benjamin and Madison because they may not ultimately obtain hormones. Doc. 72 at 22. But Defendants can only make this argument by ignoring Eleventh Circuit precedent in *Ancata*, which establishes that the denial of treatment evaluations in and of itself is an injury. *Ancata*, 769 F.2d at 704. Defendants offer no basis for departing from *Ancata* or ignoring that the denial of evaluations is an injury, "regardless of whether hormone therapy is ultimately prescribed." Doc. 50 at 51.

Accordingly, Plaintiffs Benjamin and Madison easily satisfy all three requirements of Article III standing: injury-in-fact, traceability, and redressability. *Garcia-Bengochea v. Carnival Corp.*, 57 F.4th 916, 922 (11th Cir. 2023). Plaintiffs Benjamin and Madison have been injured by the denial of treatment evaluation that "properly attends to [their] individualized medical needs." *Keohane*, 952 F.3d at 1267. That injury is traceable to Defendants, who refuse to evaluate them for hormone therapy to comply with SB185. And an injunction would redress that injury by giving them "access to medical personnel capable of evaluating the need for treatment." *Ancata*, 769 F.2d at 704.

### III. Defendants engaged in deliberate indifference based on the undisputed facts and applicable law.

Neither *Skrmetti* nor *Eknes-Tucker* even mention, let alone question, the well-established deliberate indifference test that Defendants agree is the governing

14

framework. Doc. 72 at 6. But, as in past briefs, Defendants fail to apply the test to their actions because, as applied to the *material* facts of this case, Plaintiffs clearly prevail. Doc. 3 at 12–24; Doc. 37 at 6–14; Doc. 71 at 10–16 (applying test). Defendants' hormone therapy ban violates the Eighth Amendment for the same reasons it was enjoined in the first place.

> **A.    Defendants implemented a blanket ban on a medically necessary treatment for gender dysphoria, a serious medical need, despite the known risks.**

*First*, it is undisputed that Plaintiffs' and Class Members' gender dysphoria is a "serious medical need[] which may not be ignored." Doc. 11-10, SOP 507.04.68 (§ IV.A.6); *accord* Ettner Decl. (Doc. 11-1) ¶¶ 24–25, 29, 31; Haw Decl. (Doc. 11-2) ¶¶ 11–12. Nor is there any dispute that "appropriate management" of gender dysphoria requires individualized evaluations and treatment. Doc. 71-1, Pls.' 56.1 Stmt. ¶¶ 11–14.

*Second*, a consensus exists—between Plaintiffs and Defendants alike—that hormone therapy can be medically necessary gender dysphoria treatment, and that it *was* medically necessary for Plaintiffs Horton, Wilson, Doe, and the other Class Members to whom it was prescribed. *See, e.g.,* Ettner Decl. (Doc. 11-1) ¶¶ 65–94, 165; Haw Decl. (Doc. 11-2) ¶¶ 14, 19, 21–30, 61; Doc. 11-9, SOP 508.40 (§ IV.D); Doc. 11-10, SOP 507.04.68 (§§ IV.C–D); Doc. 11-11, SOP 220.09 (§ IV.K.4–8); Doc. 11-8, NCCHC Position Stmt. at 2–5; Doc. 72-2, Baker Rev. at 14; Doc. 72-3,

Cass Rev. at 183; Doc. 11-16, Oliver-Ammons Text Message at 2; Doc. 71-1, Pls.' 56.1 Stmt. ¶¶ 5–18 (citing additional evidence). *See also Doe v. Ga. Dep't of Corr.*, 730 F. Supp. 3d 1327, 1337 (N.D. Ga. 2024), *appeal dismissed as moot*, No. 24-11382, 2025 WL 1206229 (11th Cir. Mar. 6, 2025) (noting Defendants' concession that hormone therapy "is necessary" care).

*Third*, record evidence also shows that Defendants knew that implementing a blanket hormone therapy ban within GDC would put Plaintiffs and Class Members at a substantial risk of harm, but they proceeded to do so anyway. Doc. 11-16, Oliver-Ammons Text Message at 2; Doc. 11-20, SB 185 Implementation Plan at 2, 10–16; Doc. 11-21, July 21 Notice Letter at 7–8; Wynne Decl. (Doc. 28-1) ¶¶ 4–5, 9, 11; *see also* Doc. 71-1, Pls.' 56.1 Stmt. ¶¶ 8–36 (collecting additional evidence).

