**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |
|---|---|
| ISIS BENJAMIN, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> COMMISSIONER TYRONE OLIVER, *et al.*, <br><br> *Defendants*. | Case No. 1:25-cv-04470-VMC |

**STATE DEFENDANTS' OPPOSITION TO MOTION FOR PARTIAL
SUMMARY JUDGMENT AND ENTRY OF PERMANENT INJUNCTION**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................ II

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................ 1

BACKGROUND ......................................................................................... 3

    I.    State legislatures around the country have enacted strict regulations on sex-change interventions, including cross-sex hormones. ....................... 3

    II.    The Eleventh Circuit and the Supreme Court have upheld state regulations of sex-change interventions under rational basis review. ...... 5

    III.    The Georgia Legislature enacted SB185 to prohibit public funding for facilitating unproven sex-change interventions in prisons. ...................... 7

LEGAL STANDARDS.................................................................................. 8

    I.    Cross-motions for summary judgment....................................................... 8

    II.    Permanent injunctions and the Prison Litigation Reform Act. ................. 9

ARGUMENT.............................................................................................. 10

    I.    SB185 is "clearly" constitutional under *Skrmetti* and *Eknes-Tucker*...... 10

    II.    SB185's prohibition on using taxpayer funds for cross-sex hormones does not violate the Eighth Amendment. ................................................ 13

        A.    The deliberate indifference standard gives state officials even greater deference than rational basis review............................... 13

        B.    Neither the State Defendants nor the Legislature acted with subjective recklessness. .............................................................. 17

        C.    The State Defendants' implementation of SB185 was a reasonable response to the risks posed by Plaintiffs' gender dysphoria.................................................................................... 19

    III.    Plaintiffs are not entitled to a permanent injunction. ............................. 22

CONCLUSION .......................................................................................... 25

CERTIFICATE OF COMPLIANCE............................................................... 27

CERTIFICATE OF SERVICE ...................................................................... 28

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Tyson Foods, Inc.*,
121 F.3d 642 (11th Cir. 1997) ............................................................................ 8

*Berrocal v. Att'y Gen. of United States*,
136 F.4th 1043 (11th Cir. 2025) ...................................................................... 23

*Doe 1 v. Thornbury*,
75 F.4th 655 (6th Cir. 2023) ............................................................................ 24

*Eknes-Tucker v. Governor of Alabama*,
80 F.4th (11th Cir. 2023) ................................................... 1, 5, 10, 14, 23

*Eknes-Tucker v. Governor of Alabama*,
114 F.4th 1241 (11th Cir. 2024) (en banc) ................................................. 1, 5, 17

*Ga. Advoc. Off. v. Jackson*,
4 F.4th 1200 (11th Cir. 2021) .......................................................................... 24

*Ga. Advoc. Off. v. Jackson*,
33 F.4th 1325 (11th Cir. 2022) ........................................................................ 24

*Hoffer v. Sec'y, Fla. Dep't of Corr.*,
973 F.3d 1263 (11th Cir. 2020) ........................................... 1, 10, 12, 14, 20, 22

*Hydro Sys., Inc. v. Factory Automation Sys.*,
771 F. Supp. 3d 1342 (N.D. Ga. 2025) ........................................................ 8, 9

*Keohane v. Fla. Dep't of Corr. Sec'y*,
952 F.3d 1257 (11th Cir. 2020) ................................................................. 13, 14

*KH Outdoor, LLC v. City of Trussville*,
458 F.3d 1261 (11th Cir. 2006) .................................................................... 9, 22

*L. W. by & through Williams v. Skrmetti*,
73 F.4th 408 (6th Cir. 2023) ............................................................................ 24

*L.W. by and through Williams v. Skrmetti*,
83 F.4th 460 (6th Cir. 2023) ............................................................................ 16

*Maryland v. King*,
567 U.S. 1301 (2012) ........................................................................................ 25

*Miller v. French*,
530 U.S. 327 (2000) .......................................................................................... 10

*Nken v. Holder*,
  556 U.S. 418 (2009) ................................................................ 25

*Siegel v. LePore*,
  234 F.3d 1163 (11th Cir. 2000) (en banc) ............................... 9

*Swain v. Junior*,
  958 F.3d 1081 (11th Cir. 2020) ............................................. 24

United States v. Skrmetti,
  605 U.S. 495 (2025) .................. 1, 2, 3, 6, 7, 10, 11, 12, 13, 14, 15, 16, 17, 18, 22

*Vacco v. Quill*,
  521 U.S. 793 (1997) ................................................................ 6

*W. Virginia by & through Morrisey v. U.S. Dep't of the Treasury*,
  59 F.4th 1124 (11th Cir. 2023) ............................................... 9

*Wade v. McDade*,
  106 F.4th 1251 (11th Cir. 2024) (en banc) ..................... 2, 12, 18, 19

**Statutes, Rules and Regulations**

18 U.S.C. §3626(a)(1)(A) ......................................................... 10

Fed. R. App. P. 8 ..................................................................... 25

Fed. R. Civ. P. 54 .................................................................... 25

Fed. R. Civ. P. 56 ...................................................................... 8

O.C.G.A. §42-5-2 ...................................................................... 7

O.C.G.A. §43-34-15 ................................................................ 12

**Other Authorities**

Alabama SB184 (2022) .............................................................. 4

Arkansas HB1570 (2021) ........................................................... 4

