# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| ISIS BENJAMIN, et al. | |
| Plaintiffs, | |
| v. | Civ. Case No. 1:25-cv-04470-VMC |
| COMMISSIONER TYRONE OLIVER, et al., | **CLASS ACTION** |
| Defendants. | |

## PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT AND A PERMANENT INJUNCTION

**TABLE OF CONTENTS**

Table of Authorities ............................................................................................... ii

Introduction ........................................................................................................... 1

Argument ............................................................................................................... 2

I.  Plaintiffs are entitled to partial summary judgment. ........................................... 2

    A.  The uncontroverted record evidence confirms Defendants' blanket ban on hormone therapy violates the Eighth Amendment. ............................. 2

    B.  Defendants cannot justify SB185 using a fictitious legislative record and a fictitious medical controversy ............................................................. 6

    C.  Defendants' legal arguments fail because *Estelle v. Gamble* controls, not *Skrmetti* and *Eknes-Tucker*. ................................................................. 10

II.  Plaintiffs are entitled to a permanent or, in the alternative, preliminary injunction under the PLRA. ................................................................................. 12

Conclusion ............................................................................................................. 15

## TABLE OF AUTHORITIES

**Cases**

*Ancata v. Prison Health Servs., Inc.*,
    769 F.2d 700 (11th Cir. 1985) ........................................................................1, 3, 5

*Chandler v. Janssen Pharma., Inc.*,
    322 F. Supp. 3d 314 (E.D.N.Y. 2018) ................................................................. 8

*Colwell v. Bannister*,
    763 F.3d 1060 (9th Cir. 2014) ..............................................................................6

*Eknes-Tucker v. Governor of Alabama*,
    80 F.4th 1205 (11th Cir. 2023) ......................................................1, 2, 10, 11, 12

*E.N. v. Kehoe*,
    No. SC100933 (Mo. Jan. 16, 2025)....................................................................12

*Estelle v. Gamble*,
    429 U.S. 97 (1976).............................................................................1, 5, 10, 15

*Noe v. Parson*,
    No. 23AC-CC04530, (Mo. Cir. Ct. Nov. 25, 2024) ..........................................12

*Ga. Advoc. Off. v. Jackson*,
    4 F.4th 1200 (11th Cir. 2021), *vacated* 33 F.4th 1325 (11th Cir. 2022) ............13

*Hardin v. Hayes*,
    52 F.3d 934 (11th Cir. 1995) ..............................................................................10

*Johnson v. California*,
    543 U.S. 499 (2005)........................................................................................ 11

*Jones v. Am. Cynamid Co.*,
    139 F.3d 890 (4th Cir. 1998) ................................................................................8

*Keohane v. Fla. Dep't of Corr. Sec'y*,
    952 F.3d 1257 (11th Cir. 2020) ...................................................................4, 6, 13

*KH Outdoor, LLC v. City of Trussville*,
   458 F.3d 1261 (11th Cir. 2006) ...................................................................13

*Kothmann v. Rosario*,
   558 F. App'x 907 (11th Cir. 2014)..............................................................5, 6

*Melendez v. Sec'y, Fla. Dep't of Corr.*,
   No. 21-13455, 2022 WL 1124753 (11th Cir. Apr. 15, 2022)...........................13

*Nken v. Holder*,
   556 U.S. 418 (2009)......................................................................................15

*Petties v. Carter*,
   836 F.3d 722 (7th Cir. 2016) .......................................................................10

*Robinson v. Labrador*,
   Case No. 1:24-cv-00306, 2025 WL 2494534 (D. Idaho Aug. 29, 2025)...........13

*Scott v. Roberts,*
   612 F.3d 1279 (11th Cir. 2010) ....................................................................14

*Simmons v. Augusta Aviation, Inc.*,
   596 F. Supp. 3d 1363 (S.D. Ga. 2022) ...........................................................8

*Small v. Amgen, Inc.*,
   723 F. App'x 722 (11th Cir. 2018)...................................................................8

*United States v. Sec'y, Fla. Dep't of Corrs.*,
   778 F.3d 1223 (11th Cir. 2015) .................................................................... 13

