## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| ISIS BENJAMIN; FANTASIA HORTON; NAEOMI MADISON; BRYNN WILSON; and JOHN DOE; on behalf of themselves and all persons similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>COMMISSIONER TYRONE OLIVER, in his official capacity; ASSISTANT COMMISSIONER RANDY SAULS, in his official capacity; STATEWIDE MEDICAL DIRECTOR DR. MARLAH MARDIS, in her official capacity; and CENTURION OF GEORGIA, LLC,<br><br>        Defendants. | Civil Action No. 1:25-cv-04470-VMC |

## OPINION, ORDER, and
## PERMANENT INJUNCTION

Before the Court are the following motions:[1]

- Plaintiffs Isis Benjamin, John Doe, Fantasia Horton, Naeomi Madison, and Brynn Wilson's ("Plaintiffs") Motion for Order to Give Class Notice (Doc 60);

- Plaintiffs' Motion to Certify Class (Doc. 70);

- Plaintiffs' Motion for Permanent Injunction and for Partial Summary Judgment (Doc. 71);

---

[1] The parties also filed several Motions to Seal (Docs. 74, 83, 85, 92), all of which the Court grants.

- Dr. Marlah Mardis, Tyrone Oliver, and Randy Sauls's ("State Defendants") Motion for Partial Summary Judgment (Doc. 72); and

- Defendant Centurion of Georgia, LLC's ("Centurion") Motion for Joinder in the State Defendants Motion for Partial Summary Judgment (Doc. 75).

For the reasons that follow, the Court rules as follows.

## Background

### I.    Procedural History

As the Court noted earlier in this case, this is a constitutional challenge to Georgia Senate Bill 185, 2025 Georgia Laws Act 69 ("S.B. 185"), which went into effect upon approval by the Governor on May 8, 2025. (*See id.* § 2). S.B. 185 amended O.C.G.A. § 42-5-2(e)(1) to preclude "state funds or resources" from being used for, among other purposes, "[h]ormone replacement therapies" to treat gender dysphoria.[2]

The Court entered a Preliminary Injunction against enforcing certain aspects of S.B. 185 on September 4, 2025. *Benjamin v. Oliver*, --- F. Supp. 3d ----, 2025 WL 2542072 (N.D. Ga. 2025) (Doc. 50). In the Court's Preliminary Injunction Order, the Court identified certain facts that appeared to be undisputed and invited the parties to brief whether summary judgment was appropriate. (*Id.* at 63–64). However, because the Preliminary Injunction was immediately appealable and the

---

[2] As Plaintiffs point out, and State Defendants do not dispute, "the law does not contemplate inmates self-paying for hormonal interventions while incarcerated." (Doc. 82-1 ¶ 20).

State Defendants intended to seek a stay pending appeal from the Eleventh Circuit Court of Appeals, the parties requested additional time to file their response briefs to allow the Eleventh Circuit an opportunity to weigh in first, which the Court granted in part. (Doc. 55).

The Court was unable to indefinitely postpone ruling on summary judgment, however, because the Prison Litigation Reform Act of 1995 ("PLRA") requires that any preliminary injunction with respect to prison conditions be converted to a permanent injunction within 90 days. 18 U.S.C. § 3626(a)(2). Ninety days from September 4th is December 3rd. Accordingly, the Court notified the parties of its intent to hold a scheduling conference with the parties for the purpose of proceeding with summary judgment if the Eleventh Circuit had not ruled by October 24, 2025. October 24th came and went, and the parties conferred on a briefing proposal, which the Court approved. (Doc. 69).[3] Briefing was completed on November 24, 2025, which left the Court with a little over a week to finalize this Order. For that reason, this Order is primarily focused on analyzing the summary judgment standard and finalizing class relief. It largely incorporates the legal conclusions of the Preliminary Injunction Order by reference and addresses new

---

[3] The Court greatly appreciates the efforts the parties took to narrow the issues and permit a ruling under the PLRA's dictates.

arguments as they come up. Review of the Preliminary Injunction Order is therefore critical to obtain a full understanding of the Court's conclusions here.

The Court also certified two preliminary classes ("Class Members"):

A.    All individuals incarcerated in GDC[4] facilities who are receiving hormone therapy now proscribed by S.B. 185 or who were receiving hormone therapy proscribed by S.B. 185 on May 8, 2025. (Class Representatives: Horton, Wilson, and Doe) ("Receiving Class").

B.    All individuals incarcerated in GDC facilities not in Class A who identify as transgender and request hormone treatment now proscribed by S.B. 185. (Class Representatives: Benjamin and Madison) ("Requesting Class").