Plaintiffs and Class Members suffered foreseeable physical and psychological harm as a result. Benjamin Decl. (Doc. 11-3) ¶¶ 24–27; Horton Decl. (Doc. 11-4) ¶¶ 6–28; Madison Decl. (Doc. 11-5) ¶ 18; Wilson Decl. (Doc. 11-6) ¶¶ 6–14, 16; Doe Decl. (Doc. 11-7) ¶¶ 6–15; Doc. 11-21, July 21 Notice Letter at 7–8; Doc. 11-20, SB 185 Implementation Plan at 2, 10–16; Doc. 25 at 24. Plaintiffs and Class Members also remain at ongoing risk since Defendants will resume enforcing SB185 in December unless they are enjoined again. *See* Doc. 71 at 14; Haw Decl. (Doc. 11-2) ¶¶ 42–43, 46–51, 56–57, 61–62; Ettner Decl. (Doc. 11-1) ¶¶ 124–164, 167; Horton Decl. (Doc. 11-4) ¶¶ 6–9, 13–28.

16

This satisfies all of the prongs of the *applicable* constitutional test—the one arising under the Eighth Amendment. Doc. 3 at 12–24; Doc. 37 at 6–8; Doc. 71 at 9–16; *see also Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("the Eighth Amendment protects against future harm to inmates."). After all, "[d]eliberate indifference to serious medical needs is shown when prison officials have prevented an inmate from receiving recommended treatment or when an inmate is denied access to medical personnel capable of evaluating the need for treatment." *Ancata*, 769 F.2d at 704; *accord Stalley v. Cumbie*, 124 F.4th 1273, 1286 (11th Cir. 2024). And "policies erecting blanket bans on gender-dysphoria treatments—without exception for medical necessity—have [been] held [to] evince deliberate indifference." *Keohane*, 952 F.3d at 1267. Thus, rather than carrying their burden as movants, Defendants' summary judgment motion fails as a matter of *fact and law*.

**B.    Defendants have not submitted any evidence of a purported "controversy" on the use of hormone therapy for adults.**

Defendants ignore all this evidence and the applicable law. Instead, they claim there is "medical and scientific uncertainty" about the use of hormone therapy in adults. Doc. 72 at 16. The only problem is *Skrmetti* and *Eknes-Tucker*, which they rely upon, say *absolutely nothing* about hormone therapy for adults. *Skrmetti*, 605 U.S. at 507; *Eknes-Tucker* 80 F.4th at 1230.

And Defendants have *neither* fact *nor* expert evidence that any scientific controversy exists. Sec. II, *supra*; Doc. 50 at 39–41. Instead, they rely on two studies,

which are no substitute for expert testimony—particularly since they are far from self-explanatory and were filed without context. Doc. 50 at 39–41. With no expert to link the two studies to the facts of this case, the studies mean nothing, and Defendants' *arguments* about what they mean amount to improper lay opinion. *In re Zantac (Ranitidine) Prod. Liab.*, 644 F. Supp. 3d 1075, 1179 (S.D. Fla. 2022) (requiring experts to "explain the link between the study and the facts of the case."); Fed. R. Evid. 803(18).[11] And beyond all that, the studies state that hormone therapy is an "essential component" of gender dysphoria care for adults that "has transformed the lives of many transgender people." Doc. 72-2, Baker Rev. at 14; Doc. 72-3, Cass Rev. at 183. That is not evidence of a debate or uncertainty.

Although Defendants claim, based on the Baker Review, that it is "impossible to draw conclusions about the effects of hormone therapy on *death* by suicide," Doc. 72 at 17, the flaws of this argument should be readily apparent. Consider the consequences of Defendants' arguments. Insulin does not prevent death by suicide in a statistically significant way, but no one would argue that withholding insulin from an insulin-dependent diabetic is constitutionally permissible. *Cf. Flowers v. Bennett*, 135 F. Supp. 2d 1150, 1156 (N.D. Ala. 2000) (evidence defendants withheld

---

[11] Moreover, neither study even set out to decide whether hormone therapy is medically necessary for incarcerated adults, so Defendants' interpretation "exceeds the boundaries of what that study set out to prove," making it improper. *In re Zantac*, 644 F. Supp. 3d at 1179.