Florida CS/SB254 (2023) ........................................................... 4

Georgia SB140 (2023) ............................................................... 4

Idaho HB71 (2023) .................................................................... 4

Indiana SA538 (2023) ............................................................... 4

Iowa Senate File 538 (2023) ....................................................... 4

Kansas SB63 (2025) .................................................................. 4

Kentucky SB150 (2023) ............................................................. 4

Louisiana HB648 (2023) ............................................................................... 4

Mississippi HB1125 (2023) ........................................................................... 4

Missouri SB49 (2023) ................................................................................... 4

New Hampshire HB377 (2025) ...................................................................... 4

North Carolina HB808 (2023) ....................................................................... 4

North Dakota HB1254 (2023) ........................................................................ 4

Ohio HB68 (2024) ........................................................................................ 4

Oklahoma SB613 (2023) ............................................................................... 4

South Carolina HB4624 (2024) ..................................................................... 4

South Dakota HB1080 (2023) ........................................................................ 4

Tennessee SB1 (2023) ................................................................................... 4

Texas SB14 (2023) ....................................................................................... 4

Wyoming Senate File SF0099 (2024) ............................................................. 4

iv

## INTRODUCTION AND SUMMARY OF ARGUMENT[1]

In *United States v. Skrmetti*, the Supreme Court upheld a ban on administering sex-change interventions, including cross-sex hormones, to minors after concluding that the law was a "medical use" classification "subject to only rational basis review." 605 U.S. 495, 511 (2025); *see also Eknes-Tucker v. Governor of Alabama*, 80 F.4th 1205 (11th Cir. 2023), *reh'g denied* 114 F.4th 1241 (11th Cir. 2024) (en banc). This case is about whether, notwithstanding *Skrmetti* and *Eknes-Tucker*, the Cruel and Unusual Punishment Clause prevents the Georgia Legislature from declining to use public funds to facilitate the same sex-change interventions for inmates. The answer is simple: nothing in the Eighth Amendment disables the Legislature from acting on this hotly disputed question of public policy.

Remarkably, Plaintiffs do not even cite *Skrmetti* and *Eknes-Tucker*. But the Eighth Amendment deliberate indifference standard they invoke is, if anything, even more deferential than rational basis review. Thus, medical care only constitutes deliberate indifference when it is "'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020) (cleaned up).

---

[1] Plaintiffs expressly incorporate their preliminary injunction briefing and the evidence they contributed to the preliminary injunction record into their motion for partial summary judgment under the auspices of Rule 65(a)(2). *See* Dkt.71 at 1 n.1. The State Defendants similarly incorporate their preliminary injunction briefing, the evidence provided in support, and the argument offered by counsel at the preliminary injunction hearing into this opposition.

There is nothing conscience-shocking or subjectively reckless about a judgment that public funds should not be spent on unproven sex-change interventions whose evidentiary support has been questioned by multiple systematic reviews of the evidence. SB185 is a direct and reasonable response to the "ongoing debate among medical experts regarding the risks and benefits associated with administering … hormones to treat gender dysphoria, gender identity disorder, and gender incongruence." *Skrmetti*, 605 U.S. at 523; *cf. Wade v. McDade*, 106 F.4th 1251, 1253 (11th Cir. 2024) (en banc).

Plaintiffs' principal counterarguments include demanding deference to an unfalsifiable "expert consensus" among professional groups; noting that SB185 departs from GDC's prior policy on cross-sex hormones; and claiming that the interventions at issue are "medically necessary" for inmates. The Supreme Court rejected versions of all three points in *Skrmetti*, and they fare no better under an even more deferential Eighth Amendment analysis. Indeed, many of the arguments and expert opinions proffered by Plaintiffs here are nearly identical to the arguments and evidence offered, *unsuccessfully*, by the plaintiffs in *Eknes-Tucker* and *Skrmetti*.

At bottom, states have adopted a variety of different policy approaches to questions involving sex-change interventions, and many of those policies (like Georgia's) have evolved over time. SB185 reflects a reasoned policy choice informed by both medical evidence and recent caselaw, and the Constitution does

not give federal courts a "license to decide [the issue differently as they] see best." *Skrmetti*, 605 U.S. at 525.

Because Plaintiffs' Eighth Amendment claims fail, they are not entitled to partial summary judgment or a permanent injunction. But even if the Court holds otherwise, it cannot extend injunctive relief to the "requesting" Plaintiffs, who lack standing, or to unnamed absent class members who cannot be included in a permanent injunction under the Prison Litigation Reform Act. *See* Defs. Class Cert. Opp. at 8-10. Thus, at minimum, the Court should limit any relief to the named "receiving" Plaintiffs.

## BACKGROUND

**I.    State legislatures around the country have enacted strict regulations on sex-change interventions, including cross-sex hormones.**

In recent years, the extent to which states should ban, prohibit the use of public funds for, or otherwise regulate sex-change interventions like the provision of cross-sex hormones has been a hotly contested policy question. Faced with "an ongoing debate among medical experts regarding the risks and benefits associated with administering … hormones to treat gender dysphoria, gender identity disorder, and gender incongruence," many states "respond[ed] directly to [the] uncertainty" by banning the interventions outright, at least in certain circumstances, such as for minors. *Skrmetti*, 605 U.S. at 523.