*United States v. Skrmetti*,
   605 U.S. 495 (2025)..........................................................................1, 2, 10, 11

*United States v. Smith,*
   918 F.2d 1551 (11th Cir. 1990) ......................................................................8

*Wade v. McDade*,
   106 F.4th 1251 (11th Cir. 2024) (en banc) ......................................................5

*Zantac (Ranitidine) Prod. Liab. Litig.*,
   644 F. Supp. 3d 1075 (S.D. Fla. 2022)..................................................................8

## Constitution, Statues, and Rules

U.S. CONST. amend. VIII ......................................................................*passim*

Fed. R. Evid. 702(d)............................................................................................8

18 U.S.C. § 3626(a)(2).........................................................................................13

## INTRODUCTION

Plaintiffs are entitled to Partial Summary Judgment because the undisputed evidence shows that Defendants violated settled Eighth Amendment law when they implemented a blanket hormone therapy ban against Plaintiffs and Class Members.[1] Specifically, Defendants "intentionally interfer[ed] with [medical] treatment once prescribed," *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), "fail[ed] to provide service acknowledged to be necessary," *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985), and "refused to take the steps to see that [patients are] properly evaluated." *Id.* What's more, Defendants did this all while knowing that it would jeopardize the health and well-being of patients. *See, e.g.,* Doc. 11-16 at 2.

Despite being cited by Defendants more than sixty times, neither *United States v. Skrmetti*, 605 U.S. 495 (2025), nor *Eknes-Tucker v. Governor of Alabama*, 80 F.4th 1205 (11th Cir. 2023), answer the constitutional question this case poses. In fact, they say nothing about it. *Skrmetti* and *Eknes-Tucker* did not even *mention*— let alone *overrule*—the Eighth Amendment deliberate indifference standard required by *Estelle* and its progeny. *Skrmetti* and *Eknes-Tucker* did not conclude that states

---

[1] Unless otherwise noted, this brief uses capitalized terms as defined in Plaintiffs' prior briefings. *See* Docs. 2, 3, 37, and 38. Additionally, quotations, citations, and alterations original to legal and record citations are omitted, and alterations and emphasis within this brief are added. Finally, "Pls.' 56.1 Reply" refers to Plaintiffs' Reply to the State Defendants' Response to Plaintiffs' L.R. 56.1 Statement of Undisputed Material Facts, filed herewith.

can permissibly deny hormone therapy to adults with gender dysphoria, regardless of medical need. Neither *Skrmetti* nor *Eknes-Tucker* identified any controversy about the provision of hormone therapy to adults—nor have Defendants, for that matter. *See* Sec. I.B, *infra*.

Because Plaintiffs have demonstrated there is no genuine dispute about any actually material fact, the Court should grant Plaintiffs' Motion for Partial Summary Judgment and Permanent Injunction and enjoin Defendants from enforcing SB185's blanket ban on hormone therapy. In the alternative, the Court should enter a second preliminary injunction to block Defendants from resuming enforcement of SB185's hormone therapy ban in early December.

## ARGUMENT

### I.   Plaintiffs are entitled to partial summary judgment.

#### A.   The uncontroverted record evidence confirms Defendants' blanket ban on hormone therapy violates the Eighth Amendment.

Plaintiffs are entitled to partial summary judgment based on the undisputed *material* facts. The uncontroverted factual record establishes (among others) three key facts.[2] *First*, gender dysphoria is a serious medical need requiring individualized medical treatment. *See, e.g.*, Pls.' 56.1 Reply ¶¶ 1, 11; Doc. 11-10 (§§ IV.A.6, C–D). *Second*, Defendants are denying Plaintiffs and Receiving Class Members hormone

---

[2] Because Plaintiffs' 56.1 Reply evidences the lack of material factual disputes between the Parties, Plaintiffs cite it liberally here.