(Receiving Class and Requesting Class members collectively are referred to as "Class Members").

## II.    Factual Background[5]

Gender dysphoria is a serious medical condition that appears in the *Diagnostic and Statistical Manual of Mental Disorders* (5th ed. 2013) (Doc. 82-1 ¶ 1).

---

[4] "GDC" is an abbreviation for the Georgia Department of Corrections.

[5] The following facts are drawn from the parties' respective Statements of Material Facts. Citation to the relevant responsive statement without explanation or clarification indicates the Court has deemed the underlying statement admitted. For clarity and ease of reading, the Court omits quotation marks from admitted statements that are reproduced in this Order. Citations to the parties' respective

Gender dysphoria arises from the incongruence between an individual's gender identity and their birth-assigned sex and results in clinically significant distress. (*Id.* ¶ 2). Some people with gender dysphoria identify as transgender. (*Id.* ¶ 3). Gender dysphoria requires individualized medical treatment based on patient medical need. (*Id.* ¶ 4).[6] According to Plaintiffs' experts, medically necessary treatment for gender dysphoria can include hormone therapy, and counseling and psychotropic drugs are not a substitute for hormone therapy for these gender dysphoria patients. (*Id.* ¶¶ 5–7) (citing Declaration of Randi Ettner, Ph.D., "Ettner Decl.," Doc. 11-1; Declaration of Sonya Haw, M.D., "Haw Decl.," Doc. 11-2). As detailed more fully in the Court's Preliminary Injunction Order, denying or withdrawing hormone therapy can result in serious physical and psychological harms. *Benjamin*, 2025 WL 2542072, at *6–9.

Defendants adopted and enforced three standard operating procedures ("SOPs") on gender dysphoria treatment prior to the passage of S.B. 185. (Doc. 82-1 ¶ 10). The Court detailed the SOPs in its Preliminary Injunction Order, but in

---

briefs are to the internal pagination, rather than the ECF header stamps, unless indicated otherwise.

[6] State Defendants use this fact as an opportunity to argue that specific interventions are not legally or medically required. (Doc. 82-1 ¶ 4). While this disagreement is addressed below, State Defendants do not dispute the statement itself, namely that "[g]ender dysphoria requires individualized medical treatment based on patient medical need." (*Id.*).

short, under the SOPs, treatment plans could include hormone therapy if the certain criteria were met. *Benjamin*, 2025 WL 2542072, at *5. Specifically, the SOPs required "an individualized assessment of the offender by a medical practitioner." (Doc. 82-1 ¶ 14). As of August 2025, there were 340 people with gender dysphoria diagnoses in GDC custody. (*Id.* ¶ 16). Over one hundred of these individuals were receiving hormone therapy as of June 30, 2025, including Plaintiffs Doe, Horton, and Wilson. (*Id.* ¶ 17).

In July 2025, Defendants began enforcing S.B. 185 across GDC. (*Id.* ¶ 28). Because of Defendants' enforcement of S.B. 185, Plaintiffs and others seeking gender dysphoria treatment lost access to hormone therapy (except for the purposes of tapering), and hormone therapy evaluations at the time this case was filed. (*Id.* ¶ 37). Beginning in July, Plaintiffs Horton, Wilson and Doe started being tapered off their hormone therapy, despite previous determinations by GDC healthcare providers that hormone therapy was medically necessary treatment for their gender dysphoria. (*Id.* ¶¶ 38, 40). Plaintiff Benjamin, a transgender woman who entered GDC custody in March 2025, was denied evaluations to resume the hormone therapy she was previously prescribed by GDC healthcare providers and has relied on for twenty years—almost half her life. (*Id.* ¶ 41). Plaintiff Madison, who was seeking to start treatment after being prescribed hormone therapy during

a previous GDC incarceration, was denied access to hormone therapy evaluations. (*Id.* ¶ 42).

## Legal Standard

### I.    Cross-Motions for Summary Judgment

Federal Rule of Civil Procedure 56(a) provides "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it is "a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial burden of showing the court, by reference to materials in the record, that there is no genuine dispute as to any material fact that should be decided at trial. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party's burden is discharged merely by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." *Celotex*, 477 U.S. at 325. In determining whether the moving party has met this burden, the district court must view the evidence

and all factual inferences in the light most favorable to the party opposing the motion. *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996). Once the moving party has adequately supported its motion, the non-movant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). All reasonable doubts should be resolved in the favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). In addition, the court must "avoid weighing conflicting evidence or making credibility determinations." *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000). When the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine dispute for trial. *Fitzpatrick*, 2 F.3d at 1115 (citations omitted).