insulin from plaintiff they knew to be diabetic and whose medical condition was deteriorating was sufficient to create a fact question on deliberate indifference to serious medical need). Further, medical necessity isn't defined (only) by avoiding mortality. Though hearing loss is not fatal, hearing aids can still be required by the Eighth Amendment. *Barcelona v. Sec'y, Fla. Dep't of Corr.*, 657 F. App'x 896, 898–99 (11th Cir. 2016).[12]

In short, medical necessity is not defined by whether care prevents death by suicide, or even whether care prevents death *generally*. Medically necessary care is healthcare that treats a serious medical need. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (citing *Estelle*, 429 U.S. at 104). And here, hormone therapy is "essential" to treating gender dysphoria, which—again—all parties agree is a serious medical need. Doc. 72-2, Baker Rev. at 14; Doc. 71-1, Pls.' 56.1 Stmt. ¶¶ 5–18 (collecting evidence).

    **C.    The testimony of Owen and Wynne do not create any material factual disputes, much less require a finding that Defendants' conduct was constitutional as a matter of law.**

---

[12] Even if Defendants were correct about the efficacy of hormone therapy in preventing suicidal ideation, "death by suicide" is not the only symptom of untreated gender dysphoria. So, too, are the "clinically-significant distress" associated with gender incongruence, castration attempts, psychological decompensation, and suicidal ideation, among others, which hormone therapy helps treat. *See* Doc. 71-1, Pls.' 56.1 Stmt. ¶¶ 43–45 (collecting evidence).

Defendants claim Plaintiffs and Class Members are "receiving extensive medical care reasonably calculated to treat their gender dysphoria" despite their blanket ban, Doc. 72 at 20, even though hormone therapy was only prescribed to those with a "documented medical need." Doc. 11-11, SOP 220.09 (§ IV.K.8). In support, they cite the declarations of Gerald Wynne and Kathryn Haynes Owen, whom they inaccurately refer to as Plaintiffs' "treating physicians."[13] The only problem is the Wynne and Owen declarations *say no such thing*. Neither Wynne nor Owen declare that hormone therapy is not medically necessary care for Plaintiffs, or that GDC's counseling and mental health services are gender dysphoria treatment, because they are not. Doc. 71-1, Pls.' 56.1 Stmt. ¶¶ 5–7, 10–15.

Neither Wynne, Owen, nor any other Defendant or witness has sworn that he or she did not know that denying hormone therapy would subject Plaintiffs and Class Members to a substantial risk of harm. And no Defendant has offered testimony or other evidence that he or she reviewed or credited any study on hormone therapy that created a supposed "ongoing medical debate," or reviewed any "similar state laws that have been passed around the country." Doc. 72 at 21. Defendants' argument that they did not "actually kn[o]w that their conduct was below the constitutional standard" thus lacks any record support. *Id*.

---

[13] Neither Owen nor Wynne claim to have ever individually examined Plaintiffs, even though Defendants assail Plaintiffs' experts for the same. Doc. 72 at 18. And Owen is not a physician at all. Owen Decl. (Doc. 25-2) ¶ 3.

Instead, Wynne and Owen's declarations affirm what other evidence already makes clear: Defendants knew that hormone therapy was a necessary form of gender dysphoria treatment and that denying it would harm Plaintiffs and Class Members—so much so that suicide precautions might be required. Owen Decl. (Doc. 25-2) ¶¶ 7–15; Wynne Decl. (Doc. 28-1) ¶ 6 (acknowledging risk of "acute concerns"). Accordingly, although Defendants claim that this case boils down to "a simple difference in medical opinion," Doc. 72 at 20, this is "not a case of dueling experts" because no such difference exists. Doc. 50 at 40.

### D.   Centurion's separate arguments against liability also fail.

Centurion's untimely filing[14] largely adopts the State Defendants' arguments in support of summary judgment but advances two additional arguments. First, Centurion repeats its argument from the preliminary injunction briefing that it cannot be held liable for deliberate indifference because it was complying with state law. *See* Doc. 75 at 2; Doc. 24 at 3. Now, like then, this argument is meritless. *See* Doc. 38 at 4–8. Centurion can be held liable based on "a policy or custom that [it] established *or* utilized." *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986);

---

[14] Centurion moved to "join" the State Defendants' summary judgment motion after the Court-ordered summary judgment deadline—a deadline they *agreed* to. *Compare* Doc. 69 (setting deadlines) *with* Doc. 75 (motion filed after the deadline). Because their motion is untimely, the Court can decline to consider Centurion's argument. *United States v. Ardley*, 242 F.3d 989, 990 (11th Cir. 2001) ("[I]ssues and contentions not timely raised in the briefs are deemed abandoned"). But the argument is meritless, in any case.