3

The overwhelming trend has been towards stricter regulation. Today, more than twenty states[2] have banned the administration of the hormonal interventions at issue here—estrogen, testosterone, and testosterone blockers, *see* Defs. SUMF ¶¶1-15 (Plaintiffs' desired hormone regimens)—in at least some circumstances. Many states prohibit the use of public funds for sex-change procedures under some or all circumstances.[3] And two have enacted laws explicitly permitting insurance plans to exclude coverage for such interventions.[4]

One key driver of this nationwide shift has been an increasing awareness that the purported benefits of these interventions are unproven and rest on what even proponents concede to be low-quality evidence (such as studies with biased designs, small sample sizes, and potential confounding factors). *See id.* ¶¶44-56 (discussing Baker Systematic Review); *id.* ¶¶57-66 (discussing Cass Review). For example, both Baker and Cass found there was no proven link between cross-sex hormones and a reduced risk of suicide. *Id.* ¶¶55-56, 66.

---

[2] *See, e.g.*, Alabama SB184 (2022), Arkansas HB1570 (2021), Florida CS/SB254 (2023), Georgia SB140 (2023), Iowa Senate File 538 (2023), Idaho HB71 (2023), Indiana SA538 (2023), Kansas SB63 (2025), Kentucky SB150 (2023), Louisiana HB648 (2023), Missouri SB49 (2023), Mississippi HB1125 (2023), North Carolina HB808 (2023), New Hampshire HB377 (2025), North Dakota HB1254 (2023), Ohio HB68 (2024), Oklahoma SB613 (2023), South Carolina HB4624 (2024), South Dakota HB1080 (2023), Tennessee SB1 (2023), Texas SB14 (2023), and Wyoming Senate File SF0099 (2024).

[3] *See, e.g.*, Arkansas HB1570, Florida CS/SB254, Kansas SB63, Missouri SB49, Mississippi HB1125, North Carolina HB808, Ohio HB68, South Carolina HB4624, and Texas SB14.

[4] *See* Arkansas HB1570 and Mississippi HB1125.

**II.    The Eleventh Circuit and the Supreme Court have upheld state regulations of sex-change interventions under rational basis review.**

The shift towards greater state involvement in regulating sex-change interventions unsurprisingly spurred legal challenges, with plaintiffs seeking to impose by constitutional law what they could not achieve as a matter of policy.

The Eleventh Circuit rejected two such claims (under the Equal Protection Clause and the Due Process Clause) in *Eknes-Tucker*, 80 F.4th at 1205. There, plaintiffs challenged a law that made it a crime to "'engage in or cause' the prescription or administration of puberty blocking medication or cross-sex hormone treatment to a minor 'for the purpose of attempting to alter the appearance of or affirm the minor's perception of his or her gender or sex, if that appearance or perception is inconsistent with the minor's sex.'" *Id.* at 1210.

Reversing a preliminary injunction, the Court explained that because the challenged law did not classify based on "sex, gender nonconformity, [or] transgender status," it was subject to rational basis review—a deferential standard the law was "exceedingly likely to satisfy." *Id.* at 1230. The Eleventh Circuit declined to revisit the case en banc, with Judge Lagoa concurring in the denial of rehearing to reiterate that "'when a legislature undertakes to act in areas fraught with medical and scientific uncertainties, legislative options must be especially broad and courts should be cautious not to rewrite legislation.'" *Eknes-Tucker*, 114 F.4th at 1248 (Lagoa, J., concurring).

5

The Supreme Court took the same approach in *Skrmetti*, a landmark case that rejected an Equal Protection challenge to a similar Tennessee law called SB1. 605 U.S. at 495. As in *Eknes-Tucker*, the Court held that SB1 was subject to rational basis review because it "classifie[d] on the basis of medical use." *Id.* at 511, 522. In other words, providers could "administer … hormones to minors to treat certain conditions but not to treat gender dysphoria, gender identity disorder, or gender incongruence." *Id*. at 511. Medical use classifications are "subject to only rational basis review." *Id.*; *see also Vacco v. Quill*, 521 U.S. 793, 799-808 (1997).

The Court further held that SB1 was "clearly" constitutional under that standard. *Skrmetti*, 605 U.S. at 495. State legislatures have especially "'wide discretion to pass legislation'" regulating sex-change interventions because the underlying topic is a subject of "'medical and scientific uncertainty.'" *Id.* at 524. The Court refused to disturb Tennessee's conclusion that there was an "ongoing debate" regarding the risks and benefits of "administering … hormones to treat gender dysphoria, gender identity disorder, and gender incongruence." *Id.* at 523-24.

Notably, the Court ruled for Tennessee notwithstanding the plaintiffs' (and dissenting Justices') assertions that hormonal interventions are medically necessary for their recipients and are endorsed by various professional associations. *See, e.g.*, *id.* at 582 (Sotomayor, J., dissenting) (arguing that Court should defer to the views of medical associations that hormones are "'appropriate and medically necessary' to

6

treat gender dysphoria when clinically indicated"); *compare* Defs. SUMF ¶77 (same from Plaintiffs' retained expert in this case), ¶78 (same from the plaintiffs' retained expert in *Eknes-Tucker*).