therapy determined to be "medically necessary" treatment for their gender dysphoria, based on their "documented medical need[s]." Pls.' 56.1 Reply ¶¶ 18, 38, 40–42; Doc. 11-11 (§§ IV.K.4–8).[3] *Third*, Defendants are denying treatment evaluations to members of the Requesting Class, and refusing to ensure their gender dysphoria is "properly evaluated." *Ancata*, 769 F.2d at 704. *See, e.g.*, Pls.' 56.1 Reply ¶¶ 37, 39, 41–42; Wynne Decl. (Doc. 28-1) ¶¶ 8, 10; Benjamin Decl. (Doc. 11-3) ¶¶ 12–24; Madison Decl. (Doc. 11-5) ¶¶ 7–13, 17. "Defendants do not dispute" that Plaintiffs have marshaled record evidence—including expert testimony—to support these (and many) other material facts. *See, e.g.*, Doc. 80-1 ¶¶ 1–7; Ettner Decl. (Doc. 11-1) ¶¶ 23–170; Haw Decl. (Doc. 11-2) ¶¶ 11–63; Doc. 11-10 (§§ IV.A.6, C-D); Doc. 11-9 (§§ IV.A–F); Doc. 11-11 (§§ IV.K.4–8); Doc. 11-8 at 2–5. Defendants have not objected to the admissibility of Plaintiffs' experts' testimony, or sought to exclude it as unreliable, under *Daubert* or otherwise. Doc. 69 ¶ 3. Nor do they offer any competing evidence establishing a different or contrary fact. *Compare id. with* Pls.' 56.1 Reply ¶¶ 1–4, 31, 43.[4] No disputes of material fact thus exist.

---

[3] Defendants do not dispute that Plaintiffs Madison and Benjamin were previously prescribed hormone therapy under GDC policies that required both medical necessity and a "documented medical need." Doc. 11-11 (§§ IV.K.4–8); Benjamin Decl. (Doc. 11-3) ¶¶ 12-14; Madison Decl. (Doc. 11-5) ¶¶ 7-12.

[4] The Baker Review (Doc. 72-2), the Cass Review (Doc. 72-3), and the Report of Dr. Dan Karasic (Doc. 72-4), first docketed when Defendants moved for summary judgment, are not proper summary judgment evidence. The Parties agreed—and the Court ordered—"that the preliminary injunction record will serve as the partial

Importantly, Defendants do *not* claim that they terminated access to hormone therapy because they read or determined (based on the Cass and Baker Reviews, or otherwise) that hormone therapy was *no* longer medically necessary for Plaintiffs and Class Members, or that its benefits were "speculative" or "uncertain," relative to its risks. In fact, they acknowledge the decision was not driven by any independent medical judgment *at all*, just SB185's blanket ban. Pls.' 56.1 Reply ¶¶ 25, 28–31, 38–40; Wynne Decl. (Doc. 28-1) ¶¶ 4–5. Nor have Defendants proffered *any* evidence that they were actually ignorant of the risk the hormone ban posed to the Classes. Pls.' 56.1 Reply ¶¶ 10-15, 25–26, 31, 35–46. Indeed, a volume of evidence speaks to the contrary, including Defendants' text messages, emails, and the professed need for triage services to address the "distress" it caused. *See* Owen Decl. (Doc. 25-2) ¶¶ 7–16; Wynne Decl. (Doc. 28-1) ¶¶ 4–11; Doc. 11-16; Doc. 11-21 at 5–8. Defendants' actions are thus "the very definition of deliberate indifference." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1267 (11th Cir. 2020).

Still, Defendants assert that they implemented SB185 "reasonably." Doc. 80 at 24. There is, however, no *reasonable* way to implement a policy whose enforcement is unconstitutional. There is no *reasonable* way to implement a blanket

---

summary judgment record," Doc. 80 at 14, and that "[n]o party will submit *additional* evidence." Doc. 69 ¶ 3; Order of Nov. 4, 2025 (approving same). None of these reports were submitted as preliminary injunction evidence; Defendants "offer[ed] only a citation" to—and their lay interpretation of—them. Doc. 50 at 40.

treatment ban that "prevent[s] an inmate from receiving recommended treatment,"
or that "denie[s] [them] access to medical personnel capable of evaluating the need
for treatment." *Ancata*, 769 F.2d at 704. Such conduct plainly "constitutes the
unnecessary and wanton infliction of pain proscribed by the Eighth Amendment."
*Estelle*, 429 U.S. at 104;[5] *accord* Doc. 3 at 12–14, 17–20 (collecting cases).