On cross-motions for summary judgment, "[t]he standard of review . . . does not differ from the standard applied when one party files a motion, but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed." *Loiseau v. Thompson, O'Brien, Kemp & Nasuti, P.C.*, 499 F. Supp. 3d 1212, 1219 (N.D. Ga. 2020) (quoting *GEBAM, Inc. v. Inv. Realty Series I, LLC*, 15 F. Supp. 3d 1311, 1315–16 (N.D. Ga. 2013)). "The Court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration. Cross-motions may . . . be

probative of the absence of a factual dispute where they reflect general agreement by the parties as to the controlling legal theories and material facts." *Id.* (citing *U.S. ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.*, 972 F. Supp. 2d 1339, 1341 (N.D. Ga. 2013)).

## II.    Motion for Permanent Injunction

The Court may grant a party who prevails on the merits of a 42 U.S.C. § 1983 claim permanent injunctive relief. *Mitchum v. Foster*, 407 U.S. 225, 242 (1972) ("The very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights — to protect the people from unconstitutional action under color of state law, 'whether that action be executive, legislative, or judicial.' . . . In carrying out that purpose, Congress plainly authorized the federal courts to issue injunctions in s 1983 actions, by expressly authorizing a 'suit in equity' as one of the means of redress.") (quoting *Ex parte Virginia*, 100 U.S. 339, 346 (1879)); *accord Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015) ("The ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England.").

However, in all cases seeking permanent injunctive relief, regardless of the basis for the claim, "the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that such discretion must

be exercised consistent with traditional principles of equity." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006). Thus, a plaintiff seeking a permanent injunction "must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.* at 391; *cf. also Kohler Co. v. Bold Int'l FZCO*, 422 F. Supp. 3d 681, 738 (E.D.N.Y. 2018) (noting "actual past or imminent injury under the eBay four-factor test" suffices). "When the defendant is the government, factors (3) and (4) merge." *Anatol Zukerman & Charles Krause Reporting, LLC v. U.S. Postal Serv.*, 64 F.4th 1354, 1364 (D.C. Cir. 2023) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

## III.    Motion for Class Certification

A class action may be maintained only when it satisfies all the requirements of Fed. R. Civ. P. 23(a) and at least one of the alternative requirements of Rule 23(b). *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997) (footnotes omitted). Rule 23(a) requires Plaintiffs to show that:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;

10

> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "These four requirements commonly are referred to as the 'prerequisites of numerosity, commonality, typicality, and adequacy of representation,' and they are designed to limit class claims to those 'fairly encompassed' by the named plaintiffs' individual claims." *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001) (quoting *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 156 (1982)).

If Rule 23(a) is satisfied, Rule 23(b) further provides that a class action may be maintained only where one of the three following requirements is met:

> (1) prosecuting separate actions by or against individual members of the class would create a risk of prejudice to the party opposing the class or to those members of the class not parties to the subject litigation, *see* Fed. R. Civ. P. 23(b)(1);
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive or declaratory relief is appropriate respecting the class as a whole, *see* Fed. R. Civ. P. 23(b)(2); or
>
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy, *see* Fed. R. Civ. P. 23(b)(3).

The party seeking class certification bears the burden of showing that the Rule 23 requirements are met. *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003).

"Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage," and the merits of a suit may be considered "only to the extent [] that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). Nevertheless, courts must perform a "rigorous analysis" to ensure that Rule 23's requirements are satisfied before certifying a class, *Falcon*, 457 U.S. at 161, even where some of the requirements are not in dispute, *Valley*, 350 F.3d at 1188, or where the Court must decide disputed questions of fact that bear on the inquiry, *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1233–34 (11th Cir. 2016). *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."); *see also In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 307 (3d Cir. 2008) ("Factual determinations supporting Rule 23 findings must be made by a preponderance of the evidence."). This "rigorous analysis" frequently "entail[s] some overlap with the merits of the plaintiff's underlying

12

claim." *M. H. v. Berry*, No. 1:15-CV-1427-TWT, 2017 WL 2570262, at *3 (N.D. Ga. June 14, 2017) (citing *Dukes*, 564 U.S. at 351).