*accord* Doc. 11-20, SB 185 Implementation Plan at 2 (showing Centurion's involvement with and use of policy). Centurion was intimately aware of this fact because of the experiences of its Idaho affiliate. *See, e.g.*, *Robinson v. Labrador*, 747 F. Supp. 3d 1331, 1343, 1350–51 (D. Idaho 2024) (enjoining Centurion affiliate from enforcing state law "prohibition on the use of state funds for purposes of providing hormone therapy"); Doc. 11-21, July 21 Notice Letter at 6 (discussing same).[15]

Centurion's second argument—that it is already "providing extensive monitoring, medical care, and mental health treatment to patients diagnosed with gender dysphoria"—is doomed by its acknowledgment that all such care is "subject to SB 185's limitations." Doc. 75 at 2. "Monitoring" patients or offering them generalized counseling in lieu of medically necessary care like hormone therapy does not pass constitutional muster. *See, e.g., Kothmann v. Rosario*, 558 F. App'x 907, 912 (11th Cir. 2014) (plaintiff offered counseling in lieu of hormone therapy had a viable Eighth Amendment claim); *Diamond v. Owens*, 131 F. Supp. 3d 1346, 1353, 1372–75, 1382 (M.D. Ga. 2015) (same). Thus, Centurion, like the State Defendants, is enforcing a blanket ban on medically necessary treatment for a

---

[15] To date, the preliminary injunction in *Labrador* has been renewed five times. *Labrador*, 747 F. Supp. at 1343, 1350–51 (first preliminary injunction); *injunction renewed*, Case No. 1:24-cv-00306, 2024 WL 4953686 (D. Idaho Dec. 3, 2024); *injunction renewed*, 2025 WL 673930 (D. Idaho Mar. 3, 2025); *injunction renewed*, 2025 WL 1547067 (D. Idaho May 30, 2025); *and injunction renewed*, 2025 WL 2494534 (D. Idaho Aug. 29, 2025).

serious medical need, despite being cognizant of the myriad health risks. Sec. III.A, *supra*. This is "the very definition of 'deliberate indifference.'" *Keohane*, 952 F.3d at 1267.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Defendants' Motion for Partial Summary Judgment be denied.

*[Signature and certification pages follow.]*

Respectfully submitted this 17th day of November, 2025.

<div style="float:right">

*/s/ Amanda Kay Seals*
Amanda Kay Seals
GA Bar No. 502720
seals@bmelaw.com
Matthew R. Sellers
GA Bar No. 691202
sellers@bmelaw.com
BONDURANT, MIXSON & ELMORE, LLP
1201 W Peachtree St NW
Suite 3900
Atlanta, GA 30309
Phone: (404) 881-4100
Fax: (404) 881-4111

</div>

Emily C. R. Early,
GA Bar No. 810206
eearly@ccrjustice.org
A. Chinyere Ezie*
cezie@ccrjustice.org
Celine Zhu*
czhu@ccrjustice.org
Kayla Vinson*
kvinson@ccrjustice.org
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Phone: (212) 614-6464

D. Korbin Felder*
kfelder@ccrjustice.org
CENTER FOR CONSTITUTIONAL RIGHTS
P.O. BOX 12046
Jackson, MS 39236
Phone: (601) 228-6101

*Admitted Pro Hac Vice*

*Counsel for Plaintiffs*

Signature Page

## <u>CERTIFICATE OF COMPLIANCE</u>

This is to certify that the foregoing **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C). Specifically, the pleading was prepared using Times New Roman, 14-point font.

<div align="right">

*/s/ Amanda Kay Seals*
Amanda Kay Seals

</div>

<div align="center">

Local Rule 7.1(D)
Certificate of Compliance

</div>

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 17, 2025, I submitted the foregoing via the Court's

CM/ECF system, which will serve an electronic copy on all attorneys of record.

<u>*/s/ Amanda Kay Seals*</u>
Amanda Kay Seals

Certificate of Service