**III.    The Georgia Legislature enacted SB185 to prohibit public funding for facilitating unproven sex-change interventions in prisons.**

On May 8, 2025, Governor Kemp signed SB185, which amended the Georgia Code to prohibit the use of "state funds or resources" for a range of sex-change procedures in prison, including "[h]ormone replacement therapies." O.C.G.A. §42-5-2(e)(1)(B); Defs. SUMF ¶87. Like SB1, SB185 "classifies on the basis of medical use." *Skrmetti*, 605 U.S. at 511. The law contains exceptions for "medical conditions where such treatments are considered medically necessary, provided that such condition is not gender dysphoria or the purpose of such treatment is not for sex reassignment"; "individuals born with a medically verifiable disorder of sex development,"; "individuals with partial androgen insensitivity syndrome"; and hormonal interventions provided "solely for the purpose of transitioning [existing recipients] off such therapy." O.C.G.A. §42-5-2(e)(2). GDC began planning its implementation of the new law in June and started tapering inmates from hormones in early July. *See* Defs. SUMF ¶¶31, 89.

On August 8, three months after SB185 took effect and a month after GDC began tapering down the doses of inmates who had been receiving hormones, Plaintiffs filed this lawsuit. *Id.* ¶¶87-88. The complaint named five plaintiffs:

Yohansan Jovan Stewart, Sylvester Horton, Terrell Montiel Madison, Brynn Wilson, and John Doe. Horton, Wilson, and Doe had been receiving hormones before SB185 became law and were being tapered off those hormones. *See id.* ¶¶1-15. Stewart and Madison claimed to be seeking (but hadn't received) something similar. *Id.* ¶¶16-21.

On September 4, the Court issued a preliminary injunction against SB185 with respect to its ban on state funding for cross-sex hormones. Dkt.50. The State Defendants appealed the preliminary injunction and sought a stay from the Eleventh Circuit, but that motion remains pending. Under the PLRA, the Court's preliminary injunction will expire by operation of law on December 3.

## LEGAL STANDARDS

### I.   Cross-motions for summary judgment.

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" if its bears on "a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). And a fact dispute is "genuine" if the contested evidence would allow a rational factfinder to decide for the nonmoving party. *Hydro Sys., Inc. v. Factory Automation Sys.*, 771 F. Supp. 3d 1342, 1351 (N.D. Ga. 2025). When "the

record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine dispute." *Id.* at 1352.

When both parties move for summary judgment, the Court decides "'whether either of the parties deserves judgment as a matter of law on the facts that are not disputed.'" *Id.* Here, the parties agree that the preliminary injunction record will serve as the partial summary judgment record but disagree on both the governing law and the application of that law to the facts. *See* Dkt.69.

## II.     Permanent injunctions and the Prison Litigation Reform Act.

To justify injunctive relief, the moving party must show "that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc). "For a permanent injunction, the standard is essentially the same, except that the movant must establish actual success on the merits, as opposed to a likelihood of success." *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1268 (11th Cir. 2006); *see also W. Virginia by & through Morrisey v. U.S. Dep't of the Treasury*, 59 F.4th 1124, 1148 (11th Cir. 2023).

In addition, the PLRA establishes "standards for the entry and termination of prospective relief in civil actions challenging prison conditions." *Miller v. French*,

530 U.S. 327, 331 (2000). Prospective relief must "extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. §3626(a)(1)(A). And courts must make a mandatory "need-narrowness-intrusiveness" finding that any injunction "is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1278 (11th Cir. 2020).

## ARGUMENT

**I.      SB185 is "clearly" constitutional under *Skrmetti* and *Eknes-Tucker*.**

*Skrmetti* confirms that even outright bans on sex-change interventions "are subject to only rational basis review." 605 U.S. at 511. On top of that already-deferential standard, state legislatures have especially "'wide discretion to pass legislation'" regulating cross-sex hormones because the subject-matter is an area of "'medical and scientific uncertainty.'" *Id.* at 524. Legislative judgments in this area "carr[y] with [them] the weight of fierce scientific and policy debates about the safety, efficacy, and propriety of medical treatments in an evolving field" and are thus entitled to substantial deference. *Id.* at 525. The Constitution "does not resolve these disagreements" or "afford [courts a] license to decide them as [they] see best." *Id.* Instead, it leaves them "to the people, their elected representatives, and the democratic process." *Id.*; *see also Eknes-Tucker*, 80 F.4th at 1205.

The Georgia Legislature's decision to prohibit public funding for cross-sex hormonal interventions in the correctional system is "clearly" constitutional. *Skrmetti*, 605 U.S. at 522. Like Tennessee's SB1, Georgia's SB185 responds to "an ongoing debate among medical experts regarding the risks and benefits associated with administering … hormones to treat gender dysphoria, gender identity disorder, and gender incongruence." *Id.* at 523. Several recent systematic reviews have highlighted weaknesses in the underlying evidence base for cross-sex hormonal interventions and have found the benefits of such interventions to be overstated or unproven. *See* Defs. SUMF ¶¶39-66.

Like Tennessee, Georgia has "respond[ed] directly to that uncertainty" by enacting stricter regulations on a class of controversial and unproven interventions. *Skrmetti*, 605 at 523. Thus, like the Supreme Court in *Skrmetti*, this Court should "decline the plaintiffs' invitation to second-guess" SB185 based on claims by Plaintiffs and their retained experts that the interventions at issue are "medically necessary" and endorsed by various professional organizations. *Id.* at 524; *cf. id.* at 582-84 (Sotomayor, J., dissenting). Because SB1 was "clearly" constitutional, so is SB185. *Id.* at 522.