Defendants do not even attempt to dispute the fact that "counseling" and
"psychotropic medication" are not a substitute for hormone therapy, nor are they
treatment for the anxiety and depression that accompanies untreated gender
dysphoria. Pls.' 56.1 Reply ¶¶ 6–7, 46; Ettner Decl. (Doc. 11-1) ¶¶ 95–97, 140, 169.
Nor could Defendants dispute this point. "[A]ccess to mental health resources to
address any distress that may result from" *withdrawing* necessary gender dysphoria
treatment, Doc. 80 at 26, is plainly *not* gender dysphoria treatment. And in *Kothmann
v. Rosario*, 558 F. App'x 907, 910 (11th Cir. 2014), the Eleventh Circuit held that
providing "anti-anxiety and anti-depression medications, mental health counseling,
and psychotherapy treatments" to a gender dysphoria patient in lieu of hormone
therapy violated clearly established Eighth Amendment law, as pled.

Otherwise put, Defendants' claim that "Drs. Wynne and Owen ensured that

---

[5] Moreover, the correct question is whether Defendants "responded reasonably to the risk" posed by *gender dysphoria*, not whether they "reasonably" implemented SB185's hormone therapy ban. *Wade v. McDade*, 106 F.4th 1251, 1253 (11th Cir. 2024) (en banc).

inmates . . . had access to all *necessary* medical and mental health care and *would continue to receive treatment for gender dysphoria* and any related complications" has *no* support. Doc. 80 at 24–25. Nor does their self-serving argument that they were not subjectively reckless. *Id.* at 22–24. Plaintiffs prevail on the merits instead. *Colwell v. Bannister*, 763 F.3d 1060, 1068 (9th Cir. 2014) (denying treatment "solely because of an administrative policy" is "the very definition of deliberate indifference"); *accord Keohane*, 952 F.3d at 1266–67; *Kothmann*, 558 F. App'x at 910.

## B.    Defendants cannot justify SB185 using a fictitious legislative record and a fictitious medical controversy.

Confronted with the inescapable conclusion that their "shoulder-shrugging refusal even to consider whether a particular course of treatment is appropriate is the *very definition of* 'deliberate indifference'—*anti-medicine*, if you will," *Keohane*, 952 F.3d at 1267, Defendants attempt to justify their hormone therapy ban as "a direct and reasonable response" to an "ongoing debate" on the propriety of hormone therapy for adults. Doc. 80 at 7. The only problem is, the purported "debate" that Defendants cite is entirely fictitious. Doc. 79 at 23–24. The undisputed factual record in this case—and Defendants' own sources—establish that hormone therapy for adults is "well-established," "essential," and "medically necessary," in the case of Plaintiffs and Class Members. Pls.' 56.1 Reply ¶ 4; *accord* Doc. 72-2 at 14; Doc. 72-3 at 183; Doc. 11-11 (§§ IV.K.4–8). Further, SB185 only applies to *incarcerated*

6

adults—an inexplicable choice if safety concerns truly motivated SB185's passage.

Undeterred, Defendants state that Eighth Amendment claims cannot be premised on "a simple difference in medical opinion." Doc. 80 at 17. True, but Plaintiffs' claims are *not* based on a difference of medical opinion. As shown below, Defendants have marshaled no actual evidence of *any difference in medical opinion* on hormone treatment for adults. Pls.' 56.1 Reply ¶¶ 4–5, 10–15, 18, 40–42; Doc. 72-2 at 14; Doc. 72-3 at 183. Nor is there a "genuine, good-faith disagreement between healthcare professionals" on this record. Doc. 80 at 19. Defendants' *own* clinicians—including Defendant Mardis—determined that hormone therapy was medically necessary for Plaintiffs and Class Members. *See, e.g.*, Pls.' 56.1 Reply ¶¶ 18, 40-42; Wynne Decl. (Doc. 28-1) ¶ 3; Doc. 11-9 (§ IV.D); Doc. 11-10 (§§ IV.C.3-4; IV.D); Doc. 11-11 (§§ IV.K.8). Therefore, neither Plaintiffs nor the Court are second-guessing the medical judgment of prison healthcare officials— Defendants *are*. And prison healthcare officials and Plaintiffs' experts do not disagree; they are *speaking in unison*. *See, e.g.*, Doc. 50 at 40 ("this is not a case of dueling experts").