## Discussion

### I.     Deliberate Indifference

Plaintiffs allege that Defendants' implementation of S.B. 185 violates their Eighth Amendment right against cruel and unusual punishment under color of state law, entitling them to permanent injunctive relief against enforcement of that law under 42 U.S.C. § 1983. The Court has already outlined the relevant legal standard for deliberate indifference in its prior Order. *Benjamin*, 2025 WL 2542072, at *11. In short, at this stage Plaintiffs must show an absence of any factual dispute that they have (1) a serious medical need; (2) that Defendants were deliberately indifferent to that need; and (3) causation between that indifference and Plaintiff's actual or imminent injury. *Melton v. Abston*, 841 F.3d 1207, 1220 (11th Cir. 2016), *abrogated on other grounds by Wade v. McDade*, 106 F.4th 1251 (11th Cir. 2024) (en banc).

The Court finds that there is no genuine dispute of fact that gender dysphoria is a serious medical need. (Doc. 82-1 ¶¶ 1–4). Plaintiffs, through their experts, have presented evidence that a blanket ban on hormone therapy constitutes grossly inadequate care for gender dysphoria and risks imminent injury. (*Id.* ¶¶ 5–7); (*See also e.g.*, Ettner Decl. ¶¶ 56–58) ("It is medically

13

inappropriate—and potentially dangerous—to make blanket decisions about treatment for individuals without accounting for each patient's unique medical history, psychological profile, symptom presentation, and treatment response. . . . No two individuals experience gender dysphoria in exactly the same way. People differ in their symptom profiles, hormone levels, comorbid conditions, and overall treatment needs. Policies that ignore these individual factors and deny appropriate care are not only medically unjustifiable but are likely to result in a cascade of adverse outcomes—including psychological decompensation, self-harm, and suicidality."). *See Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020) (quoting *Harris v. Thigpen*, 941 F.2d 1495, 1510 (11th Cir. 1991)). ("[M]edical treatment violates the [E]ighth [A]mendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.").

Thus, as the Court alluded to in its prior Order when it requested summary judgment briefing, the sole question remaining is whether Defendants have presented any evidence which negates or contradicts Plaintiffs' evidence. The Court finds that Defendants have not.

### A.    The Cass and Baker Reviews do not create a fact dispute.

Defendants rely on two academic articles to create a fact dispute as to deliberate indifference: H. Cass, *Independent Review of Gender Identity Services for*

*Children and Young People: Final Report*, at 13 (Apr. 2024) (hereinafter, "Cass Review") and Kellan E. Baker, et al., *Hormone Therapy, Mental Health, and Quality of Life Among Transgender People: A Systematic Rev.*, J. of the Endocrine Soc'y, 5(4), https://pmc.ncbi.nlm.nih.gov/articles/PMC7894249/pdf/bvab011.pdf (hereinafter, "Baker Review") (collectively, the "Reviews").

First, Plaintiffs argue that reliance on the Reviews is barred by the parties' evidentiary stipulation (Doc. 69), and the Court's November 4, 2025 Order approving the stipulation. The stipulation read as follows:

> The parties agree that the record is complete for purposes of the motions to be filed on November 10. No party will submit additional evidence, and no party will contend that the lack of discovery is a reason to deny summary judgment under Federal Rule of Civil Procedure 56(d). The parties stipulate to the admissibility of all evidence submitted to date.

(Doc. 69 ¶ 3). Plaintiffs argue that the Reviews were not tendered as exhibits and therefore Defendants are barred from submitting the Reviews as additional evidence. (Doc. 89 at 3 n.4). While the Court does not think failing to physically file a copy of the studies is determinative, the Court does agree that the Reviews were not "submitted as evidence" such that Plaintiffs are deemed to have stipulated as to their admissibility on summary judgment.[7] The Court refused to

---

[7] Reviewing the transcript of the status conference reveals that the primary intent of the parties behind the stipulation was waiving hearsay objections to the parties' respective declarations:

consider the Reviews as admissible evidence in connection with the Preliminary

Injunction. *Benjamin*, 2025 WL 2542072, at *15 (limiting consideration of the

Reviews to preliminary questions under Fed. R. Evid. 104). Evidence that is

---

> MR. HARRIS: . . . And, of course, we would be willing to work with Plaintiffs to, for example, waive hearsay objections to the introductions of each side's, you know, declarations or other evidence and to sort of clean up the record like that.
>
> I don't see a statement of undisputed facts as something that's likely to move the ball as opposed to set things back. But, you know, again, I think our preference, again, in the interest of keeping it simple, would be just, again, each side rests on what they submitted and their submission. And, again, given that the Court already issued a ruling on that record, I think we know what the Court would do.
>
> But we are perfectly comfortable resting on what we've submitted, as long as, again, for example, our declarations are deemed admissible evidence and not hearsay or something to that effect. And, of course, we would extends the same, you know, waiver to the Plaintiffs.
>
> THE COURT: All right. Thank you for that additional information, Mr. Harris. I understand the concern, and I think your proposal would work. Let me see what Mr. Sellers says.
>
> MR. SELLERS: We are happy, Your Honor, to work to clean up the record, as Mr. Harris says, and waive hearsay objections to the affidavits that have been submitted.