Plaintiffs do not cite *Skrmetti* and *Eknes-Tucker* at all. This Court also found them to be of limited import because they dealt with minors and "involved issues of constitutional interpretation that did not rely on factual determinations about the

11

medical standard of care," Dkt.50 at 12 n.2, 38. But those distinctions undersell the Supreme Court's and Eleventh Circuit's reasoning and holdings.

The fact that *Skrmetti* and *Eknes-Tucker* involved minors is irrelevant because the Court's review would have been just as deferential if the challenged law had applied to adults. *See Skrmetti*, 605 U.S. at 511 ("Classifications that turn on age or medical use are subject to only rational basis review."). And the fact that those decisions applied rational basis review only underscores that the deliberate indifference standard gives even *greater* deference to state legislatures and prison officials because it requires subjective recklessness too. *See Wade*, 106 F.4th at 1253. For example, "a simple difference in medical opinion" between a state official and an inmate about the "latter's diagnosis or course of treatment fails to support a claim of cruel and unusual punishment," even if most physicians would say that the inmate had the better argument. *Hoffer*, 973 F.3d at 1273 (cleaned up).

Ruling for Plaintiffs here notwithstanding *Skrmetti* and *Eknes-Tucker* would lead to absurd results. In Georgia today, a physician who prescribes cross-sex hormones to a minor violates state law and could lose his or her license. O.C.G.A. §43-34-15. Yet Plaintiffs argue that, inside the correctional system, the same interventions are so far beyond dispute that the Eighth Amendment mandates that they be provided to inmates at taxpayer expense. The notion that Georgia must publicly fund controversial interventions in the correctional system even while it has

12

banned those interventions in other circumstances (such as for minors) "cannot possibly be the law." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1278 (11th Cir. 2020).

## II.    SB185's prohibition on using taxpayer funds for cross-sex hormones does not violate the Eighth Amendment.

Plaintiffs ignore *Skrmetti* and *Eknes-Tucker* and focus solely on Eighth Amendment deliberate indifference cases. But the deliberate indifference standard gives at least as much deference to state legislatures as rational basis review (and likely even more). And especially given the *reasoning* of *Skrmetti* and *Eknes-Tucker*, Plaintiffs cannot show that the policy choices reflected in SB185 are conscience-shocking, subjectively reckless, or an unreasonable response to medical risks.

### A. The deliberate indifference standard gives state officials even greater deference than rational basis review.

Rational basis is a "'relatively relaxed standard'" under which courts defer to legislative judgments if there is a "'reasonably conceivable state of facts that could provide a rational basis for'" the lines a statute draws. *Skrmetti*, 605 U.S. at 522. The deliberate indifference standard is, if anything, even *more deferential*, which means SB185 "clearly" does not violate the Eighth Amendment either. *Id.*

Start from the baseline: "'Medical treatment violates the Eighth Amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Hoffer*, 973 F.3d at 1271

13

(cleaned up). This means an inmate's treatment need not be "perfect, the best obtainable, or even very good." *Id.* It also means that "a simple difference in medical opinion" between state officials and an inmate about the "latter's diagnosis or course of treatment fails to support a claim of cruel and unusual punishment." *Id.* at 1273 (cleaned up). To sum up, if the adequacy of an inmate's care is "the subject of genuine, good-faith disagreement between healthcare professionals," there is no claim for deliberate indifference. *Id.*

Applying these principles, the State Defendants' implementation of SB185 was not deliberate indifference. Far from being conscience-shocking, SB185 is a rational response to a contested policy question. Prohibiting the use of public funds for a controversial set of interventions—the purported benefits of which are unproven and rest on what even proponents concede to be low-quality evidence, *see* Defendants SUMF ¶¶44-66—is a quintessentially permissible legislative choice. The Eighth Amendment does not allow an inmate to second-guess that choice based on "a simple difference in medical opinion" or a demand for a different course of treatment. *Keohane*, 952 F.3d at 1266; *Hoffer*, 973 F.3d at 1273.

At most, Plaintiffs and their retained experts have articulated a "genuine, good-faith disagreement" with the Legislature and GDC as to whether public funding for cross-sex hormones is appropriate. *Hoffer*, 973 F.3d at 1273. This disagreement is based on a differing view of the "ongoing debate among medical

14

experts regarding the risks and benefits associated with administering … hormones to treat gender dysphoria, gender identity disorder, and gender incongruence" that the Supreme Court acknowledged in *Skrmetti*, 605 U.S. at 523. For the same reasons the "so-called expert consensus," *id.* at 530 (Thomas, J., concurring), failed to override SB1's democratically enacted policy judgment in *Skrmetti*, Plaintiffs cannot override SB185's similar judgment about the propriety of funding sex-change interventions in prisons.

Plaintiffs argue that SB185 violates the Constitution because it prevents inmates from receiving interventions that Plaintiffs' experts (parroting WPATH standards) assert are "medically necessary." *See, e.g.*, Dkt.71 at 6-7; Plaintiffs' SUMF ¶¶5-6, 8-9; Dkt.11-1 ¶¶65-66 (citing WPATH publications for the proposition that cross-sex hormones are "a medically necessary intervention" and "medically necessary treatment"); Defs. SUMF ¶¶69-85.