> **1.    The Baker and Cass Reviews are not proper summary judgment evidence, and WPATH's acceptance is immaterial.**

Although Defendants heavily cite the Cass and Baker Reviews to critique WPATH and adult hormone therapy itself, they are *not* proper summary judgment evidence. Doc. 69 ¶ 3 ("No party will submit additional evidence"). Among other

problems, "statements and arguments of counsel"—and their lay interpretation of academic sources—"are not evidence." *United States v. Smith*, 918 F.2d 1551, 1562 (11th Cir. 1990). The Cass and Baker Reviews also mean *nothing* without an expert to "explain the link between the stud[ies] and the facts of the case." *Zantac (Ranitidine) Prod. Liab. Litig.*, 644 F. Supp. 3d 1075, 1179 (S.D. Fla. 2022).

Defendants cannot—as they attempt to—interpret scientific terms of art such as "low quality evidence" or "developmental rigor," or authoritatively draw conclusions about their import without the requisite expertise. *See Simmons v. Augusta Aviation, Inc.*, 596 F. Supp. 3d 1363, 1374 (S.D. Ga. 2022) ("[E]xpert testimony is required...to clarify or define terms of art, science, or trade."); Fed. R. Evid. 702(d). Rather, "where a jury is asked to assess complex medical or scientific issues outside the scope of a layperson's knowledge, an expert's testimony is required." *Small v. Amgen, Inc.*, 723 F. App'x 722, 726 (11th Cir. 2018). Accordingly, "citing to an array of medically sophisticated academic journal articles and studies...without offering any accompanying expert testimony to interpret and explain the data" does *not* create issues of fact, as much as Defendants wish it were otherwise. *Jones v. Am. Cynamid Co.*, 139 F.3d 890, at *1 (4th Cir. 1998) (interpreting state law). This is as true for a Court hearing a summary judgment motion as it is for a jury. "Neither the Court nor a lay jury is capable of assessing the credibility of [] studies" without the benefit of expert testimony. *Chandler v. Janssen*

*Pharma., Inc.*, 322 F. Supp. 3d 314, 326 (E.D.N.Y. 2018).

And even if the Reviews were admitted into evidence, they actually *confirm* the ongoing consensus on the safety and necessity of hormone therapy for adults. Indeed, they describe such care as "essential," "well-established," and "transform[ative]," whose concerns are "dramatically outweighed by the long-term benefits." Doc. 72-2 at 14; Doc. 72-3 at 183. In short, Defendants' attempt to create a fact question fails.

### 2. Whether healthcare prevents death by suicide is not a measure of its medical necessity.

Finally, though Defendants insist that "the notion that providing cross-sex hormones will improve mental health is unproven and speculative," Doc. 80 at 25, they have not submitted any evidence to support that bold claim. *See* Doc. 72-2 at 14; Doc. 72-3 at 183. Even if the Baker and Cass Reviews were summary judgment evidence—which, again, they are *not*—they contain no such language pertaining to adult care. *See generally* Docs. 72-2, 72-3. Nor can Defendants maintain that hormone therapy offers no benefit if it cannot eliminate the risk of "death by suicide." Doc. 72 at 17; Doc. 80 at 9, 25. The Eighth Amendment protects all manner of medical care that has no effect *at all* on the risk of suicide, Doc. 79 at 24–25, and "death by suicide" is decidedly *not* the only severe symptom of gender dysphoria— a fact which Defendants do not rebut. *See, e.g.*, Pls.' 56.1 Reply ¶¶ 2, 4; Ettner Decl. (Doc. 11-1) ¶¶ 31, 45–46, 58, 140–150; Haw Decl. (Doc. 11-2) ¶¶ 44–45, 61–62.