(Rough Tr. of Oct. 30, 2025 Status Conf. 5:10–6:10).

received on a preliminary injunction motion "becomes part of the trial record," but only if the evidence "would be admissible at trial." Fed. R. Civ. P. 65(a)(2). Similarly, a party may object to materials cited as summary judgment evidence on the grounds that the materials "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The Reviews could not possibly be admitted at trial. For one, they are hearsay and no exception applies. *Allen v. Kroger Co.*, No. 5:18-CV-00389, 2019 WL 7403321, at *3 (M.D. Ga. Sept. 3, 2019) ("Of course, the Court's reference to the article is purely academic as the article is nothing more than hearsay and, thus, inadmissible."). The Federal Rules of Evidence require an expert to lay the foundation for admission of a statement in an academic publication, but State Defendants have identified no such expert. Fed. R. Evid. 803(18).

Second, even if the Court were to consider the Reviews as evidence in the abstract, creating a fact dispute with them would require the testimony of an expert to put the Reviews into context—"an expert may not rely upon even a reliable, well-conducted scientific study where the expert offering it cannot explain the link between the study and the facts of the case." *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 644 F. Supp. 3d 1075, 1179 (S.D. Fla. 2022) (citing *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1347–48 (11th Cir. 2003)).

Third, while it is true that regardless of whether the Reviews are admissible, they can be considered for the purpose of challenging Plaintiffs' experts' credentials under Federal Rule of Evidence 702, *Benjamin*, 2025 WL 2542072, at *15 (citing Fed. R. Evid. 104(a)), Defendants' reliance on the Reviews and criticism of the WPATH standards go to weight, not admissibility, as the Court explained before. *Id.*

The undersigned is not a doctor, and courts stray far from their lane when they "succumb to the temptation to play doctor and make their own independent medical findings." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (discussing medical source evidence in the context of ALJ disability determinations). Because the Reviews are not admissible evidence and do not negate the admissibility of Plaintiffs' expert evidence, the Reviews do not create a fact dispute.

**B.    Defendants' proffered treating experts do not create a fact dispute through their testimony.**

Defendants next argue that they have created a fact dispute by submitting "declarations from Plaintiffs' *treating physicians* who discussed the care available to inmates, the protocols being used to responsibly implement SB185, and GDC's efforts to ensure that all inmates are closely monitored to ensure their safety and well-being." (Doc. 72 at 15–16). But when carefully examined, it becomes clear that these doctors do not actually dispute Plaintiffs' experts' conclusions that hormone therapy can be medically necessary for some gender dysphoria patients.

Moreover, as the Court noted in its prior Order, Defendants have not argued that their doctors exercised independent judgment when they tapered and refused hormones to Plaintiffs. *Benjamin*, 2025 WL 2542072, at *23 n.16. Specifically, the Court referenced the following exchange from oral argument:

> THE COURT: Hold on. Have you put any information in the record showing that the doctors felt that these patients, these plaintiffs, should be taken off the HRT based on no longer having a medical need for it?
>
> MR. HARRIS: It was based on – that's not in the record. It was based on the legislature's determination that this category of interventions is not something the state supports. . . .

(Transcript of Aug. 29, 2025 Oral Argument 34:7–14).

Even viewing the evidence in the light most favorable to Defendants, their physicians' testimony shows that Plaintiffs and Class Members are being monitored and provided with some form of counseling, but they do not contradict Plaintiffs' experts' testimony that this treatment is an inadequate blanket substitute for hormone therapy. *See Benjamin*, 2025 WL 2542072, at *13.[8] Dr. Owen's testimony that the "full range of mental health services at a facility will be available to offenders with Gender Dysphoria as clinically appropriate," aside from being conclusory, does not grapple with the possibility that hormonal

---

[8] Defendants argue that Plaintiffs' experts never examined any inmate, but GDC healthcare providers previously determined that hormone therapy was medically necessary treatment for members of the Receiving Class. (*See* Doc. 82-1 ¶ 40).