But the plaintiffs (and dissenting Justices) made those same arguments, *unsuccessfully*, in *Skrmetti*. *See* 605 U.S. at 582-83 (Sotomayor, J., dissenting) (arguing that Court should defer to the views of medical associations that hormones are "'appropriate and medically necessary' to treat gender dysphoria when clinically indicated"); Br. of Respondents L.W., et al. at 42-43, *United States v. Skrmetti*, No. 23-477 (U.S. Aug. 27, 2024) (arguing that SB1 is unconstitutional because it bans

15

interventions that are "medically necessary").[5] The Supreme Court majority "decline[d] … to second-guess" SB1. *Skrmetti*, 605 U.S. at 524. SB185 deserves at least the same level of deference.

That GDC once provided the interventions Plaintiffs demand under its former policies does not make the Legislature's decision to *supersede* those policies conscience-shocking or intolerable to fundamental fairness. There is nothing unusual about a state changing its policies or priorities over time, especially as legislators are exposed to new information about the risks and benefits of a particular intervention. *See, e.g., id.* at 504; Defs. SUMF ¶¶ 39-66 (discussing several systematic reviews critiquing WPATH's methodology and the underlying evidence base for the interventions at issue).

Indeed, in 2023, the Georgia Legislature enacted a law (SB140) banning cross-sex hormonal interventions or surgeries for minors, over objections from opponents that it was banning "established and medically necessary" healthcare. *See* Dkt.1 ¶1 *Koe v. Noggle*, No. 23-cv-2904 (N.D. Ga. June 29, 2023). This was unquestionably a *change* of policy; hormonal interventions that had been offered to minors before 2023 could now result in a doctor losing his or her license. But

---

[5] In the Sixth Circuit, Judge White likewise argued in dissent that SB1 was unconstitutional because it banned interventions "well accepted" by "WPATH and the Endocrine Society" and "'major medical and mental health groups.'" *L.W. by and through Williams v. Skrmetti*, 83 F.4th 460, 506 (6th Cir. 2023) (White, J., dissenting). Plaintiffs' experts here rely on near-identical reasoning. *See, e.g.*, Defs. Resp. to Plaintiffs' SUMF ¶¶4-5, 8-9, 26.

*Skrmetti* and *Eknes-Tucker* make clear that such choices are in the heartland of state legislative authority. SB140 is in force today, and SB185 should be as well.

At bottom, Plaintiffs' suggestion that any change in policy is evidence of deliberate indifference would short-circuit legislative policymaking in an area "fraught with medical and scientific uncertainties,'" precisely where the Supreme Court and Eleventh Circuit have most clearly stressed the primacy of state legislatures and the limited role of federal courts. *See Eknes-Tucker*, 114 F.4th at 1248 (Lagoa, J., concurring); *Skrmetti*, 605 U.S. at 524.

Plaintiffs' approach to the Eighth Amendment would also subject the correctional system to a one-way constitutional ratchet. Any time a prison official approves a medical intervention, it would become a fixed Eighth Amendment right that the Legislature must permanently subsidize at taxpayer expense, even if further study and investigation questions the propriety of providing it. That one-way ratchet is not a reasonable construction of the Eighth Amendment, is not what any deliberate indifference test requires, and is anathema to *Skrmetti* and *Eknes-Tucker*'s teachings about the need for deference to state legislatures in this area.

**B. Neither the State Defendants nor the Legislature acted with subjective recklessness.**

In addition to conscience-shocking treatment, deliberate indifference requires that state officials act with "'subjective recklessness as used in the criminal law,'" which means they must have "actually [known] that [their] conduct—[their] own

17

acts or omissions—put the plaintiff at substantial risk of serious harm." *Wade*, 106 F.4th at 1253.

At the ground level, the State Defendants' implementation of SB185 was not subjectively reckless. GDC officials and their contractors ensured that inmates who were receiving hormones before SB185 received regular medical follow-ups throughout the tapering process. *E.g.*, Defs. SUMF ¶¶1-15. And GDC's Statewide Mental Health Director explained that all inmates, including Plaintiffs, have access to the "full range of mental health services at a facility … as clinically appropriate," including "counseling, support from a psychologist, support from a psychiatrist, psychotropic medication as appropriate, … specialized housing units and programs," "[c]risis stabilization and increased counseling for suicide prevention." *Id.* ¶¶23-25. All told, nothing suggests that the State Defendants "ignored" inmates' gender dysphoria. *See* Dkt.71 at 10-12. Rather, the State Defendants worked diligently to treat Plaintiffs within the framework the Legislature reasonably adopted in SB185.

At a higher level of generality, the Legislature did not act with subjective recklessness, either. The Supreme Court has acknowledged an "ongoing debate" on the relative risks and benefits of using "hormones to treat gender dysphoria, gender identity disorder, and gender incongruence." *Skrmetti*, 605 U.S. at 523. A substantial number of states have laws on the books outright banning these interventions in

certain circumstances; some have explicitly defunded them; and a few have permitted insurers to deny coverage for them to private parties. *See supra* nn.2-4.

Multiple recent systematic reviews have also questioned the evidentiary base underlying cross-sex hormones. *See* Defs. SUMF ¶¶44-66. Those studies found that many of the claimed benefits of such interventions (such as reductions in anxiety, depression, or suicide risk) were unproven or overstated, and that many of the studies cited by proponents had biased designs, small sample sizes, potential confounding factors, and other flaws. *See id.*

On this record, it would be remarkable to hold that sex-change hormonal interventions are so indispensable to treating inmates, and the failure to provide them is so obviously reckless, that SB185 rises to the level of Cruel and Unusual Punishment.