Even were that not true, whatever Cass or Baker say is immaterial here. Sec. I.B.1, *supra*. Further, Defendants do not even attest that they reviewed these (or *any* other sources) before terminating access to hormone therapy across GDC, nor do Defendants' clinicians cite any supposed medical controversy as the basis for withdrawing care—just SB185. *See, e.g.*, Wynne Decl. (Doc. 28-1) ¶ 4.

Even more concerning is the implication of Defendants' argument: namely, that it is not cruel and unusual to inflict physical and psychological pain, knowingly, by withholding patients' medically necessary treatment, so long as the consequences fall short of death. Doc. 80 at 25–26. Thankfully, however, this concept finds no support whatsoever in Eighth Amendment precedent. Deliberate indifference exists where there is "a known risk that delay in…treatment would cause [the plaintiff] mental anguish." *Hardin v. Hayes*, 52 F.3d 934, 939 (11th Cir. 1995); *accord* Doc. 79 at 24–25 (collecting cases). The reason is simple: "pain and suffering" does not "serve any penological purpose." *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016). Plaintiffs, therefore, are entitled to Partial Summary Judgment, even if hormone therapy's only benefit was reducing the "clinically significant distress" that undisputably accompanies gender dysphoria. Pls.' 56.1 Reply ¶¶ 2, 11; Doc. 11-9 (§§ III.A, IV.A.3.c.); Doc 72-2 at 3; Haw Decl. (Doc. 11-2) ¶ 46.

    **C.    Defendants' legal arguments fail because *Estelle v. Gamble* controls, not *Skrmetti* and *Eknes-Tucker*.**

Unable to dispute any facts material to Plaintiffs' Eighth Amendment claims,

Defendants assert that SB185 is "clearly constitutional" under *Skrmetti* and *Eknes-Tucker*. Doc. 80 at 15. But Defendants' insistence that *Skrmetti* and *Eknes-Tucker* control erases the distinction between the Eighth Amendment and equal protection claims. Doc. 79 at 15–17. Indeed, the Supreme Court has refused to graft equal protection standards onto the Eighth Amendment "*because* the integrity of the criminal justice system depends on full compliance with the Eighth Amendment." *Johnson v. California*, 543 U.S. 499, 511 (2005). The Court continues to "judge violations of that Amendment under the 'deliberate indifference' standard." *Id.*

Defendants nonetheless believe it "cannot possibly be the law" that the Eighth Amendment requires treatment for adults that the Equal Protection Clause permits banning for minors. Doc. 80 at 18. But what "cannot possibly be the law" is Defendants' insistence that the General Assembly can ban medically necessary care in prisons that Plaintiffs could obtain outside them. Such "[m]echanical deference to" the legislature "would reduce" the Eighth Amendment "to a nullity in precisely the context where it is most necessary." *Johnson*, 543 U.S. at 511.

Defendants also mischaracterize the core holdings of *Skrmetti* and *Eknes-Tucker*, as Plaintiffs have explained elsewhere. Doc. 37 at 12–14; Doc. 79 at 13–17. While Defendants declare "*Skrmetti* confirms that even outright bans on sex-change interventions 'are subject to only rational basis review,'" Doc. 80 at 15 (citing 605 U.S. at 511), *Skrmetti* answered that question *only* as it pertains to *minors*. Doc. 37

11

at 12; Doc. 79 at 13–14. *Skrmetti* said nothing whatsoever about the Eighth Amendment claims of incarcerated adults. Doc. 37 at 12; Doc. 79 at 13–17. *Eknes-Tucker*, too, analyzed minors' claims in the equal protection (and due process) context. 80 F.4th at 1230.[6]

*Even if* there were legitimate controversy about the relative risks and benefits of puberty blockers for adolescents experiencing gender dysphoria, that risk is absent here. The Classes include only adults, and Defendants have marshaled no actual evidence of controversy about the relative risks and benefits of hormone treatment for *adults*. *See* Sec. I.B, *supra*. Thus, the equal protection analysis of laws concerning minors is wholly irrelevant to the constitutionality of bans on "essential" and "well-established" hormone therapy for adults under the Eighth Amendment. Doc. 37 at 12–14; Doc. 79 at 13–17.