interventions can also be medically necessary. (Doc. 84-1 ¶ 24). And the physicians' assertions that Plaintiffs did not show physical harm prior to the Court's preliminary injunction do not raise a reasonable inference that they and Class Members would not face a serious risk of harm were the Court to vacate its injunction. Defendants cannot deny medical care and then defeat an injunction by saying nothing bad has happened *yet*. "[I]nmates facing a foreseeable risk of harm from a withdrawn medication do not need to wait for the harms to occur to bring a deliberate indifference claim." *Benjamin*, 2025 WL 2542072, at *13 (citing *Brown v. Johnson*, 387 F.3d 1344, 1350 (11th Cir. 2004)).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586–87 (1986) (notes and citations omitted). Instead, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56 (1986)). Defendants have failed to come forward with specific evidence that rebuts Plaintiffs' experts' conclusions and therefore summary judgment is appropriate.

### C.    Defendants' other arguments do not create a fact dispute.

Defendants make a number of policy arguments that do not constitute evidence under the summary judgment procedures. First, they repeatedly point to concurring opinions that rejected the reliance on experts in other cases involving

transgender plaintiffs. *United States v. Skrmetti*, 605 U.S. 495, 529–30 (2025) (Thomas, J., concurring); *Eknes-Tucker v. Governor of Ala.*, 114 F.4th 1241, 1248 (11th Cir. 2024) (Lagoa, J., concurring in the denial of rehearing en banc). Aside from not being binding, these concurring opinions "involved issues of constitutional interpretation that did not rely on factual determinations about the medical standard of care." *Benjamin*, 2025 WL 2542072, at *15.[9] In contrast, as the Court has explained, deliberate indifference cases are fact-driven and not susceptible to the same kinds of blanket rules as cases under the Due Process and Equal Protection Clauses. *Id.*

Second, Defendants argue that the holdings of those cases require the Court to rule in their favor because the ruling otherwise would mean that the "same interventions" which the Supreme Court and Eleventh Circuit allowed states to completely ban for minors are, in the prison context placed "so far beyond dispute that the Constitution mandates they be provided to inmates at taxpayer expense." (Doc. 72 at 12–13). "But it cannot be the law," they argue "that states have less authority to regulate within prisons than in society at large." (Doc. 72 at 19).

---

[9] Similarly, the Eleventh Circuit in *Lange v. Houston Cnty.*, 152 F.4th 1245, 1248 (11th Cir. 2025) addressed whether refusing insurance coverage for gender confirmation surgery constituted facial discrimination on the basis of sex and transgender status, purely legal questions. It bears noting that unlike the Plaintiffs here, the Ms. Lange is able to obtain those treatments at her own expense.

But the Court does not hold that the Constitution *requires* all inmates receive hormone therapy if they want it. Rather, the Court requires healthcare decisions for prisoners to be made dispassionately, by physicians, based on individual determinations of medical need, and for reasons beyond the fact that the prisoners are prisoners. *Cf. Estelle v. Gamble*, 429 U.S. 97, 104 (1976) ("[I]t is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself.") (quoting *Spicer v. Williamson*, 132 S.E. 291, 293 (N.C. 1926)).[10] That said, if a doctor determines in his or her medical judgment that hormone therapy is not medically necessary for a prisoner, a prisoner seeking to argue otherwise faces a heavy burden. *See Keohane*, 952 F.3d at 1274 ("[W]here medical professionals disagree as to the proper course of treatment . . . 'a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [cannot] support a claim of cruel and unusual punishment.'" (quoting *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) and citing *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)). Despite Defendants' contestations, the Court does not create a "one-way constitutional ratchet." (Doc. 80 at 17). The Court explained in its prior holding that a prison

---

[10] For this reason, Defendants' parade-of-horribles argument about Georgia's ban on physician-assisted-suicide falls flat. (Doc. 77 at 28). The ban, which applies to all doctors statewide, could not be fairly characterized as a blanket ban on a medically indicated treatment for prisoners.

doctor can "taper a patient off a treatment" even "if there is some risk of side effects posed," so long as it is based on medical judgment. *Benjamin*, 2025 WL 2542072, at *13.