### C. The State Defendants' implementation of SB185 was a reasonable response to the risks posed by Plaintiffs' gender dysphoria.

Finally, even if a state official "'actually knew of a substantial risk to inmate health or safety,' he cannot be found liable … if he 'responded reasonably to [the] risk." *Wade*, 106 F.4th at 1253. This element, like the conscience-shocking first prong, is at least as deferential as rational basis review.

After SB185 was passed but before the preliminary injunction was issued, the State Defendants' implementation of SB185 was entirely reasonable. Drs. Wynne and Owen ensured that inmates undergoing tapering had access to all necessary

medical and mental health care and would continue to receive treatment for gender dysphoria and any related complications. *See* Defs. SUMF ¶¶22-38. But Plaintiffs do not want that care. They want more: cross-sex hormones. When an inmate's "complaint isn't that [prison officials are] providing *no* care, just that [they aren't] providing the more aggressive—[or] better—care that [the inmate] desire[s]," there is no claim for deliberate indifference. *Hoffer*, 973 F.3d at 1272.

Plaintiffs and their experts assert that the State Defendants engaged in conscience-shocking Eighth Amendment violations because providing inmates counseling and mental health treatment without cross-sex hormones is per se constitutionally inadequate. *See, e.g.*, Dkt.71 at 14; Plaintiffs' SUMF ¶¶6, 35; Dkt.11-1 ¶¶95-97.

At the outset, the notion that providing cross-sex hormones will improve mental health is unproven and speculative. The Baker Review specifically addressed claims that cross-sex hormones reduce anxiety and depression and found the quality of evidence in support of such claims to be "low due to concerns about study designs, small sample sizes, and confounding." Defs. SUMF ¶¶49-50. Both the Baker Review and the Cass Review also found no reliable evidence that cross-sex hormonal interventions reduce the risk of suicide. Defs. SUMF ¶55 (Baker concluding that "[i]t was impossible to draw conclusions about the effect of hormone therapy on

death by suicide"), ¶66 (Cass concluding there "is no evidence that gender-affirming treatments reduce" suicide).

In all events, harms that Plaintiffs have claimed may arise from implementing SB185 are explicitly focused on mental health concerns. *See* Dkt.71 at 7 (anxiety, depression), 14 (mental decompensation, depression, anxiety). Defendants have addressed those concerns head-on by ensuring that Plaintiffs have "access to mental health resources to address any distress that may result from the implementation of SB 185." Defs. SUMF ¶24; Dkt.25-2 ¶7; *see also* Dkt.25-2 at 9 ((GDC SOP 508.40(IV)(E)(3)). This includes access to the "full range of mental health services at a facility … as clinically appropriate," including "counseling, support from a psychologist, support from a psychiatrist, psychotropic medication as appropriate, and specialized housing units and programs." Defs. SUMF ¶24-25; Dkt.25-2 ¶¶7-8.

To the extent Plaintiffs claim they will suffer from suicidality or suicidal ideation, this is something Defendants take extraordinarily seriously. GDC has elaborate procedures in place regarding "[c]risis stabilization and increased counseling for suicide prevention" as needed. Defs. SUMF ¶¶25; Dkt.25-2 ¶8. GDC has also implemented "policies and procedures to address any concerns of risk of self-harm in the offender population." Defs. SUMF ¶¶28; Dkt.25-2 ¶11; *see also* Dkt.25-2 at 26 (GDC SOP 508.29).

Plaintiffs and their experts do not dispute the quality of these services or the efficaciousness of GDCs policies designed to protect all inmates' health and well-being—they simply assert as *ipse dixit* that they are insufficient because hormones are required. But the Supreme Court rejected this *precise* argument in *Skrmetti* when it deferred to Tennessee's determination that "gender dysphoria 'can be resolved by less invasive approaches'" than cross-sex hormones "'that are likely to result in better outcomes.'" *Skrmetti*, 605 U.S. at 506.

In short, Plaintiffs' desire for "more aggressive" interventions using cross-sex hormones does not mean that the care Plaintiffs' were undisputedly receiving was constitutionally inadequate. *Hoffer*, 973 F.3d at 1272.

## III.    Plaintiffs are not entitled to a permanent injunction.

*Actual success.* To obtain a permanent injunction, Plaintiffs "must establish actual success on the merits." *KH Outdoor, LLC*, 458 F.3d at 1268. Here, Plaintiffs cannot establish actual success because SB185 does not violate the Eighth Amendment. But even if the Court concludes otherwise as to the "receiving" Plaintiffs (Horton, Wilson, and Doe), the "requesting" Plaintiffs (Stewart and Madison) have not demonstrated actual success because they lack a constitutionally ripe claim for prospective relief. As the State Defendants have explained elsewhere, including in their opposition to Plaintiffs' motion for final class certification (being filed simultaneously with this brief), the requesting Plaintiffs cannot show that a

22

permanent injunction against SB185 would actually result in receiving the hormonal interventions they seek. *Berrocal v. Att'y Gen. of United States*, 136 F.4th 1043, 1051-52 (11th Cir. 2025).