## II. Plaintiffs are entitled to a permanent or, in the alternative, preliminary injunction under the PLRA.

Plaintiffs are entitled to permanent injunction with respect to *both* the

---

[6] While Defendants are quick to point out that some states have "banned the administration of the hormonal interventions...in at least some circumstances," Doc. 80 at 9, they conveniently fail to clarify that *all* those policies concern only minors *or* public funding for that care except MO S.B. 49, where Missouri officials are currently being sued for implementing a law that bans gender transition surgery (not hormone therapy) in prisons. S.B. 49, 102d Gen. Assemb., Reg. Sess. (Mo. 2023); *see Noe v. Parson*, No. 23AC-CC04530, Judgment and Findings of Fact and Conclusions of Law, slip op. (Mo. Cir. Ct. Nov. 25, 2024), *appeal docketed sub nom. E.N. v. Kehoe*, No. SC100933 (Mo. Jan. 16, 2025).

Requesting and Receiving Classes because Defendants' decision to categorically withhold medically necessary treatment and treatment evaluations is the "the *very definition* of deliberate indifference." *Keohane*, 952 F.3d at 1267; *accord* Doc. 3 at 17–18; Doc. 37 at 9; Doc. 71 at 16, 21; Doc. 79 at 13, 28–29 (collecting cases). After all, permanent injunctions are appropriate where "actual success" is shown. *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1268 (11th Cir. 2006).

But even if the Court were to disagree, the Court should enter a second successive preliminary injunction under the PLRA. That law, at 18 U.S.C. § 3626(a)(2), "permits a district court to enter a second injunction after the first one expires." *United States v. Sec'y, Fla. Dep't of Corrs.*, 778 F.3d 1223, 1228 n.9 (11th Cir. 2015). Establishing this point, the Eleventh Circuit has rejected the argument that "the district court failed to comply with the PLRA in issuing the second preliminary injunction." *Melendez v. Sec'y, Fla. Dep't of Corr.*, No. 21-13455, 2022 WL 1124753, *8, *18 (11th Cir. Apr. 15, 2022).[7]

Defendants have not proffered *any* evidence that the "full range of mental health services" they are offering Class Members *in lieu of* medically necessary

---

[7] In fact, successive injunctions are routinely entered in the context of the PLRA *because* of the 90-day expiry provision. *See, e.g.*, *Fla. Dep't of Corrs.*, 778 F.3d at 1229; *Ga. Advoc. Off. v. Jackson*, 4 F.4th 1200, 1216 (11th Cir. 2021), *vacated*, 33 F.4th 1325 (11th Cir. 2022); *Melendez*, 2022 WL 1124753, at *18–20; *Robinson v. Labrador*, Case No. 1:24-cv-00306, 2025 WL 2494534, at *1 (D. Idaho Aug. 29, 2025) (renewing PLRA injunction for a fifth time).

hormone therapy is adequate treatment for their gender dysphoria. Owen Decl. (Doc. 25-2) ¶ 7; Pls.' 56.1 Reply ¶¶ 6-7, 43, 46; Doc. 82-1, Pls.' Resp. to Defs.' 56.1 Stmt. ¶¶ 23–30; *see also* Sec. I.A, *supra*. Nor do they contend that patients subjected to their hormone therapy ban face no ongoing risk of harm. Pls.' 56.1 Reply ¶¶ 8-9, 31, 43-46; Doc. 25 at 24; Doc. 11-16; Owen Decl. (Doc. 25-2) ¶¶ 7–15 (anticipating need for triage and suicide prevention services). This is sufficient to establish irreparable harm—harm that "cannot be undone through monetary remedies." *Scott v. Roberts*, 612 F.3d 1279, 1295 (11th Cir. 2010). And since the balance of equities and the public interest "boil down to [whether] SB185 is unconstitutional" as Defendants acknowledge, Doc. 80 at 30, the third and fourth factors of the injunctive relief test unequivocally favor Plaintiffs. *See* Doc. 71 at 19–20. The public, after all, "has no interest in enforcing an unconstitutional law." *Scott*, 612 F.3d at 1297.