Finally, Defendants try to shift the subjective recklessness prong of the deliberate indifference analysis to consider the legislature's knowledge of the risk to Plaintiffs. (Doc. 72 at 21). But the PLRA makes clear that the relevant decisionmaker for conditions claims is the government official responsible for implementing the conditions, not the state legislature, because the Court has the authority to "order . . . prospective relief that requires or permits a government official to exceed his or her authority under State or local law or otherwise violate[] State or local law" if "[f]ederal law requires such relief to be ordered in violation of State or local law." 18 U.S.C. § 3626(a)(1)(B).[11] The Court found that federal law required such relief in its prior Order and it does so again today. Thus, Plaintiffs

_____

[11] Thus, Centurion's separate argument that it cannot be subject to injunctive relief against following S.B. 185 under § 1983 fails. (*See generally* Doc 78). "Generally, when the state contracts out its medical care of inmates, the obligations of the eighth amendment attach to the persons with whom the state contracts." *Howell v. Evans*, 922 F.2d 712, 723–24 (11th Cir.), *vacated pursuant to settlement*, 931 F.2d 711 (11th Cir. 1991), *and opinion reinstated sub nom. Howell v. Burden*, 12 F.3d 190 (11th Cir. 1994) (citing *West v. Atkins*, 487 U.S. 42 (1988)). Centurion can thus "be a person acting under color of state law for the purposes of section 1983." *Id.* (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982)). And by implementing S.B. 185, Centurion has adopted a policy which the Court finds violates the Eighth Amendment. Whether or not this would be sufficient for a damages remedy is irrelevant, because Plaintiffs only seek injunctive relief.

do not need to come forward with, or rebut, evidence of the legislature's subjective knowledge.

## II. Injunctive Relief

Having concluded there are no genuine, material disputed facts in this case, it follows that Plaintiffs are entitled to summary judgment on their claims for injunctive relief as to deliberate indifference for blanket denial of access or consideration of hormone therapy for the same reasons the Court gave in its Preliminary Injunction Order. *Benjamin*, 2025 WL 2542072, at *11–15. To the extent the first two *eBay* factors differ for permanent injunctive relief, Plaintiffs have made a sufficient showing of these factors: namely, for the reasons their experts gave, Plaintiffs have demonstrated that they face an imminent risk of injury absent a permanent injunction. *Id.* at *16. This impending harm is not adequately redressable by damages, as some of the injuries faced may be irreversible. *Benjamin*, 2025 WL 2542072, at *6–9; *see also Barrett v. Walker Cnty. Sch. Dist.*, 872 F.3d 1209, 1229 (11th Cir. 2017) (holding where plaintiff "suffered irreparable harm, his remedies at law were inadequate.") (citing *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. Unit B 1981)). And the Court adheres to its earlier ruling that a denial of access to healthcare is an irreparable injury as well. *Benjamin*, 2025 WL 2542072, at *16 (citing *Edmo v. Corizon, Inc.*, 935 F.3d 757, 798

(9th Cir. 2019)). Finally, for the reasons that the Court gave before, the third and fourth factors favor Plaintiffs. *Id.*

The Court also renews the need-narrowness-intrusiveness findings it made in its previous Order, namely that the Court's permanent injunction

> does not extend further than necessary to correct the Eighth Amendment violation: it only precludes Defendants from enforcing S.B. 185's hormone therapy ban. It does not require the Defendants to adopt or conform to any particular procedures with respect to evaluating and treating class members. The Court does not even require Defendants to adhere to their pre-S.B. 185 SOPs and policies as requested by Plaintiffs; they may adopt new policies if they wish, so long as the policies do not preclude hormone therapy to inmates for non-medical reasons.

*Id.* at *23. The Court does not adopt Plaintiffs' request for periodic compliance reports because Defendants and their counsel have not given the Court any impression that they would not comply with the Court's orders. Even while preserving their arguments for appeal and expressing their disagreement with the Court's rulings, State Defendants have been candid and made reasonable concessions. Centurion has made clear it simply seeks clarity on what its obligations are. Thus, the Court will convert its preliminary injunction order into a permanent injunction order and will go no further.[12]

---

[12] Because the Court does not find Defendants have shown a likelihood of success on appeal, and because a stay pending appeal could cause substantial harm to Plaintiffs and Class Members, the Court denies Defendants' embedded request for

### III.    Class Certification

There seems to be no dispute that the standard for provisional and permanent class certification is the same. *See Fla. Immigrant Coal. v. Uthmeier*, 780 F. Supp. 3d 1235, 1253 (S.D. Fla. 2025); (*See* Doc. 77 at 7) ("For the reasons GDC gave in opposing Plaintiffs' provisional class certification motion, Dkt.26, which Defendants incorporate here by reference, and those given below, the Court should deny Plaintiffs' motion for class certification").[13] For the reasons that the Court gave in its earlier Order, *Benjamin*, 2025 WL 2542072, at *17–22, the Court certifies the following classes on a permanent basis:

C.    All individuals incarcerated in GDC facilities who are receiving hormone therapy now proscribed by S.B. 185 or who were receiving hormone therapy proscribed by S.B. 185 on May 8, 2025. (Class Representatives: Horton, Wilson, and Doe).