***Irreparable harm.*** Plaintiffs assert that they will suffer a range of mental and physical harms absent a permanent injunction. *See* Dkt.71 at 13-14. The State Defendants take those claims, and Plaintiffs' health more generally, very seriously. GDC will continue to ensure that "[t]he full range of mental health services at a facility will be available to offenders with Gender Dysphoria as clinically appropriate." Defs. Resp. to Plaintiffs' SUMF ¶46. And (if permitted), GDC will continue to follow-up with inmates involved in the tapering process to determine whether additional medical services are necessary and appropriate. *E.g.*, *id.* ¶38.

The Courts of Appeals have stayed or vacated injunctions in similar challenges despite assertions that laws regulating cross-sex hormones would impose similar irreparable harms. The Eleventh Circuit vacated the preliminary injunction in *Eknes-Tucker* despite claims of harm from the plaintiffs' experts that are nearly identical to the opinions offered by Plaintiffs' experts here. *See* 80 F.4th 1205; State Defendants' SUMF ¶¶79-80. And the Sixth Circuit stayed the preliminary injunction in *Skrmetti*, pointing to a feature of SB1 that, like SB185's tapering provision, was designed to limit potential harms to the plaintiffs by allowing them to continue hormones for a limited period of time while the law was being implemented. *See L.*

*W. by & through Williams v. Skrmetti*, 73 F.4th 408, 421 (6th Cir. 2023); *see also*

*Doe 1 v. Thornbury*, 75 F.4th 655 (6th Cir. 2023) (denying motion to lift stay of an

injunction against a similar Kentucky law).

As to the State Defendants, a permanent injunction would inflict irreparable

harm by wresting control of Georgia's prison system away from its democratically

elected officials and placing it into the hands of a federal court. Plaintiffs seek

exactly the sort of judicial micromanagement that Congress recognized as pernicious

when it enacted the PLRA with the "overarching goal of reducing judicial

involvement in prison management." *Ga. Advoc. Off. v. Jackson*, 4 F.4th 1200, 1210

(11th Cir. 2021), *vacated as moot*, 33 F.4th 1325 (11th Cir. 2022); *see* Dkt.71 at 19-

20 (requesting that the Court impose an exploding clock on cross-sex hormone

evaluations and require prison officials to provide detailed statistical reports).

***The equities and the public interest.*** When "the government is the party

opposing" a permanent injunction, "its interest and harm merge with the public

interest." *Swain v. Junior*, 958 F.3d 1081, 1091 (11th Cir. 2020). Here, the concrete

harm to the State Defendants and the public far outweighs the speculative harm to

Plaintiffs. Again, Plaintiffs have access to the "full range of mental healthcare

services" at their places of confinement. Defs. SUMF ¶23-25. And GDC maintains

numerous procedures to monitor risks and prevent self-harm. *Id.* ¶¶28-30. At bottom,

24

Plaintiffs' arguments on the equities and the public interest boil down to a claim SB185 is unconstitutional that the State Defendants have already shown is wrong.

## CONCLUSION

For the above reasons, and those set forth in the State Defendants' motion for partial summary judgment and preliminary injunction briefing, the Court should deny Plaintiffs' motion and enter partial summary judgment for the State Defendants. *See* Dkt.72. If the Court is inclined to grant partial summary judgment to Plaintiffs, the State Defendants request that the Court make its order, including any underlying class certification decision, final under Rule 54(b). There is "no just reason to delay" appellate review of the entirety of Plaintiffs' class-wide challenge to SB185's cross-sex hormones provisions, which presents a concrete and important legal issue for resolution by the Eleventh Circuit. Fed. R. Civ. P. 54(b).

The State Defendants also respectfully request that the Court stay any permanent injunction pending appeal. *See* Fed. R. App. P. 8(a)(1). The State Defendants have made the requisite "strong showing that [they are] likely to succeed on the merits" before the Eleventh Circuit. *Nken v. Holder*, 556 U.S. 418, 426 (2009). Declining to issue a stay would inflict irreparable harm by preventing GDC from implementing a presumptively constitutional statute that will likely be upheld on appeal. *See Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers).

Dated: November 17, 2025

Christopher M. Carr
  *Attorney General*
  Georgia Bar No. 112505
Stephen J. Petrany
  *Solicitor General*
  Georgia Bar No. 718981
Georgia Department of Law
40 Capitol Square SW
Atlanta, Georgia, 30334
404-458-3408
spetrany@law.ga.gov

*Attorneys for Defendants Tyrone Oliver, Randy Sauls, and Dr. Marlah Mardis*

Respectfully submitted,

*/s/ Jeffrey M. Harris\**
Rachael C. T. Wyrick*
Julius Kairey*
Zachary P. Grouev*
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
jeff@consovoymccarthy.com
rachael@consovoymccarthy.com
julius@consovoymccarthy.com
zach@consovoymccarthy.com

*\*pro hac vice*

*Special Assistant Attorneys General and Attorneys for Defendants Tyrone Oliver, Randy Sauls, and Dr. Marlah Mardis*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing opposition conforms to the requirements of L.R. 5.1C and this Court's subsequent orders. The brief is prepared in 14-point Times New Roman font.

*/s/ Jeffrey M. Harris*

## CERTIFICATE OF SERVICE

I certify that on November 17, 2025, I electronically filed the foregoing with the Clerk of the Court using the Court's ECF system, which will automatically send email notification to all counsel of record.

/s/ *Jeffrey M. Harris*

28