An injunction also comports with the PLRA's "need-narrowness intrusiveness" requirement because it merely restores to Defendants and their clinicians what SB185 wrests away: the ability to make treatment decisions based on independent medical judgment of *patient need*, like both Eighth Amendment and Defendants' own pre-SB185 policies require. *See, e.g.*, Pls.' 56.1 Reply ¶¶ 10–15; Doc. 11-9; Doc. 11-10; Doc. 11-11.[8] Nor are Plaintiffs arguing that every time a new

---

[8] Defendants do not dispute causation, and do not contend the PLRA exhaustion requirement bars relief. *See*, *e.g.,* Doc. 82-1; Doc. 50 at 28 n.3, 59 n.14.

medical intervention arises, a new constitutional standard is born. The Eighth Amendment standard remains the same: a state must not be *deliberately indifferent* to the serious medical *needs* of those it incarcerates, which includes "intentionally denying or delaying access to medical care or intentionally interfering with [medical] treatment once prescribed." *Estelle*, 429 U.S. at 104–05.

Finally, Defendants are not entitled to a stay because they have *not* made a "strong showing that [they are] likely to succeed on the merits," contrary to their assertion. Doc. 80 at 30 (citing *Nken v. Holder*, 556 U.S. 418, 426 (2009)).[9] *See, e.g.*, Sec. I, *supra*; Doc. 3 at 12–24; Doc. 37 at 6–14; Doc. 79 at 20–27. Nor can Defendants make the requisite showing of harm because they have not shown that their SB185 hormone therapy ban is "presumptively constitutional," or that it "will likely be upheld on appeal." Doc. 80 at 30.

## CONCLUSION

Accordingly, Plaintiffs' Motion for Summary Judgment and Permanent Injunction should be granted or, in the alternative, Plaintiffs should be granted a second successive preliminary injunction.

*[Signature and certification pages follow.]*

---

[9] The Eleventh Circuit has tellingly refused to stay the Court's initial injunction, despite Defendants' stay motion being fully briefed for months. Doc. 72 at 13.

Respectfully submitted this 24th day of November, 2025.

|  |  |
|---|---|
|  | */s/ Amanda Kay Seals* |
| Emily C. R. Early, | Amanda Kay Seals |
| GA Bar No. 810206 | GA Bar No. 502720 |
| eearly@ccrjustice.org | seals@bmelaw.com |
| A. Chinyere Ezie* | Matthew R. Sellers |
| cezie@ccrjustice.org | GA Bar No. 691202 |
| Celine Zhu* | sellers@bmelaw.com |
| czhu@ccrjustice.org | BONDURANT, MIXSON & ELMORE, LLP |
| Kayla Vinson* | 1201 W Peachtree St NW |
| kvinson@ccrjustice.org | Suite 3900 |
| CENTER FOR CONSTITUTIONAL RIGHTS | Atlanta, GA 30309 |
| 666 Broadway, 7th Floor | Phone: (404) 881-4100 |
| New York, NY 10012 | Fax: (404) 881-4111 |
| Phone: (212) 614-6464 |  |

D. Korbin Felder*
kfelder@ccrjustice.org
CENTER FOR CONSTITUTIONAL RIGHTS
P.O. BOX 12046
Jackson, MS 39236
Phone: (601) 228-6101

*Admitted Pro Hac Vice*

*Counsel for Plaintiffs*

Signature Page

## CERTIFICATE OF COMPLIANCE

This is to certify that the foregoing **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT AND A PERMANENT INJUNCTION** has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C). Specifically, the pleading was prepared using Times New Roman, 14-point font.

> */s/ Amanda Kay Seals*
> Amanda Kay Seals

Local Rule 7.1(D)
Certificate of Compliance

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 24, 2025, I submitted the foregoing via the Court's

CM/ECF system, which will serve an electronic copy on all attorneys of record.

*/s/ Amanda Kay Seals*
Amanda Kay Seals