D.    All individuals incarcerated in GDC facilities not in Class A who identify as transgender and request hormone treatment now

---

a stay pending appeal. (Doc. 80 at 25). *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981).

[13] Because the parties do not appear to dispute that at least one class representative has standing, (Doc. 86 at 12), the Court does not address Defendants' standing argument beyond incorporating its prior rulings by reference.

proscribed by S.B. 185. (Class Representatives: Benjamin and Madison).

The class claims are Plaintiffs' claims for deliberate indifference stemming from enforcing S.B. 185's prohibitions on hormone therapy. Lastly, the Court agrees with Defendants that class notice should be limited to dissemination of notice via medical and mental health appointments. Plaintiffs' justification for posting class notice in public areas appears directed at reaching non-Class Members for the purpose of potentially broadening the classes, which is not a basis for class notice under Rule 23(c)(2).

## Conclusion

For the above reasons, it is

**ORDERED** that Plaintiffs' Motion for Order to Give Class Notice (Doc 60) is **GRANTED IN PART** as to dissemination by one-on-one meetings between class members, including those with a transgender profile in GDC custody, and medical and mental health staff, and **DENIED IN PART** as to posting in common areas where patients go for medical or mental health appointments. It is

**FURTHER ORDERED** that Plaintiffs' Motion to Certify Class on a Final Basis (Doc. 70) is **GRANTED**. It is

**FURTHER ORDERED** that Plaintiffs' Motion for Permanent Injunction and for Partial Summary Judgment (Doc. 71) is **GRANTED**, and the Court **ENTERS** the following permanent injunction:

> **As to Class A**: To the extent they have not done so already, Defendants are **DIRECTED** to immediately cease tapering hormone therapy doses to class members for the purpose of S.B. 185 compliance. Defendants are **FURTHER DIRECTED** to resume providing class members hormone therapy according to the applicable standard of care without regard to S.B. 185 compliance. Nothing in this injunction requires Defendants to increase the dosage of hormone therapy (i) against the wishes of the class member or (ii) at a rate that puts an inmate at an unnecessary risk of harm based on the reasonable medical judgment of Defendants' medical professionals.

> **As to Class B**: Defendants are **DIRECTED** to evaluate class members for hormone therapy according to the applicable standard of care without regard to S.B. 185 compliance. For the avoidance of doubt, this injunction does not require Defendants to affirmatively identify class members and schedule them for evaluations. It only requires Defendants to follow their usual procedures for evaluating class members who request or are referred for medical evaluation, or who requested or were referred for such evaluation prior to May 8, 2025, without regard to S.B. 185's ban on hormone therapy.

It is

**FURTHER ORDERED** that Dr. Marlah Mardis, Tyrone Oliver, and Randy Sauls's ("State Defendants") Motion for Partial Summary Judgment (Doc. 72) is **DENIED** and Defendant Centurion of Georgia, LLC's ("Centurion") Motion for

Joinder in the State Defendants Motion for Partial Summary Judgment (Doc. 75) is **GRANTED** as to joinder but **DENIED** on the merits.

It is **FURTHER ORDERED** that the Motions to Seal (Docs. 74, 83, 85, 92) are **GRANTED**.

It is **FURTHER ORDERED** that the Court, finding no just cause for delay, **CERTIFIES** entry of final judgment as to Plaintiffs' and Class Members' § 1983 claims for injunctive relief stemming from Defendants' enforcing S.B. 185's prohibitions on hormone therapy.[14]

**SO ORDERED** this 3rd day of December, 2025.

Victoria Marie Calvert
United States District Judge

---

[14] Partial permanent injunctions are appealable, Wright & Miller, 16 Fed. Prac. & Proc. § 3921 (3d ed.), and are enforceable immediately upon entry, Fed. R. Civ. P. 62(c)(1), regardless of whether the Court certifies them as final. Little purpose is served by the Court retaining authority to revisit the partial final judgment under Rule 54(b) because that authority would be displaced by an appeal in any case. Certifying judgment now would allow for the court to conduct proceedings relating to attorney's fees while waiting for the appeal to play out, "enhanc[ing] the efficiency of the litigation." *Peden v. Stephens*, 50 F.4th 972, 978–79 (11th Cir. 2022). Finally, certifying the judgment as final removes any doubt as to whether the class certification aspect of this ruling must be appealed separately under Rule 26(f), and furthers judicial economy by consolidating all aspects of the appeal into one appeal of a single judgment.